**IN THE UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| ULTRA PETROLEUM CORP., *et al.*,[1] | § | Case No. 16-32202 (MI) |
| | § | |
| Debtors. | § | (Joint Administration Requested) |
| | § | (Emergency Hearing Requested) |

**DEBTORS' EMERGENCY MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS AUTHORIZING THE DEBTORS TO (I) PAY PREPETITION WAGES, SALARIES, OTHER COMPENSATION, REIMBURSABLE EXPENSES, AND DIRECTOR OBLIGATIONS AND (II) CONTINUE EMPLOYEE BENEFITS PROGRAMS**

**THIS MOTION SEEKS ENTRY OF AN ORDER THAT MAY ADVERSELY AFFECT YOU. IF YOU OPPOSE THE MOTION, YOU SHOULD IMMEDIATELY CONTACT THE MOVING PARTY TO RESOLVE THE DISPUTE. IF YOU AND THE MOVING PARTY CANNOT AGREE, YOU MUST FILE A RESPONSE AND SEND A COPY TO THE MOVING PARTY. YOUR RESPONSE MUST STATE WHY THE MOTION SHOULD NOT BE GRANTED. IF YOU DO NOT FILE A TIMELY RESPONSE, THE RELIEF MAY BE GRANTED WITHOUT FURTHER NOTICE TO YOU. IF YOU OPPOSE THE MOTION AND HAVE NOT REACHED AN AGREEMENT, YOU MUST ATTEND THE HEARING. UNLESS THE PARTIES AGREE OTHERWISE, THE COURT MAY CONSIDER EVIDENCE AT THE HEARING AND MAY DECIDE THE MOTION AT THE HEARING.**

**EMERGENCY RELIEF HAS BEEN REQUESTED. IF THE COURT CONSIDERS THE MOTION ON AN EMERGENCY BASIS, THEN YOU WILL HAVE LESS THAN 21 DAYS TO ANSWER. IF YOU OBJECT TO THE REQUESTED RELIEF OR IF YOU BELIEVE THAT THE EMERGENCY CONSIDERATION IS NOT WARRANTED, YOU SHOULD FILE AN IMMEDIATE RESPONSE. A HEARING WILL BE HELD ON THIS MATTER FOR MAY 3, 2016 AT 1:30 PM (CT) BEFORE THE HONORABLE MARVIN J. ISGUR, 515 RUSK STREET, COURTROOM 404, HOUSTON, TEXAS 77002.**

**REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEY.**

The above-captioned debtors and debtors in possession (collectively, the "Debtors"), respectfully state the following in support of this motion (this "Motion").

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number (if any), are: Ultra Petroleum Corp. (3838); Keystone Gas Gathering, LLC; Ultra Resources, Inc. (0643); Ultra Wyoming, Inc. (6117); Ultra Wyoming LGS, LLC (0378); UP Energy Corporation (4296); UPL Pinedale, LLC (7214); and UPL Three Rivers Holdings, LLC (7158). The Debtors' service address is: 400 North Sam Houston Parkway East, Suite 1200, Houston, Texas 77060.

## Relief Requested

1. The Debtors seek entry of interim and final orders, substantially in the forms attached hereto as **Exhibit A** and **Exhibit B** (respectively, the "Interim Order" and "Final Order"), authorizing the Debtors to (a) pay prepetition wages, salaries, other compensation, reimbursable expenses, and director obligations and (b) continue employee benefits programs in the ordinary course of business, including payment of certain prepetition obligations related thereto. In addition, the Debtors request that the Court schedule a final hearing within approximately 25 days of the commencement of these chapter 11 cases to consider approval of this Motion on a final basis.

## Jurisdiction, Venue, and Procedural Background

2. The United States Bankruptcy Court for the Southern District of Texas (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3. The bases for the relief requested herein are sections 105(a), 362(d), 363(b), and 507(a) of title 11 of the United States Code (the "Bankruptcy Code") and rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

4. On the date hereof (the "Petition Date"), each Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. A detailed description surrounding the facts and circumstances of these chapter 11 cases is set forth in the *Declaration of Garland R. Shaw in Support of Chapter 11 Petitions and First Day Motions*, to be filed in connection with this Motion.

## The Debtors' Workforce

5. The Debtors employ approximately 159 individuals on a full-time basis (collectively, the "Employees"). Approximately 52 Employees are paid on an hourly basis and approximately 107 Employees are salaried. None of the Employees are represented by a union or collective bargaining unit.[2] The Employees perform a wide variety of functions critical to the administration of these chapter 11 cases and the Debtors' restructuring. Their skills, knowledge, and understanding of the Debtors' operations and infrastructure are essential to preserving operational stability and efficiency. In many instances, the Debtors' Employees include highly trained personnel who are not easily replaced. Without the continued, uninterrupted services of their Employees, the Debtors' restructuring efforts will be halted.

6. The vast majority of the Employees rely exclusively on their compensation and benefits to pay their daily living expenses and support their families. Thus, the Employees will be exposed to significant financial hardships if the Debtors are not permitted to continue paying their compensation, providing benefits, and maintaining existing programs. Consequently, the relief requested is necessary and appropriate.

## Employee Compensation and Benefits

7. The Debtors seek to minimize the personal hardship the Employees would suffer if employee obligations are not paid when due or as expected. The Debtors are seeking authority to pay and honor certain prepetition claims relating to, among other things, wages, salaries, and other related obligations and health and welfare benefits that the Debtors have historically

[2] In addition to the Employees, the Debtors supplement their workforce with independent contractors (the "Independent Contractors") engaged to complete discrete projects, as well as temporary workers (the "Temporary Staff") from several staffing agencies (collectively, the "Staffing Agencies") to fulfill certain duties on a short-term basis. The Debtors currently retain approximately 73 Independent Contractors and Temporary Staff in the aggregate, although this number fluctuates based on the Debtors' specific needs at any given time. The Independent Contractors and Temporary Staff are a critical supplement to the efforts of the Debtors' Employees.

provided to their Employees (collectively, the "Employee Compensation and Benefits"). The Debtors also seek to pay all costs incident to the Employee Compensation and Benefits.

8. Subject to the Court's approval of the relief requested herein, the Debtors intend to continue their prepetition Employee Compensation and Benefits programs in the ordinary course of business on a postpetition basis and to pay prepetition amounts (if any) related thereto. To the extent applicable, the Debtors also request authority to modify, change, and discontinue any of their Employee Compensation and Benefits and to implement new programs, policies, and benefits in the ordinary course of business during these chapter 11 cases and without the need for further Court approval, subject to applicable law.

## I. Compensation and Withholding Obligations.

### A. Unpaid Wages.

9. The Debtors pay their Employees' wage and salary obligations (collectively, the "Wages") on either a salaried or hourly basis. Salaried Employees' Wages are paid to date twice per month. The hourly Employees, on the other hand, are paid in arrears for work performed during a given 14-day period. Thus, twice per year, the Debtors pay the hourly Employees a "double" paycheck when the applicable payroll date falls at least 14 days after the end of the earliest 14-day period for which the hourly Employees are owed Wages.

10. As of the Petition Date, the Debtors' average semimonthly gross payroll expense, including all Wages, was approximately $850,000. As of the Petition Date, the Debtors believe that approximately $249,000 on account of accrued prepetition wages, salaries, overtime, and other compensation (excluding reimbursable expenses, paid time off, and amounts related to the Debtors' 401(k) plan) remains outstanding (collectively, the "Unpaid Wages"), substantially all of which will become payable in the first 21 days of these chapter 11 cases. The Debtors do not believe that any of the Unpaid Wages will exceed the $12,850 priority cap in place under

subsections (a)(4) and (a)(5) of section 507 of the Bankruptcy Code with respect to any individual Employee. By this Motion, the Debtors request authority to pay the Unpaid Wages in the ordinary course of business on a postpetition basis.

**B. Withholding Obligations**.

11. The Debtors routinely deduct certain amounts from Employees' paychecks, including garnishments, child support, commuter use deductions, and other pre-tax deductions payable pursuant to certain of the health and welfare programs (collectively, the "Deductions") for remittance to various third-party recipients. As of the Petition Date, the Debtors estimate that they hold aggregate Deductions of approximately $2,000, substantially all of which must be transferred to the appropriate recipients during the first 21 days of these chapter 11 cases.

12. Applicable law also requires the Debtors to withhold from the Employees' Wages certain amounts related to federal, state, and local income taxes, as well as Social Security and Medicare taxes (collectively, the "Employee Payroll Taxes") for remittance to the appropriate federal, state, and local taxing authorities. The Debtors must then match the Employee Payroll Taxes from their own funds and pay, based upon a percentage of gross payroll, additional amounts for state and federal unemployment insurance (collectively, the "Employer Payroll Taxes," and, together with the Employee Payroll Taxes, the "Payroll Taxes"). The Payroll Taxes generally are processed and forwarded to the appropriate federal, state, or local taxing authority, in connection with the disbursement of Employees' Wages. As of the Petition Date, the Debtors estimate that aggregate Payroll Taxes of approximately $22,600 remain outstanding, substantially all of which must be transferred to the appropriate recipients during the first 21 days of these chapter 11 cases.

13. The Debtors seek authority to transfer any unpaid Deductions and Payroll Taxes (together, the "Withholding Obligations") to the appropriate recipients in the ordinary course of

business and consistent with past practice and to continue remitting any Withholding Obligations in the ordinary course of business on a postpetition basis.

**C. Payroll Processing.**

14. The Debtors utilize ADP LLC ("ADP"), a third-party payroll service, to process payroll disbursements and provide certain related services. The Debtors have historically paid approximately $3,000 per month to ADP on account of such services. As of the Petition Date, the Debtors estimate that prepetition fees of approximately $3,000 payable to ADP remain outstanding. The failure to pay prepetition or postpetition payroll servicing fees may delay employee payroll disbursements to the detriment of their Employees and the Debtors' operations. The Debtors seek to continue administering payroll in the ordinary course of business on a postpetition basis (including paying any prepetition or postpetition amounts payable to ADP).

**D. Expense Reimbursements.**

15. The Debtors have historically reimbursed Employees for certain expenses incurred in the scope of their employment (collectively, the "Expense Reimbursements") related to, among other things, travel, lodging, ground transportation, meals, relocation costs, continuing professional education, and other reasonable and documented business-related expenses. On average, the Debtors have historically paid approximately $20,000 per month on account of Expense Reimbursements. As of the Petition Date, the Debtors estimate that aggregate Expense Reimbursements of approximately $20,000 remain outstanding, substantially all of which Employees incurred through the use of personal funds. The Debtors seek authority to honor such outstanding prepetition obligations in the ordinary course of business and consistent with past practice and to continue paying any such obligations related thereto in the ordinary course of business on a postpetition basis.

## II. Employee Benefit Programs.

### 1. Health Insurance Programs.

#### a. The Medical Plans.

16. The Debtors offer comprehensive, self-insured medical coverage to current Employees (the "Medical Plan"),[3] administered by United Medical Resources ("UMR") and Express Scripts. Under the Medical Plan, participants receive coverage for, among other things, preventive care, doctor visits, hospital care, prescription drugs, vision care, and wellness. Monthly health care premiums paid under the Medical Plan vary depending on whether the participant has dependents covered by the applicable plan. Participants pay semi-monthly premiums which are deducted from their paychecks.[4]

17. The Debtors have historically paid approximately $175,000 per month in the aggregate for their contributions to, the administrative and premium payments for, and claims under the Medical Plan. As of the Petition Date, the Debtors estimate that prepetition Medical Plan-related obligations of approximately $30,000 remain outstanding, substantially all of which will become payable within the first 21 days of these chapter 11 cases. The Debtors seek authority to pay in a manner consistent with historical practice any unpaid amounts on

---

[3] In addition, the Debtors provide their Employees who participate in the Medical Plans with access to UMR-administered flexible spending accounts (the "FSAs"), to cover incidental medical costs and dependent child care. As of the Petition Date, approximately 72 Employees use FSAs for medical costs or dependent child care, for which the Debtors pay a monthly administration fee of approximately $415. The Debtors do not make any contributions to any Employee's FSAs. As of the Petition Date, the Debtors do not believe there are any outstanding FSA-related obligations

[4] The Debtors also continue to provide certain benefits to certain former Employees after their termination, retirement, or disability leave, including benefits provided under the Consolidated Omnibus Budget Reconciliation Act of 1985 ("COBRA"). The Debtors are self-insured and only pay administrative fees to UMR for each COBRA participant. The Debtors are currently paying COBRA administrative fees for two former Employees whose employment with the Debtors terminated prior to the Petition Date, in connection with the Debtors pay a monthly administration fee of approximately $35. The Debtors do not pay any COBRA premiums. Thus, payment of the COBRA premiums imposes no net costs on the Debtors or their estates.

account of the Medical Plans and to continue administering the Medical Plans in the ordinary course of business and consistent with past practice.

**b. The Dental Plan.**

18. The Debtors also provide their Employees dental insurance through a plan administered by Guardian Life Insurance Company (the "Dental Plan"). The Dental Plan, which is fully insured, has historically cost approximately $9,950 per month exclusive of Employee contributions, which have historically totaled approximately $3,100 per month. As of the Petition Date, prepetition Dental Plan-related obligations of approximately $1,000 remain outstanding, substantially all of which will become payable during the first 21 days of these chapter 11 cases.

**2. Insurance, Disability, and Workers' Compensation Programs.**

**a. Life and AD&D Insurance Programs.**

19. The Debtors provide life and accidental death and dismemberment insurance coverage through Guardian, which provides maximum coverage per Employee of $50,000 for term life insurance and $50,000 for accidental life and dismemberment insurance coverage. As of the Petition Date, prepetition life and accidental death and dismemberment insurance obligations of approximately $530 remain outstanding, substantially all of which will become payable during the first 21 days of these chapter 11 cases.

**b. Disability Benefits.**

20. The Debtors provide Employees with long-term disability benefits (the "Disability Benefits") administered by Guardian. The Disability Benefits, available to Employees after 90 consecutive days of employment, generally permit eligible Employees to continue to receive 60 percent of their monthly wages (subject to a monthly maximum of $6,000)

in the event of qualified non-work-related illness or injury. As of the Petition Date, no Employees currently receive Disability Benefits.

21. As of the Petition Date, the Debtors do not believe they owe any prepetition amounts on account of the Disability Benefits and associated premiums, which have historically totaled approximately $3,000 per month.

**c. Workers' Compensation Program.**

22. The Debtors maintain workers' compensation insurance for Employees at the levels required by laws in the states in which the Debtors operate (collectively, the "Workers' Compensation Program"). More specifically, professional services and staffing firm Tri-State PEO administers the Workers' Compensation Program for Employees outside of Wyoming, a service that historically cost the Debtors approximately $157,400 annually and $13,117 per month prior to the Petition Date. Coverage for Wyoming-based Employees is maintained through a state-administered workers' compensation program, for which the Debtors pay annual fees of approximately $56,000 (the "Wyoming Workers' Compensation Fees"). The Debtors make installment payments on account of the Wyoming Workers' Compensation Fees on a periodic basis throughout the year and reconcile those payments on a quarterly basis. As of the Petition Date, the Debtors estimate Wyoming Workers' Compensation Fees of approximately $4,823, which amount is expected to become payable in connection with the next quarterly reconciliation on May 30, 2016.

23. No Employees are collecting workers' compensation from the Debtors, and no Employees are expected to assert claims under the Workers' Compensation Program against the Debtors at this time. Nevertheless, it is possible that certain obligations under the Workers' Compensation Program may have been incurred prepetition but have yet to be asserted against the Debtors. For the claims administration process to operate in an efficient manner and to

ensure that the Debtors comply with applicable state law, the Debtors must continue to assess, determine, and adjudicate claims (if any). Accordingly, the Debtors seek authority, but not direction, to continue to maintain the Workers' Compensation Program in the ordinary course of business, including by modifying the automatic stay solely to facilitate the administration of the Workers' Compensation Program.

**3. The 401(k) Plan.**

24. The Debtors provide all Employees with the opportunity to participate in a 401(k) employee stock ownership program (the "401(k) Plan") administered by Fidelity Investments.[5] Employees are generally eligible to participate in the 401(k) Plan as of the first day of the calendar quarter following the date they are hired. The 401(k) Plan generally provides for pre-tax deductions of compensation up to limits set by the Internal Revenue Code, as well as for certain post-tax deductions. Each Employee's 401(k) contributions are deducted automatically from each paycheck and transferred to a trust established under the 401(k) Plan (collectively, the "401(k) Deductions").

25. The Debtors match each eligible Employee's 401(k) Plan contributions on a dollar-for-dollar basis up to five percent of such Employee's eligible compensation (the "Matching Contributions"). The Debtors also supplement certain Employee's 401(k) plan contributions with additional discretionary contributions in an amount up to 8 percent of such Employee's eligible compensation (collectively, the "Discretionary Contributions" and, together with the Matching Contributions, the "401(k) Contributions"). The 401(k) Contributions, which have historically totaled approximately $2.5 million per year, are transferred to the 401(k) Plan

[5] The Debtors do not believe that any 401(k) Plan administrative fees are outstanding as of the Petition Date.

each pay period. As of the Petition Date, the Debtors are holding 401(k) Contributions and 401(k) Deductions of approximately $18,200 on behalf of eligible Employees.[6]

**4. Counseling Programs**.

26. The Debtors provide Employees with the ability to participate at no cost in confidential counseling and referral service that can assist Employees with a range of personal- and health-related problems (the "Employee Assistance Program"). The Debtors do not incur any costs in connection with the Employee Assistance Program and do not have any amounts outstanding as of the Petition Date.

**B. Tuition Reimbursement Programs.**

27. The Debtors reimburse certain tuition costs and other educational expenses incurred by Employees (the "Tuition Reimbursement Program"). As of the Petition Date, approximately three Employees participate in the Tuition Reimbursement Program, which has historically cost approximately $12,500 per semester. The Debtors estimate that, as of the Petition Date, accrued prepetition Tuition Reimbursement Program payments of approximately $12,500 will become payable by June 30, 2016.

**C. Paid Leave.**

28. The Debtors maintain the following paid leave benefit programs for Employees.

- PTO. In the ordinary course of business, the Debtors provide paid time off ("PTO") to each eligible Employee in the form of vacation days and sick days. Employees may not carry over vacation days from one calendar year to the next, but can carry over up to 15 sick days. Employees who are terminated or resign are not entitled to any cash payment on account accrued but unused PTO.

- Holidays. The Debtors also offer Employees eleven paid holidays throughout the year (collectively, the "Holidays"). Employees who are terminated or resign are not entitled to a cash payment in lieu of any accrued but unused Holidays, subject to deduction for any amounts owed to the Debtors.

[6] The Debtors' 401(k) Contributions are fully vested after four years of service with the Debtors.

- Paid Leave. Finally, the Debtors also permit their Employees to take certain other paid leaves of absence for personal reasons (including bereavement leave or jury duty), many of which are required by applicable law in certain jurisdictions which the Debtors operate (the "Other Paid Leave"). Employees are not entitled to any separate cash payments in addition to their normal compensation for the Other Paid Leave.[7]

29. The Debtors believe that the continuation of the Paid Leave and Unpaid Leave policies in accordance with prior practice is essential to maintaining Employee morale during these chapter 11 cases. Further, the policies are broad-based programs upon which all Employees have come to depend. Finally, the Debtors anticipate that their Employees will use any accrued Paid Leave in the ordinary course of business, which will not create any material cash flow requirements beyond the Debtors' normal payroll obligations.

**D. Postpetition Non-Employee Director Compensation of Debtor Ultra Petroleum Corp.**

30. The Board of Directors for Debtor Ultra Petroleum Corp. comprises one Employee and four independent directors (collectively, the "Independent Directors"). As of the Petition Date, the Independent Directors each received a $265,000 annual retainer (collectively, the "Annual Retainers"). One Independent Director also received an additional $15,000 in retainer for chairing the Audit Committee (the "Supplemental Retainer"). The Independent Directors do not receive additional fees for attendance at board meetings, special meetings, and standing committee meetings (collectively, the "Additional Fees"). The Independent Directors are also entitled to expense reimbursement for out-of-pocket expenses (together with the Annual Retainers, Supplemental Retainer, and Additional Fees, the "Independent Director Compensation"). The Debtors do not believe that any Independent Director Compensation remains outstanding as of the Petition Date.

[7] The Debtors also permit Employees to take unpaid leaves of absence for family medical leaves and military leaves (the "Unpaid Leave"). Employees are not entitled to cash payments for unused Unpaid Leave. The Debtors do not owe any amounts on account of Unpaid Leave as of the Petition Date.

## Basis for Relief

### I. Sufficient Cause Exists to Authorize the Debtors to Honor the Employee Compensation and Benefits.

#### A. Certain Employee Compensation and Benefits Are Entitled to Priority Treatment.

31. Sections 507(a)(4) and 507(a)(5) of the Bankruptcy Code entitle certain of the Employee Compensation and Benefits owed to the Employees to priority treatment. Under section 1129(a)(9)(b) of the Bankruptcy Code, the Debtors must pay these priority claims in full to confirm a chapter 11 plan. Thus, granting the relief sought herein should only affect the timing of certain payments to the Employees and should not negatively affect recoveries for general unsecured creditors. Indeed, the Debtors submit that payment of the Employee Compensation and Benefits at this time enhances value for the benefit of all interested parties.

#### B. Payment of Certain Employee Compensation and Benefits Is Required by Law.

32. The Debtors seek authority to pay the applicable Withholding Obligations to the appropriate third-party entities. These amounts principally represent Employee earnings that governments, Employees, and judicial authorities have designated for deduction from the Employees' paychecks. Indeed, certain Withholding Obligations are not property of the Debtors' estates because the Debtors have withheld such amounts from the Employees' paychecks on another party's behalf. *See* 11 U.S.C. § 541(b)(1), (d). Further, federal and state laws require the Debtors to withhold certain tax payments from the Employees' paychecks and to pay such amounts to the appropriate taxing authority. 26 U.S.C. §§ 6672, 7501(a); *see also City of Farrell v. Sharon Steel Corp.*, 41 F.3d 92, 95–97 (3d Cir. 1994) (finding that state law requiring a corporate debtor to withhold city income tax from its employees' wages created a trust relationship between debtor and the city for payment of withheld income taxes); *In re*

*DuCharmes & Co.*, 852 F.2d 194, 196 (6th Cir. 1988) (noting that individual officers of a company may be held personally liable for failure to pay trust fund taxes). Because the Withholding Obligations may not be property of the Debtors' estates, the Debtors request that the Court authorize them to transmit the Withholding Obligations on account of the Employees to the proper parties in the ordinary course of business.

33. Similarly, state laws require the Debtors to maintain the Workers' Compensation Program. If the Debtors fail to maintain the Workers' Compensation Program, state laws may prohibit the Debtors from operating in those states. Payment of all workers' compensation amounts is therefore crucial to the Debtors' continued operations and the success of the Debtors' ongoing chapter 11 process.

## II. Payment of the Employee Compensation and Benefits Is Proper Pursuant to Section 363(b) of the Bankruptcy Code and the Doctrine of Necessity.

34. Section 363(b)(1) of the Bankruptcy Code provides that "[t]he [debtor], after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." Courts in the Fifth Circuit have granted a debtor's request to use property of the estate outside of the ordinary course of business pursuant to section 363(b) of the Bankruptcy Code upon a finding that such use is supported by sound business reasons. *See, e.g.*, *Institutional Creditors of Cont'l Air Lines, Inc. v. Cont'l Air Lines, Inc. (In re Cont'l Air Lines, Inc.)*, 780 F.2d 1223, 1226 (5th Cir. 1986) ("[F]or a debtor-in-possession or trustee to satisfy its fiduciary duty to the debtor, creditors and equity holders, there must be some articulated business justification for using, selling, or leasing the property outside the ordinary course of business."); *see also In re Crutcher Res. Corp.*, 72 B.R. 628, 631 (Bankr. N.D. Tex. 1987) ("A Bankruptcy Judge has considerable discretion in approving a § 363(b) sale of property of the estate other than in the ordinary course of business,

but the movant must articulate some business justification for the sale."); *In re Terrace Gardens Park P'ship*, 96 B.R. 707, 714 (Bankr. W.D. Tex. 1989).

35. Furthermore, section 105(a) of the Bankruptcy Code further provides that a court "may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of" the Bankruptcy Code, pursuant to the "doctrine of necessity." The "doctrine of necessity" functions in a chapter 11 case as a mechanism by which the bankruptcy court can exercise its equitable power to allow payment of critical prepetition claims not explicitly authorized by the Bankruptcy Code and further supports the relief requested herein. *See In re CoServ, L.L.C.*, 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002) (recognizing the "doctrine of necessity"); *see also In re Lehigh & New Eng. Ry.*, 657 F.2d 570, 581 (3d Cir. 1981) (holding that a court may authorize payment of prepetition claims if such payment is essential to debtor's continued operation); *see also In re Just for Feet, Inc.*, 242 B.R. 821, 824–25 (D. Del. 1999) (holding that section 105(a) of the Bankruptcy Code "provides a statutory basis for payment of pre-petition claims" under the doctrine of necessity); *In re Columbia Gas Sys., Inc.*, 171 B.R. 189, 191–92 (Bankr. D. Del. 1994) (explaining that the doctrine of necessity is the standard in the Third Circuit for enabling a court to authorize the payment of prepetition claims prior to confirmation of a reorganization plan).

36. The necessity of payment doctrine is designed to foster a debtor's rehabilitation, which courts have recognized is "the paramount policy and goal of chapter 11." *In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 176 (Bankr. S.D.N.Y. 1989); *see also Just for Feet*, 242 B.R. at 826 (finding that payment of prepetition claims to certain trade vendors was "essential to the survival of the debtor during the chapter 11 reorganization"); *In re Quality Interiors, Inc.*, 127 B.R. 391, 396 (Bankr. N.D. Ohio 1991) ("[P]ayment by a

debtor-in-possession of pre-petition claims outside of a confirmed plan of reorganization is generally prohibited by the Bankruptcy Code," but "[a] general practice has developed . . . where bankruptcy courts permit the payment of certain pre-petition claims, pursuant to 11 U.S.C. § 105, where the debtor will be unable to reorganize without such payment."); *In re Eagle-Picher Indus., Inc.*, 124 B.R. 1021, 1023 (Bankr. S.D. Ohio 1991) (approving payment of prepetition unsecured claims of toolmakers as "necessary to avert a serious threat to the chapter 11 process").

37. Payment of the Employee Compensation and Benefits is warranted under this authority and the facts of these chapter 11 cases. The majority of the Employees rely exclusively on the Employee Compensation and Benefits to satisfy their daily living expenses. Consequently, Employees will be exposed to significant financial difficulties if the Debtors are not permitted to honor obligations for unpaid Employee Compensation and Benefits. Additionally, continuing ordinary course benefits will help maintain Employee morale and minimize the adverse effect of the commencement of these chapter 11 cases on the Debtors' ongoing business operations.

38. Moreover, the Employees provide the Debtors with services necessary to conduct the Debtors' businesses, and the Debtors believe that absent the payment of the Employee Compensation and Benefits owed to the Employees, the Debtors may experience Employee turnover and instability at this critical time in these chapter 11 cases. The oil and gas industry is a highly specialized business that requires unique technical expertise. The Debtors believe that without these payments, the Employees may become demoralized and unproductive because of the potential significant financial strain and other hardships these Employees may face. Such Employees may then elect to seek alternative employment opportunities. Additionally, a

significant portion of the value of the Debtors' business is tied to their workforce, which cannot be replaced without significant efforts—efforts that may not be successful given the overhang of these chapter 11 cases. The Debtors therefore believe that payment of the prepetition obligations with respect to the Employee Compensation and Benefits is a necessary and critical element of the Debtors' efforts to preserve value and will give the Debtors the greatest likelihood of retention of their Employees as the Debtors seek to operate their businesses in these chapter 11 cases.

39. Indeed, bankruptcy courts in the Fifth Circuit have recognized the importance of satisfying employee obligations in cases requesting relief similar to that requested herein. *See, e.g.*, *In re Goodrich Petrol. Corp.*, No. 16-31975 (MI) (Bankr. S.D. Tex. Apr. 25, 2016); *In re Sherwin Alumina Co.*, No. 16-20012 (DRJ) (Bankr. S.D. Tex. Jan. 13, 2016); *In re RAAM Glob. Energy Co.*, No. 15-35615 (MI) (Bankr. S.D. Tex. Nov. 18, 2015); *In re BPZ Res., Inc.*, No. 15-60016 (DRJ) (Bankr. S.D. Tex. Mar. 10, 2015); *In re Univ. Gen. Health Sys., Inc.*, No. 15-31086 (LZP) (Bankr. S.D. Tex. Mar. 2, 2015); *In re Autoseis, Inc.*, No. 14-20130 (RSS) (Bankr. S.D. Tex. Apr. 25, 2014).[8] Accordingly, the Debtors respectfully request that the Court authorize the Debtors to pay and continue the Employee Compensation and Benefits in the ordinary course of business and consistent with past practice.

## III. A Limited Waiver of the Automatic Stay for Workers' Compensation Claims is Appropriate Here.

40. Section 362(a) of the Bankruptcy Code operates to stay "the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the

[8] Because of the voluminous nature of the orders cited herein, such orders have not been attached to this Motion. Copies of these orders are available upon request of the Debtors' proposed counsel.

commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title . . . ." 11 U.S.C. § 362(a)(1).

41. Section 362 of the Bankruptcy Code, however, permits a debtor or other parties in interest to request a modification or termination of the automatic stay for "cause." *Id.* at § 362(d)(1). Cause exists here to modify the automatic stay to permit the Employees to proceed with workers' compensation claims in the appropriate judicial or administrative forum. Staying the workers' compensation claims could have a detrimental effect on the financial well-being and morale of the Employees.

**IV. Cause Exists to Authorize the Debtors' Financial Institutions to Honor Checks and Electronic Fund Transfers.**

42. The Debtors have sufficient funds to pay the amounts described in this Motion in the ordinary course of business by virtue of expected cash flows from ongoing business operations. In addition, under the Debtors' existing cash management system, the Debtors can readily identify checks or wire transfer requests as relating to an authorized payment in respect of the Employee Compensation and Benefits, as applicable. Accordingly, the Debtors believe that checks or wire transfer requests, other than those relating to authorized payments, will not be honored inadvertently. Therefore, the Debtors respectfully request that the Court authorize and direct all applicable financial institutions, when requested by the Debtors, to receive, process, honor, and pay any and all checks or wire transfer requests in respect of the relief requested in this Motion.

**Emergency Consideration**

43. The Debtors respectfully request emergency consideration of this Motion pursuant to Bankruptcy Rule 6003, which empowers a court to grant relief within the first 21 days after the commencement of a chapter 11 case "to the extent that relief is necessary to

avoid immediate and irreparable harm." Here, the Debtors believe an immediate and orderly transition into chapter 11 is critical to the viability of their operations and that any delay in granting the relief requested could hinder the Debtors' operations and cause irreparable harm. Furthermore, the failure to receive the requested relief during the first 21 days of these chapter 11 cases would severely disrupt the Debtors' operations at this critical juncture. Accordingly, the Debtors submit that they have satisfied the "immediate and irreparable harm" standard of Bankruptcy Rule 6003 and, therefore, respectfully request that the Court approve the relief requested in this Motion on an emergency basis.

**Waiver of Bankruptcy Rules 6004(a) and 6004(h)**

44. To implement the foregoing successfully, the Debtors seek a waiver of the notice requirements under Bankruptcy Rule 6004(a) and the 14-day stay of an order authorizing the use, sale, or lease of property under Bankruptcy Rule 6004(h).

**Reservation of Rights**

45. Nothing contained herein is intended or shall be construed as: (a) an admission as to the amount of, basis for, or validity of any claim against the Debtors under the Bankruptcy Code or other applicable nonbankruptcy law; (b) a waiver of the Debtors' rights to dispute any claim; (c) an assumption, adoption, or rejection of any agreement, contract, or lease under section 365 of the Bankruptcy Code; (d) an admission as to the validity, enforceability, or perfection of any lien on, security interest in, or other encumbrance on property of the Debtors' estates; or (e) a waiver of any claims or causes of action which may exist against any entity.

**Notice**

46. The Debtors will provide notice of this Motion to: (a) the Office of the United States Trustee for the Southern District of Texas; (b) the holders of the 30 largest unsecured claims against the Debtors (on a consolidated basis); (c) counsel to the agent under Ultra

Resources, Inc.'s prepetition credit agreement; (d) holders of Ultra Resources, Inc.'s private placement notes; (e) counsel to the ad hoc group of holders of Ultra Resources, Inc.'s private placement notes; (f) the trustee under Ultra Petroleum Corp.'s senior notes; (g) counsel to the ad hoc group of holders of Ultra Petroleum Corp.'s senior notes; (h) the United States Attorney's Office for the Southern District of Texas; (i) the Internal Revenue Service; (j) the Environmental Protection Agency; (k) the office of the attorneys general for the states in which the Debtors operate; (l) the Securities and Exchange Commission; and (m) any party that has requested notice pursuant to Bankruptcy Rule 2002. The Debtors submit that, in light of the nature of the relief requested, no other or further notice is required.

## <u>No Prior Request</u>

47. No prior request for the relief sought in this Motion has been made to this or any other court.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

WHEREFORE, the Debtors respectfully request that the Court enter the Interim Order and Final Order, granting the relief requested herein and such other relief as the Court deems appropriate under the circumstances.

Houston, Texas
April 30, 2016

/s/ *Patricia B. Tomasco*
**JACKSON WALKER, L.L.P.**
Patricia B. Tomasco (TX Bar No. 01797600)
Matthew D. Cavenaugh (TX Bar No. 24062656)
Jennifer F. Wertz (TX Bar No. 24072822)
1401 McKinney Street, Suite 1900
Houston, Texas 77010
Telephone: (713) 752-4200
Facsimile: (713) 752-4221
Email: ptomasco@jw.com
Email: mcavenaugh@jw.com
Email: jwertz@jw.com

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
James H.M. Sprayregen, P.C.
(*pro hac vice* admission pending)
David R. Seligman, P.C. (*pro hac vice* admission pending)
Michael B. Slade (TX Bar No. 24013521)
Gregory F. Pesce (*pro hac vice* admission pending)
300 North LaSalle
Chicago, Illinois 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200
Email: james.sprayregen@kirkland.com
david.seligman@kirkland.com
michael.slade@kirkland.com
gregory.pesce@kirkland.com

- and -

Christopher T. Greco (*pro hac vice* admission pending)
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900
Email: christopher.greco@kirkland.com

*Proposed Co-Counsel to the Debtors and Debtors in Possession*

**Certificate of Service**

I certify that on April 30, 2016, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

*/s/ Patricia B. Tomasco*
One of Counsel

# **Exhibit A**

**Proposed Interim Order**

**IN THE UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| ULTRA PETROLEUM CORP., *et al.*,[1] | § | Case No. 16-32202 (MI) |
| | § | |
| Debtors. | § | (Joint Administration Requested) |
| | § | |
| | § | **Re: Docket No. __** |

**INTERIM ORDER AUTHORIZING THE DEBTORS TO (I) PAY PREPETITION WAGES, SALARIES, OTHER COMPENSATION, REIMBURSABLE EXPENSES, AND DIRECTOR OBLIGATIONS AND (II) CONTINUE EMPLOYEE BENEFITS PROGRAMS**

Upon the motion (the "Motion")[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors") for entry of an interim order (this "Interim Order") authorizing the Debtors to (a) pay prepetition wages, salaries, other compensation, reimbursable expenses, and director obligations and (b) continue employee benefits programs in the ordinary course of business, including payment of certain prepetition obligations related thereto. In addition, the Debtors request that the Court schedule a final hearing within approximately 25 days of the commencement of these chapter 11 cases to consider approval of this Motion on a final basis, all as more fully set forth in the Motion; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334; and this Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and that this Court may enter a final order

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number (if any), are: Ultra Petroleum Corp. (3838); Keystone Gas Gathering, LLC; Ultra Resources, Inc. (0643); Ultra Wyoming, Inc. (6117); Ultra Wyoming LGS, LLC (0378); UP Energy Corporation (4296); UPL Pinedale, LLC (7214); and UPL Three Rivers Holdings, LLC (7158). The Debtors' service address is: 400 North Sam Houston Parkway East, Suite 1200, Houston, Texas 77060.

[2] Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Motion.

consistent with Article III of the United States Constitution; and this Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the relief requested in the Motion is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and this Court having found that the Debtors' notice of the Motion and opportunity for a hearing on the Motion were appropriate under the circumstances and no other notice need be provided; and this Court having reviewed the Motion and having heard the statements in support of the relief requested therein at a hearing before this Court (the "Hearing"); and this Court having determined that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor, it is HEREBY ORDERED THAT:

1. The Motion is granted on an interim basis as set forth herein.

2. The final hearing (the "Final Hearing") on the Motion shall be held on __________, 2016, at__:__ _.m., prevailing Central Time. Any objections or responses to entry of a final order on the Motion shall be filed on or before 4:00 p.m., prevailing Central Time, on __________, 2016, and shall be served on: (a) proposed counsel for the Debtors, Kirkland & Ellis LLP, 300 North LaSalle, Chicago, Illinois 60654, Attn.: Gregory F. Pesce; (b) proposed co-counsel for the Debtors, Jackson Walker L.L.P., 1401 McKinney Street, Suite 1900, Houston, Texas 77010, Attn.: Patricia B. Tomasco, Matthew D. Cavenaugh, and Jennifer F. Wertz; (c) counsel to any statutory committee appointed in these cases; and (d) the Office of the United States Trustee, 515 Rusk Street, Suite 3516, Houston, Texas 77002. In the event no objections to entry of a final order on the Motion are timely received, this Court may enter such final order without need for the Final Hearing.

3. The Debtors are authorized to continue and/or modify, change, and discontinue the Employee Compensation and Benefits and to implement new programs, policies, and benefits, in the ordinary course of business during these chapter 11 cases and without the need for further Court approval, subject to applicable law; *provided* that, pending entry of the Final Order, the Debtors shall not honor any Employee Compensation and Benefits obligations that exceed the priority amounts set forth in sections 507(a)(4) or 507(a)(5) of the Bankruptcy Code. For the avoidance of doubt, except as otherwise expressly set forth herein, nothing in this Order should be construed as authorizing any payments on account of the Employee Compensation and Benefits that are outside the ordinary course of business without prior Court approval.

4. The Debtors are authorized, to pay and honor prepetition amounts related to the Employee Compensation and Benefits programs.

5. Pursuant to section 362(d) of the Bankruptcy Code, Employees are authorized to proceed with their claims under the Workers' Compensation Program in the appropriate judicial or administrative forum and the Debtors are authorized to continue the Workers' Compensation Program and pay all prepetition amounts relating thereto in the ordinary course of business. This modification of the automatic stay pertains solely to claims under the Workers' Compensation Program.

6. Notwithstanding the relief granted in this Interim Order and any actions taken pursuant to such relief, nothing in this Interim Order shall be deemed: (a) an admission as to the amount of, basis for, or validity of any claim against the Debtors under the Bankruptcy Code or other applicable nonbankruptcy law; (b) a waiver of the Debtors' rights to dispute any claim; (c) an assumption, adoption, or rejection of any agreement, contract, or lease under section 365 of the Bankruptcy Code; (d) an admission as to the validity, enforceability, or perfection of any

lien on, security interest in, or other encumbrance on property of the Debtors' estates; or (e) a waiver of any claims or causes of action which may exist against any entity.

7. The banks and financial institutions on which checks were drawn or electronic payment requests made in payment of the prepetition obligations approved herein are authorized and directed to receive, process, honor, and pay all such checks and electronic payment requests when presented for payment, and all such banks and financial institutions are authorized to rely on the Debtors' designation of any particular check or electronic payment request as approved by this Interim Order.

8. The Debtors are authorized to issue postpetition checks, or to effect postpetition fund transfer requests, in replacement of any checks or fund transfer requests that are dishonored as a consequence of these chapter 11 cases with respect to prepetition amounts owed in connection with any Employee Compensation and Benefits.

9. The contents of the Motion satisfy the requirements of Bankruptcy Rule 6003(b).

10. Notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion and the requirements of Bankruptcy Rule 6004(a) and the Bankruptcy Local Rules for the Southern District of Texas are satisfied by such notice.

11. Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Interim Order are immediately effective and enforceable upon its entry.

12. The Debtors are authorized to take all actions necessary to effectuate the relief granted in this Interim Order in accordance with the Motion.

13. This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Interim Order.

Dated: ___________, 2016
Houston, Texas

___________________________________
THE HONORABLE MARVIN ISGUR
UNITED STATES BANKRUPTCY JUDGE

# **Exhibit B**

## **Proposed Final Order**

**IN THE UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| ULTRA PETROLEUM CORP., *et al.*,[1] | § | Case No. 16-32202 (MI) |
| | § | |
| Debtors. | § | (Joint Administration Requested) |
| | § | |
| | § | **Re: Docket No. __** |

**FINAL ORDER AUTHORIZING THE DEBTORS TO (I) PAY PREPETITION WAGES, SALARIES, OTHER COMPENSATION, REIMBURSABLE EXPENSES, AND DIRECTOR OBLIGATIONS AND (II) CONTINUE EMPLOYEE BENEFITS PROGRAMS**

Upon the motion (the "Motion")[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors") for entry of a final order (this "Final Order") authorizing the Debtors to (a) pay prepetition wages, salaries, other compensation, reimbursable expenses, and director obligations and (b) continue employee benefits programs in the ordinary course of business, including payment of certain prepetition obligations related thereto, all as more fully set forth in the Motion; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334; and this Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and that this Court may enter a final order consistent with Article III of the United States Constitution; and this Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number (if any), are: Ultra Petroleum Corp. (3838); Keystone Gas Gathering, LLC; Ultra Resources, Inc. (0643); Ultra Wyoming, Inc. (6117); Ultra Wyoming LGS, LLC (0378); UP Energy Corporation (4296); UPL Pinedale, LLC (7214); and UPL Three Rivers Holdings, LLC (7158). The Debtors' service address is: 400 North Sam Houston Parkway East, Suite 1200, Houston, Texas 77060.

[2] Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Motion.

found that the relief requested in the Motion is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and this Court having found that the Debtors' notice of the Motion and opportunity for a hearing on the Motion were appropriate under the circumstances and no other notice need be provided; and this Court having reviewed the Motion and having heard the statements in support of the relief requested therein at a hearing before this Court (the "Hearing"); and this Court having determined that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor, it is HEREBY ORDERED THAT:

1. The Motion is granted on a final basis as set forth herein.

2. The Debtors are authorized to continue and/or modify, change, and discontinue the Employee Compensation and Benefits and to implement new programs, policies, and benefits, in the ordinary course of business during these chapter 11 cases and without the need for further Court approval, subject to applicable law. For the avoidance of doubt, except as otherwise expressly set forth herein, nothing in this Order should be construed as authorizing any payments on account of the Employee Compensation and Benefits that are outside the ordinary course of business without prior Court approval.

3. Pursuant to section 362(d) of the Bankruptcy Code, Employees are authorized to proceed with their claims under the Workers' Compensation Program in the appropriate judicial or administrative forum and the Debtors are authorized to continue the Workers' Compensation Program and pay all prepetition amounts relating thereto in the ordinary course of business. This modification of the automatic stay pertains solely to claims under the Workers' Compensation Program.

4. Nothing herein shall be deemed to authorize the payment of any amounts which violates or implicates section 503(c) of the Bankruptcy Code; *provided* that nothing herein shall prejudice the Debtors' ability to seek approval of relief pursuant to section 503(c) of the Bankruptcy Code at a later time.

5. Notwithstanding the relief granted in this Final Order and any actions taken pursuant to such relief, nothing in this Final Order shall be deemed: (a) an admission as to the amount of, basis for, or validity of any claim against the Debtors under the Bankruptcy Code or other applicable nonbankruptcy law; (b) a waiver of the Debtors' rights to dispute any claim; (c) an assumption, adoption, or rejection of any agreement, contract, or lease under section 365 of the Bankruptcy Code; (d) an admission as to the validity, enforceability, or perfection of any lien on, security interest in, or other encumbrance on property of the Debtors' estates; or (e) a waiver of any claims or causes of action which may exist against any entity.

6. The banks and financial institutions on which checks were drawn or electronic payment requests made in payment of the prepetition obligations approved herein are authorized and directed to receive, process, honor, and pay all such checks and electronic payment requests when presented for payment, and all such banks and financial institutions are authorized to rely on the Debtors' designation of any particular check or electronic payment request as approved by this Final Order.

7. The Debtors are authorized to issue postpetition checks, or to effect postpetition fund transfer requests, in replacement of any checks or fund transfer requests that are dishonored as a consequence of these chapter 11 cases with respect to prepetition amounts owed in connection with any Employee Compensation and Benefits.

8. Notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion and the requirements of Bankruptcy Rule 6004(a) and the Bankruptcy Local Rules for the Southern District of Texas are satisfied by such notice.

9. Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Final Order are immediately effective and enforceable upon its entry.

10. The Debtors are authorized to take all actions necessary to effectuate the relief granted in this Final Order in accordance with the Motion.

11. This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Final Order.

Dated: ___________, 2016
Houston, Texas

______________________________________
THE HONORABLE MARVIN ISGUR
UNITED STATES BANKRUPTCY JUDGE