**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| ULTRA PETROLEUM CORP., *et al.*,[1] | ) | Case No. 16-32202 (MI) |
|  | ) |  |
| Debtors. | ) | (Jointly Administered) |
|  | ) |  |

**DEBTORS' JOINT CHAPTER 11 PLAN OF REORGANIZATION**

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**

James H.M. Sprayregen, P.C. (admitted *pro hac vice*)
David R. Seligman, P.C. (admitted *pro hac vice*)
Michael B. Slade (TX Bar No. 24013521) (admitted *pro hac vice*)
Gregory F. Pesce (admitted *pro hac vice*)
300 North LaSalle
Chicago, Illinois 60654
Telephone:      (312) 862-2000
Facsimile:      (312) 862-2200

- and -

Christopher T. Greco (admitted *pro hac vice*)
Matthew C. Fagen (*pro hac vice* admission pending)
601 Lexington Avenue
New York, New York 10022
Telephone:      (212) 446-4800
Facsimile:      (212) 446-4900

*Counsel to the Debtors and Debtors in Possession*

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number (if any), are:  Ultra Petroleum Corp. (3838); Keystone Gas Gathering, LLC; Ultra Resources, Inc. (0643); Ultra Wyoming, Inc. (6117); Ultra Wyoming LGS, LLC (0378); UP Energy Corporation (4296); UPL Pinedale, LLC (7214); and UPL Three Rivers Holdings, LLC (7158).

# TABLE OF CONTENTS

**Page**

INTRODUCTION ...................................................................................................................................1

**ARTICLE I DEFINED TERMS, RULES OF INTERPRETATION, COMPUTATION OF TIME, GOVERNING LAW, AND OTHER REFERENCES**.........................................................1
  1.1    Defined Terms ...................................................................................................1
  1.2    Rules of Interpretation .....................................................................................15
  1.3    Computation of Time ......................................................................................15
  1.4    Governing Law ...............................................................................................15
  1.5    Reference to Monetary Figures .......................................................................16
  1.6    Reference to the Debtors or the Reorganized Debtors ....................................16
  1.7    Controlling Document......................................................................................16

**ARTICLE II ADMINISTRATIVE AND PRIORITY CLAIMS**.......................................................16
  2.1    Administrative Claims .....................................................................................16
  2.2    Professional Fee Claims ...................................................................................17
  2.3    Priority Tax Claims..........................................................................................17
  2.4    Statutory Fees ..................................................................................................17

**ARTICLE III CLASSIFICATION, TREATMENT, AND VOTING OF CLAIMS AND INTERESTS**..........18
  3.1    Classification of Claims and Interests..............................................................18
  3.2    Treatment of Classes of Claims and Interests..................................................19
  3.3    Special Provision Governing Unimpaired Claims ...........................................24
  3.4    Elimination of Vacant Classes .........................................................................24
  3.5    Voting Classes; Presumed Acceptance by Non-Voting Classes ......................24
  3.6    Confirmation Pursuant to Sections 1129(a)(10) and 1129(b) of the Bankruptcy Code .................24
  3.7    Intercompany Interests ....................................................................................24

**ARTICLE IV PROVISIONS FOR IMPLEMENTATION OF THE PLAN**.......................................25
  4.1    Restructuring Transactions ..............................................................................25
  4.2    General Settlement of Claims and Interests .....................................................25
  4.3    New Common Stock ........................................................................................25
  4.4    Rights Offering ...............................................................................................25
  4.5    New OpCo Notes; Additional New OpCo Notes .............................................26
  4.6    Exemption from Registration Requirements ....................................................26
  4.7    Subordination ..................................................................................................27
  4.8    Vesting of Assets in the Reorganized Debtors.................................................27
  4.9    Cancellation of Notes, Instruments, Certificates, and Other Documents.........27
  4.10   Corporate Action.............................................................................................28
  4.11   Corporate Existence ........................................................................................28
  4.12   Charter, Bylaws, and New Organizational Documents ....................................28
  4.13   Effectuating Documents; Further Transactions ...............................................29
  4.14   Section 1146(a) Exemption .............................................................................29
  4.15   Directors and Officers .....................................................................................29
  4.16   Employee Arrangements of the Reorganized Debtors .....................................29
  4.17   Management Incentive Plan .............................................................................30
  4.18   Preservation of Causes of Action ....................................................................30
  4.19   Indenture Trustee Expenses .............................................................................30
  4.20   Reimbursement of Certain Fees and Expenses ................................................31

**ARTICLE V TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES**........31
  5.1    Assumption of Executory Contracts and Unexpired Leases ............................31

**TABLE OF CONTENTS (CONT'D)**

5.2     Claims Based on Rejection of Executory Contracts or Unexpired Leases...........................32
5.3     Cure of Defaults for Assumed Executory Contracts and Unexpired Leases....................32
5.4     Indemnification........................................................................................................................33
5.5     Insurance Policies....................................................................................................................33
5.6     Contracts and Leases After the Petition Date.....................................................................33
5.7     Modifications, Amendments, Supplements, Restatements, or Other Agreements..........33
5.8     Reservation of Rights..............................................................................................................34
5.9     Nonoccurrence of Effective Date...........................................................................................34

**ARTICLE VI PROVISIONS GOVERNING DISTRIBUTIONS** ...........................................................**34**
6.1     Distributions on Account of Claims Allowed and Existing HoldCo Common Stock
        Outstanding as of  the Distribution Record Date.................................................................34
6.2     Delivery of Distributions.........................................................................................................34
6.3     Minimum Distributions............................................................................................................36
6.4     Claims Paid or Payable by Third Parties...............................................................................36
6.5     Setoffs........................................................................................................................................37
6.6     Allocation Between Principal and Accrued Interest ...........................................................37

**ARTICLE VII PROCEDURES FOR RESOLVING DISPUTED CLAIMS** ........................................**37**
7.1     Allowance of Claims and Interests........................................................................................37
7.2     Claims Administration Responsibilities.................................................................................37
7.3     Estimation of Claims................................................................................................................37
7.4     Adjustment to Claims without Objection...............................................................................38
7.5     [Reserved.]................................................................................................................................38
7.6     Disallowance of Claims...........................................................................................................38
7.7     Amendments to Claims; Additional Claims..........................................................................38
7.8     No Distributions Pending Allowance.....................................................................................38
7.9     Distributions After Allowance................................................................................................38
7.10    Single Satisfaction of Claims..................................................................................................39

**ARTICLE VIII EFFECT OF CONFIRMATION OF THE PLAN** ......................................................**39**
8.1     Discharge of Claims and Termination of Interests...............................................................39
8.2     Releases by the Debtors...........................................................................................................39
8.3     Releases by Holders of Claims and Interests........................................................................40
8.4     Exculpation...............................................................................................................................40
8.5     Injunction..................................................................................................................................41
8.6     Protection Against Discriminatory Treatment......................................................................41
8.7     Release of Liens........................................................................................................................41
8.8     Reimbursement or Contribution.............................................................................................42
8.9     Recoupment..............................................................................................................................42
8.10    Subordination Rights...............................................................................................................42

**ARTICLE IX CONDITIONS PRECEDENT TO THE EFFECTIVE DATE**.......................................**42**
9.1     Conditions Precedent to the Effective Date ..........................................................................42
9.2     Waiver of Conditions Precedent............................................................................................43
9.3     Effect of Non-Occurrence of Conditions to Consummation.................................................43
9.4     Substantial Consummation......................................................................................................44

**ARTICLE X MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE PLAN**...................**44**
10.1    Modification of Plan ................................................................................................................44
10.2    Effect of Confirmation on Modifications................................................................................44
10.3    Revocation or Withdrawal of Plan .........................................................................................44

**TABLE OF CONTENTS (CONT'D)**

**Page**

**ARTICLE XI RETENTION OF JURISDICTION** ..................................................................................**44**

**ARTICLE XII MISCELLANEOUS PROVISIONS** ............................................................................**46**

| | | |
|---|---|---|
| 12.1 | Immediate Binding Effect | 46 |
| 12.2 | Additional Documents | 46 |
| 12.3 | Dissolution of the Committee | 46 |
| 12.4 | Payment of Statutory Fees | 46 |
| 12.5 | Reservation of Rights | 46 |
| 12.6 | Successors and Assigns | 47 |
| 12.7 | Service of Documents | 47 |
| 12.8 | Term of Injunctions or Stays | 48 |
| 12.9 | Entire Agreement | 48 |
| 12.10 | Plan Supplement | 48 |
| 12.11 | Non-Severability | 48 |
| 12.12 | Votes Solicited in Good Faith | 48 |
| 12.13 | Closing of Chapter 11 Cases | 49 |
| 12.14 | Waiver or Estoppel | 49 |

**INTRODUCTION**

The Debtors propose this Plan.  Although proposed jointly for administrative purposes, the Plan constitutes a separate Plan for each Debtor for the resolution of outstanding Claims against and Interests in each Debtor pursuant to the Bankruptcy Code.  The Debtors seek to consummate the Restructuring Transactions on the Effective Date of the Plan.  Each Debtor is a proponent of the Plan within the meaning of section 1129 of the Bankruptcy Code.  The Debtors are not currently proposing the substantive consolidation of their respective Estates; provided, that the Plan will provide for the substantive consolidation of certain of the Debtors to the extent necessary for Confirmation.  Absent the substantive consolidation of certain of the Debtors, the classifications of Claims and Interests set forth in Article III of this Plan shall be deemed to apply separately with respect to each Plan proposed by each Debtor, as applicable.  Reference is made to the Disclosure Statement for a discussion of the Debtors' history, business, properties and operations, projections, risk factors, a summary and analysis of this Plan, the Restructuring Transactions, and certain related matters.

ALL HOLDERS OF CLAIMS AND INTERESTS, TO THE EXTENT APPLICABLE, ARE ENCOURAGED TO READ THE PLAN AND THE DISCLOSURE STATEMENT IN THEIR ENTIRETY BEFORE VOTING TO ACCEPT OR REJECT THE PLAN.

**ARTICLE I**

**DEFINED TERMS, RULES OF INTERPRETATION,
COMPUTATION OF TIME, GOVERNING LAW, AND OTHER REFERENCES**

**1.1**    **Defined Terms**

1.      "*5.750% Senior Notes*" means those certain Senior Notes due 2018 issued by HoldCo pursuant to that certain 5.750% Senior Notes Indenture.

2.      "*5.750% Senior Notes Indenture*" means that certain Indenture, dated as of December 12, 2013, as amended, modified, or supplemented from time to time, by and between HoldCo, as issuer, and the 5.750% Senior Notes Indenture Trustee.

3.      "*6.125% Senior Notes*" means those certain Senior Notes due 2024 issued by HoldCo pursuant to that certain 6.125% Senior Notes Indenture.

4.      "*6.125% Senior Notes Indenture*" means that certain Indenture, dated as of September 18, 2014, as amended, modified, or supplemented from time to time, by and between HoldCo, as issuer, and the 6.125% Senior Notes Indenture Trustee.

5.      "*Additional New OpCo Notes*" means a further $200 million (or such other amount as may be determined by the Bankruptcy Court) of unsecured notes with an interest rate of [●] and a term of [●], that will be "held in reserve" pending, or issued by Reorganized OpCo following, the determination of the Bankruptcy Court on the allowance of the OpCo Note Makewhole Claims (if any), on the same terms as the New OpCo Notes.

6.      "*Administrative Claim*" means a Claim for costs and expenses of administration of the Chapter 11 Cases pursuant to sections 503(b), 507(a)(2), 507(b), or 1114(e)(2) of the Bankruptcy Code, including:  (a) the actual and necessary costs and expenses incurred on or after the Petition Date until and including the Effective Date of preserving the Estates and operating the Debtors' businesses; (b) Allowed Professional Fee Claims; (c) all Allowed requests for compensation or expense reimbursement for making a substantial contribution in the Chapter 11 Cases pursuant to sections 503(b)(3), (4), and (5) of the Bankruptcy Code; (d) all fees and charges assessed against the Estates pursuant to section 1930 of chapter 123 of title 28 of the United States Code; and (e) the Expense Reimbursement and the Commitment Premium (which, in the case of this clause (e), are deemed to be Allowed Administrative Claims pursuant to the Backstop Approval Order).

7.      "*Administrative Claims Bar Date*" means the deadline for Filing requests for payment of Administrative Claims, which:  (a) with respect to Administrative Claims other than Professional Fee Claims, shall be 30 days after the Effective Date; and (b) with respect to Professional Fee Claims, shall be 45 days after the Effective Date.

8.      "*Affiliate*" has the meaning set forth in section 101(2) of the Bankruptcy Code.

9.      "*Allowed*" means, with respect to any Claim, except as otherwise provided herein:  (a) a Claim that is evidenced by a Proof of Claim Filed by the Claims Bar Date or a request for payment of an Administrative Claim Filed by the Administrative Claims Bar Date, as applicable (or for which Claim under the Plan, the Bankruptcy Code, or pursuant to a Final Order, a Proof of Claim or request for payment of Administrative Claim is not or shall not be required to be Filed); (b) a Claim that is listed in the Schedules as not contingent, not unliquidated, and not disputed, and for which no Proof of Claim, as applicable, has been timely Filed; or (c) a Claim Allowed pursuant to the Plan or a Final Order of the Bankruptcy Court; provided, that with respect to a Claim described in clauses (a) and (b) above, such Claim shall be considered Allowed only if and to the extent that with respect to such Claim no objection to the allowance thereof has been interposed within the applicable period of time fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court, or such an objection is so interposed and the Claim has been Allowed by a Final Order.  Any Claim that has been or is hereafter listed in the Schedules as contingent, unliquidated, or disputed, and for which no Proof of Claim is or has been timely Filed, is not considered Allowed and shall be expunged without further action by the Debtors and without further notice to any party or action, approval, or order of the Bankruptcy Court.  Notwithstanding anything to the contrary herein, no Claim of any Entity subject to section 502(d) of the Bankruptcy Code shall be deemed Allowed unless and until such Entity pays in full the amount that it owes the applicable Debtor or Reorganized Debtor, as applicable.  For the avoidance of doubt, a Proof of Claim Filed after the Claims Bar Date or a request for payment of an Administrative Claim Filed after the Administrative Claims Bar Date, as applicable, shall not be Allowed for any purposes whatsoever absent entry of a Final Order allowing such late-filed Claim.  "*Allow*" and "*Allowing*" shall have correlative meanings.

10.      "*Avoidance Actions*" means any and all avoidance, recovery, subordination, or other claims, actions, or remedies that may be brought by or on behalf of the Debtors or their Estates or other authorized parties in interest under the Bankruptcy Code or applicable non-bankruptcy law, including actions or remedies under sections 502, 510, 542, 544, 545, and 547 through and including 553 of the Bankruptcy Code.

11.      "*Backstop Approval Motion*" means the motion seeking entry of the Backstop Approval Order.

12.      "*Backstop Approval Order*" means the order of the Bankruptcy Court entered on January [●], 2017 [Docket No. [●]].

13.      "*Backstop Commitment Agreement*" means the Backstop Commitment Agreement, dated as of November 21, 2016 and approved by the Bankruptcy Court pursuant to the Backstop Approval Order, pursuant to which the Backstop Parties have agreed to backstop the Rights Offering.

14.      "*Backstop Parties*" means, at any time or from time to time, the Consenting HoldCo Noteholders and Consenting HoldCo Equityholders that have committed to fund the Rights Offerings and are signatories to the Backstop Commitment Agreement, solely in their capacities as such, including their respective successors and assigns, all as provided in the Backstop Commitment Agreement.

15.      "*Bankruptcy Code*" means title 11 of the United States Code, 11 U.S.C. §§ 101–1532, as may be amended from time to time.

16.      "*Bankruptcy Court*" means the United States Bankruptcy Court for the Southern District of Texas, Houston Division, or any other court having jurisdiction over the Chapter 11 Cases, including, to the extent of the withdrawal of any reference under 28 U.S.C. § 157, the United States District Court for the Southern District of Texas.

17.     "*Bankruptcy Rules*" means the Federal Rules of Bankruptcy Procedure as promulgated by the United States Supreme Court under section 2075 of title 28 of the United States Code, 28 U.S.C. § 2075, as applicable to the Chapter 11 Cases and the general, local, and chambers rules of the Bankruptcy Court.

18.     "*Business Day*" means any day, other than a Saturday, Sunday, or a legal holiday in Texas, as defined in Bankruptcy Rule 9006(a).

19.     "*Cash*" means the legal tender of the United States of America or the equivalent thereof, including bank deposits and checks.

20.     "*Causes of Action*" means any and all claims, actions, causes of action, choses in action, suits, debts, damages, dues, sums of money, accounts, reckonings, judgments, remedies, rights of set-off, third-party claims, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, subrogation, contribution claims, reimbursement claims, indemnity claims, counterclaims, and crossclaims (including all claims and any avoidance, recovery, subordination, or other actions against insiders and/or any other Entities under the Bankruptcy Code) of any of the Debtors and/or the Debtors' estates, whether known or unknown, liquidated or unliquidated, fixed or contingent, matured or unmatured, disputed or undisputed, that are or may be pending on the Effective Date or commenced by the Reorganized Debtors after the Effective Date against any Entity, based in law or equity, including under the Bankruptcy Code, whether direct, indirect, derivative, or otherwise and whether asserted or unasserted as of the date of entry of the Confirmation Order.

21.     "*Certificate*" means any instrument evidencing a Claim or an Interest.

22.     "*Chapter 11 Cases*" means the procedurally consolidated chapter 11 cases pending for the Debtors in the Bankruptcy Court.

23.     "*Claim*" has the meaning set forth in section 101(5) of the Bankruptcy Code.

24.     "*Claims Bar Date*" means September 1, 2016, as defined in the *Order (I) Authorizing the Debtors to File a Consolidated List of Creditors and a Consolidated List of the 30 Largest Unsecured Creditors, (II) Authorizing the Debtors to Redact Certain Personal Identification Information for Individual Creditors, and (III) Approving the Form and Manner of Notifying Creditors of the Commencement of the Chapter 11 Cases and Other Information* [Docket No. 83].

25.     "*Claims Register*" means the official register of Claims against the Debtors maintained by the Notice and Claims Agent.

26.     "*Class*" means a category of holders of Claims or Interests under section 1122(a) of the Bankruptcy Code.

27.     "*Closing*" has the meaning ascribed to such term in the Backstop Commitment Agreement.

28.     "*Commitment Premium*" means a premium equal to (i) 6.0% of the committed Rights Offering Amount, payable to the Backstop Parties in New Common Stock (issued at the same price as the Rights Offering Shares), or (ii) 4.0% of the committed Rights Offering Amount, payable in Cash if the Backstop Commitment Agreement is terminated for any reason other than by the Debtors due to the failure of any Commitment Party to complete the Rights Offering in violation of the Backstop Commitment Agreement, in each case in accordance with the Backstop Commitment Agreement.

29.     "*Committee*" means the official committee of unsecured claimholders appointed in the Chapter 11 Cases on May 5, 2016 [Docket No. 121], which committee was reconstituted as of September 26, 2016 [Docket No. 569].

30.     "*Confirmation*" means the entry by the Bankruptcy Court of the Confirmation Order on the docket of the Chapter 11 Cases.

31.     "*Confirmation Date*" means the date on which the Bankruptcy Court enters the Confirmation Order on the docket of the Chapter 11 Cases within the meaning of Bankruptcy Rules 5003 and 9021.

32.     "*Confirmation Hearing*" means the hearing(s) before the Bankruptcy Court under section 1128 of the Bankruptcy Code at which the Debtors seek entry of the Confirmation Order.

33.     "*Confirmation Order*" means a Final Order of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code.

34.     "*Consenting HoldCo Equityholder*" means each HoldCo Equityholder that is party to the Plan Support Agreement, solely in its capacity as such.

35.     "*Consenting HoldCo Noteholder*" means each HoldCo Noteholder that is party to the Plan Support Agreement, solely in its capacity as such.

36.     "*Consummation*" means the occurrence of the Effective Date.

37.     "*Cure*" or "*Cure Claim*" means a Claim (unless waived or modified by the applicable counterparty) based upon a Debtor's defaults under an Executory Contract or an Unexpired Lease assumed by such Debtor under section 365 of the Bankruptcy Code, other than a default that is not required to be cured pursuant to section 365(b)(2) of the Bankruptcy Code.

38.     "*Cure Notice*" means a notice sent to counterparties in connection with an Executory Contract or Unexpired Lease proposed to be assumed or assumed and assigned under the Plan pursuant to section 365 of the Bankruptcy Code, the form and substance of which notice shall be approved by the Disclosure Statement Order and shall include (a) procedures for objecting to proposed assumptions or assumptions and assignments of Executory Contracts and Unexpired Leases, (b) the proposed amount to be paid on account of Cure Claims, and (c) procedures for resolution by the Bankruptcy Court of any related disputes.

39.     "*Definitive Documentation*" means the definitive documents and agreements governing the Restructuring Transactions (including any related orders, agreements, instruments, schedules or exhibits) that are contemplated by and referenced in the Plan (as amended, modified or supplemented from time to time), including, without limitation:  (i) the Plan (and all exhibits and other documents and instruments related thereto); (ii) the documents governing the New OpCo Notes and, if applicable, the Additional New OpCo Notes (and any agreements, documents or instruments related thereto); (iii) the Backstop Commitment Agreement and Rights Offering Procedures; (iv) the Plan Supplement; (v) the Disclosure Statement; (vi) the Solicitation Procedures; (vii) the Disclosure Statement Order; (viii) the Backstop Approval Motion; (ix) the Backstop Approval Order; and (x) the Confirmation Order.

40.     "*Definitive Documentation Plan Support Agreement Requirements*" means the requirements that the Definitive Documentation shall each be (i) consistent in all material respects with, and shall otherwise conform to, the terms and conditions set forth in the Plan Support Agreement (and the respective Exhibits and Schedules attached thereto, including the Plan Term Sheet and the Backstop Commitment Agreement) (in each case as may be amended or otherwise modified from time to time in accordance with the terms thereof) and (ii) in form and substance reasonably satisfactory to the Debtors and the Required Consenting Parties.

41.     "*D&O Liability Insurance Policies*" means all unexpired directors', managers', and officers' liability insurance policies (including any "tail policy") of any of the Debtors with respect to directors, managers, officers, and employees of the Debtors.

42.     "*Debtor Release*" means the releases set forth in <u>Section 8.2</u> of this Plan.

43.     "*Debtors*" means, collectively, each of the following, in each case, in such Entity's capacity as a debtor in possession in the Chapter 11 Cases:  Ultra Petroleum Corp.; UP Energy Corporation; Ultra Resources,

Inc.; Keystone Gas Gathering, LLC; Ultra Wyoming, Inc.; Ultra Wyoming LGS, LLC; UPL Pinedale, LLC; and UPL Three Rivers Holdings, LLC.

44.     "*Disclosure Statement*" means the *Disclosure Statement for Debtors' Joint Chapter 11 Plan of Reorganization* [Docket No. [●]], dated as of December [●], 2016, as may be amended, supplemented, or modified from time to time, including all exhibits and schedules thereto and references therein that relate to the Plan, that is prepared and distributed in accordance with the Bankruptcy Code, the Bankruptcy Rules, and any other applicable law.

45.     "*Disclosure Statement Order*" means the order of the Bankruptcy Court approving the Disclosure Statement and solicitation procedures with respect to the Plan, including the Rights Offering Procedures.

46.     "*Disputed*" means, with respect to any Claim, a Claim that is not yet Allowed, including (a) any Proof of Claim that, on its face, is contingent or unliquidated, (b) any Proof of Claim or request for payment of an Administrative Claim Filed after the Claims Bar Date, Administrative Claims Bar Date, Governmental Bar Date, or deadline for filing Proofs of Claim based on the Debtors' rejection of Executory Contracts or Unexpired Leases, as applicable, and (c) any Claim that is subject to an objection or a motion to estimate, in each case that has not been withdrawn, resolved, or ruled on by a Final Order of the Bankruptcy Court.

47.     "*Distribution Agent*" means, as applicable, the Reorganized Debtors or any Entity the Reorganized Debtors select to make or to facilitate distributions in accordance with the Plan.

48.     "*Distribution Date*" means, except as otherwise set forth herein, the date or dates determined by the Debtors or the Reorganized Debtors, on or after the Effective Date, with the first such date occurring on or as soon as is reasonably practicable after the Effective Date, upon which the Distribution Agent shall make distributions to holders of Allowed Claims and Existing HoldCo Common Stock entitled to receive distributions under the Plan.

49.     "*Distribution Record Date*" means the date for determining which holders of Allowed Claims and Existing HoldCo Common Stock are eligible to receive distributions under the Plan, which shall be (a) the Effective Date or (b) such other date as designated in a Bankruptcy Court order.

50.     "*Effective Date*" means the date that is the first Business Day after the Confirmation Date on which all conditions precedent to the occurrence of the Effective Date set forth in Section 9.1 of the Plan have been satisfied or waived in accordance with Section 9.2 of the Plan.

51.     "*Election OpCo Note Claim*" means an OpCo Note Claim with respect to which the holder thereof has made the OpCo Note/RCF Claim Election" on its ballot.

52.     "*Election OpCo RCF Claim*" means an OpCo Note Claim with respect to which the holder thereof has made the OpCo Note/RCF Claim Election" on its ballot.

53.     "*Entity*" has the meaning set forth in section 101(15) of the Bankruptcy Code.

54.     "*Equityholder Backstop Party*" shall have the meaning ascribed to such term in the Plan Support Agreement.

55.     "*Equityholder Committee*" means the ad hoc committee of holders of Existing HoldCo Common Stock that is represented by Brown Rudnick LLP and Gray, Reed & McGraw, P.C.

56.      "*Estate*" means the estate of any Debtor created under sections 301 and 541 of the Bankruptcy Code upon the commencement of the applicable Debtor's Chapter 11 Case.

57.     "*Exculpated Parties*" means each of the following, solely in its capacity as such:  (a) the Debtors; (b) the Reorganized Debtors; (c) the Consenting HoldCo Noteholders; (d) the HoldCo Notes Indenture Trustees; (e)

the Consenting HoldCo Equityholders; (f) the Backstop Parties; and (g) with respect to each of the foregoing parties in clauses (a) through (f), each of such Entity's current and former Affiliates, and such Entities' and their current and former Affiliates' current and former directors, managers, officers, principals, members, employees, equity holders (regardless of whether such interests are held directly or indirectly), predecessors, successors, assigns, subsidiaries, agents, advisory board members, financial advisors, partners, attorneys, accountants, investment bankers, consultants, representatives, and other professionals.

58.　　"*Executory Contract*" means a contract or lease to which one or more of the Debtors is a party that is subject to assumption or rejection under section 365 of the Bankruptcy Code.

59.　　"*Existing HoldCo Common Stock*" means HoldCo's authorized and issued common stock outstanding as of the applicable date; provided, that restricted stock units awarded under the 2014 LTIP shall not vest into HoldCo's authorized and issued common stock.

60.　　"*Existing HoldCo Equity Interest*" means any Interest in HoldCo outstanding immediately prior to the Effective Date.

61.　　"*Expense Reimbursement*" has the meaning set forth in the Backstop Commitment Agreement.

62.　　"*Federal Judgment Rate*" means the interest rate provided under 28 U.S.C. § 1961(a), calculated as of the Petition Date.

63.　　"*File*," "*Filed*," or "*Filing*" means file, filed, or filing in the Chapter 11 Cases with the Bankruptcy Court or, with respect to the filing of a Proof of Claim, the Notice and Claims Agent.

64.　　"*Final Decree*" means the decree contemplated under Bankruptcy Rule 3022.

65.　　"*Final Order*" means, as applicable, an order or judgment of the Bankruptcy Court or other court of competent jurisdiction with respect to the relevant subject matter that has not been reversed, stayed, modified, or amended, and as to which the time to appeal or seek certiorari has expired and no appeal or petition for certiorari has been timely taken, or as to which any appeal that has been taken or any petition for certiorari that has been or may be filed has been resolved by the highest court to which the order or judgment could be appealed or from which certiorari could be sought or the new trial, reargument, or rehearing shall have been denied, resulted in no modification of such order, or has otherwise been dismissed with prejudice.

66.　　"*General Unsecured Claim*" means Unsecured Claims other than HoldCo Note Claims, OpCo Note Claims, OpCo Note Makewhole Claims, if any, and OpCo RCF Claims.

67.　　"*Governmental Bar Date*" means October 26, 2016, as defined in the *Order (I) Authorizing the Debtors to File a Consolidated List of Creditors and a Consolidated List of the 30 Largest Unsecured Creditors, (II) Authorizing the Debtors to Redact Certain Personal Identification Information for Individual Creditors, and (III) Approving the Form and Manner of Notifying Creditors of the Commencement of the Chapter 11 Cases and Other Information* [Docket No. 83].

68.　　"*Governmental Unit*" has the meaning set forth in section 101(27) of the Bankruptcy Code.

69.　　"*HH Strip Price*" means the 12-month forward Henry Hub natural gas strip price.

70.　　"*HoldCo*" means Ultra Petroleum Corp., a Yukon corporation, the ultimate parent of each of the Debtors and the predecessor to Reorganized HoldCo.

71.　　"*HoldCo Equityholder*" means any holder of Existing HoldCo Common Stock.

72.　　"*HoldCo Equityholder New Common Stock Distribution*" means:  (i) 41.0% of the New Common Stock, subject to dilution on account of the Management Incentive Plan, in the event that the Settlement Plan Value

equals $6 billion; (ii) 31.8% of the New Common Stock, subject to dilution on account of the Management Incentive Plan, in the event that the Settlement Plan Value equals $5.5 billion; or (iii) 44.8% of the New Common Stock, subject to dilution on account of the Management Incentive Plan, in the event that the Settlement Plan Value equals $6.25 billion.

73.     "*HoldCo Equityholder Subscription Rights*" means:  (i) in the event that the Settlement Plan Value equals $6 billion, the Subscription Rights offered to holders of Existing HoldCo Common Stock to participate in the Rights Offering for 5.7% of the New Common Stock, inclusive of New Common Stock issued on account of the Commitment Premium and subject to dilution on account of the Management Incentive Plan; (ii) in the event that the Settlement Plan Value equals $5.5 billion, the Subscription Rights offered to holders of Existing HoldCo Common Stock to participate in the Rights Offering for 6.7% of the New Common Stock, inclusive of New Common Stock issued on account of the Commitment Premium and subject to dilution on account of the Management Incentive Plan; or (iii) in the event that the Settlement Plan Value equals $6.25 billion, the Subscription Rights offered to holders of Existing HoldCo Common Stock to participate in the Rights Offering for 5.3% of the New Common Stock, inclusive of New Common Stock issued on account of the Commitment Premium and subject to dilution on account of the Management Incentive Plan.

74.     "*HoldCo Equityholders Rights Offering Shares*" means 25% of the Rights Offering Shares.

75.     "*HoldCo General Unsecured Claim*" means any Unsecured Claim against HoldCo that is not a Note Claim.

76.     "*HoldCo Note Claim*" means any Claim against the Debtors arising on account of the HoldCo Notes Indentures and the HoldCo Notes.

77.     "*HoldCo Noteholder Backstop Party*" shall have the meaning ascribed to such term in the Plan Support Agreement.

78.     "*HoldCo Noteholder Committee*" means the ad hoc committee of HoldCo Noteholders that is represented by Paul, Weiss, Rifkind, Wharton & Garrison LLP and Porter Hedges LLP.

79.     "*HoldCo Noteholder New Common Stock Distribution*" means:  (i) 36.2% of the New Common Stock, subject to dilution on account of the Management Incentive Plan, in the event that the Settlement Plan Value equals $6 billion; (ii) 41.5% of the New Common Stock, subject to dilution on account of the Management Incentive Plan, in the event that the Settlement Plan Value equals $5.5 billion; or (iii) 34.0% of the New Common Stock, subject to dilution on account of the Management Incentive Plan, in the event that the Settlement Plan Value equals $6.25 billion.

80.     "*HoldCo Noteholder Subscription Rights*" means:  (i) in the event that the Settlement Plan Value equals $6 billion, the Subscription Rights offered to holders of Allowed HoldCo Note Claims to participate in the Rights Offering for their Pro Rata share of 17.1% of the New Common Stock, inclusive of New Common Stock issued on account of the Commitment Premium and subject to dilution on account of the Management Incentive Plan; (ii) in the event that the Settlement Plan Value equals $5.5 billion, the Subscription Rights offered to holders of Allowed HoldCo Note Claims to participate in the Rights Offering for their Pro Rata share of 20.0% of the New Common Stock, inclusive of New Common Stock issued on account of the Commitment Premium and subject to dilution on account of the Management Incentive Plan; or (iii) in the event that the Settlement Plan Value equals $6.25 billion, the Subscription Rights offered to holders of Allowed HoldCo Note Claims to participate in the Rights Offering for their Pro Rata share of 15.9% of the New Common Stock, inclusive of New Common Stock issued on account of the Commitment Premium and subject to dilution on account of the Management Incentive Plan.

81.     "*HoldCo Noteholders*" means holders of the HoldCo Notes, solely in their capacity as such.

82.     "*HoldCo Noteholders Rights Offering Shares*" means 75% of the Rights Offering Shares.

83.     "*HoldCo Notes*" means the 5.750% Senior Notes and the 6.125% Senior Notes.

84. "*HoldCo Notes Indenture Trustee*" means Delaware Trust Company, as successor trustee to U.S. Bank National Association, in its capacity either as indenture trustee under the 5.750% Senior Notes Indenture and the 6.125% Senior Notes Indenture.

85. "*HoldCo Notes Indentures*" means the 5.750% Senior Notes Indenture and 6.125% Senior Notes Indenture.

86. "*Impaired*" means, with respect to a Class of Claims or Interests, a Class of Claims or Interests that is impaired within the meaning of section 1124 of the Bankruptcy Code.

87. "*Indemnification Provisions*" means each of the Debtors' indemnification provisions in place whether in the Debtors' bylaws, certificates of incorporation, other formation documents, board resolutions, or contracts for the current and former directors, officers, managers, employees, attorneys, other professionals, and agents of the Debtors and such current and former directors', officers', and managers' respective Affiliates.

88. "*Indenture Trustee Charging Liens*" means a lien that secures repayment of the Indenture Trustee Expenses, to the extent set forth in the HoldCo Notes Indentures.

89. "*Indenture Trustee Expenses*" means any reasonable and documented fees and out-of-pocket costs and expenses, incurred prior to or after the Petition Date by the HoldCo Notes Indenture Trustees that are required to be paid under the HoldCo Notes Indentures.

90. "*Initial MIP Grants*" has the meaning set forth in Section 4.17 of the Plan.

91. "*Insider*" has the meaning set forth in section 101(31) of the Bankruptcy Code.

92. "*Intercompany Claim*" means any Claim held by a Debtor against another Debtor.

93. "*Intercompany Interest*" means, other than an Interest in HoldCo, an Interest in one Debtor held by another Debtor.

94. "*Interest*" means the common stock, preferred stock, limited liability company interests, and any other equity, ownership, or profits interests of any Debtor, including, without limitation, the Existing HoldCo Equity Interests, and options, warrants, rights, or other securities or agreements to acquire the common stock, preferred stock, limited liability company interests, or other equity, ownership, or profits interests of any Debtor (whether or not arising under or in connection with any employment agreement), including any Claim against the Debtors that is subject to subordination pursuant to section 510(b) of the Bankruptcy Code arising from or related to any of the foregoing; provided, however, that the term "Interests" shall not include the Intercompany Interests.

95. "*Interim Compensation Order*" means the *Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses for Professionals* [Docket No. 295].

96. "*KEIP Motion*" means the *Debtors' Motion for Entry of an Order Authorizing and Approving the Debtors' Key Employee Incentive Plan* [Docket No. 206].

97. "*KEIP Order*" means the *Order Authorizing and Approving the Debtors' Key Employee Incentive Plan*, entered by the Bankruptcy Court on June 28, 2016 [Docket No. 384].

98. "*KEIP Order Claims*" means the Claims Allowed pursuant to paragraph 1(c) of the KEIP Order.

99. "*KEIP Order Non-Priority Claim*" means the portion of any KEIP Order Claim that is not a KEIP Order Other Priority Claim, which is Allowed as an Unsecured Claim against each Debtor pursuant to the KEIP Order.

100.     "*KEIP Order Other Priority Claim*" means the portion of any holder's KEIP Order Claim that is not in excess of the cap established under section 507(a)(4) of the Bankruptcy Code.

101.     "*Lien*" has the meaning set forth in section 101(37) of the Bankruptcy Code.

102.     "*LTIP*" has the meaning ascribed to such term in the KEIP Motion.

103.     "*Majority Consenting HoldCo Equityholders*" has the meaning ascribed to such term in the Plan Support Agreement.

104.     "*Majority Consenting HoldCo Noteholders*" has the meaning ascribed to such term in the Plan Support Agreement.

105.     "*Majority Equityholder Backstop Parties*" has the meaning ascribed to such term in the Plan Support Agreement.

106.     "*Majority HoldCo Noteholder Backstop Parties*" has the meaning ascribed to such term in the Plan Support Agreement.

107.     "*Management Incentive Plan*" means a post-Effective Date management incentive plan, the material terms of which shall be consistent with <u>Section 4.17</u> of the Plan and shall be included in the Plan Supplement.

108.     "*Material M&A Transaction*" has the meaning ascribed to such term in the New Organizational Documents.

109.     "*NASDAQ*" means the Nasdaq Stock Market.

110.     "*New Board*" means Reorganized HoldCo's initial board of directors as of the Effective Date.

111.     "*New Common Stock*" means the common stock of Reorganized HoldCo.

112.     "*New OpCo Notes*" means the $2.0 billion in new unsecured notes with an interest rate of [●] and a term of [●], to be issued on the Effective Date by Reorganized OpCo, the form of which shall be included as part of the Plan Supplement.

113.     "*New Organizational Documents*" means the form of the certificates or articles of incorporation, bylaws, or such other applicable formation documents of each of the Reorganized Debtors, in form and substance reasonably satisfactory to the Required Consenting Parties.  The New Organizational Documents shall provide, among other things, that Reorganized OpCo and Reorganized Ultra Wyoming shall be domiciled in Delaware.

114.     "*New Revolver*" means a new revolving credit facility in the amount of [●] that [Reorganized OpCo] will enter into on the Effective Date, the form of which shall be included in the Plan Supplement.

115.     "*Notice and Claims Agent*" means Epiq Bankruptcy Solutions, LLC, the notice and claims agent retained by the Debtors in the Chapter 11 Cases pursuant to the *Agreed Order Authorizing Retention and Appointment of Epiq Bankruptcy Solutions, LLC as Claims, Noticing and Solicitation Agent* [Docket No. 148].

116.     "*OpCo*" means Ultra Resources, Inc., a Wyoming corporation and the predecessor to Reorganized OpCo.

117.     "*OpCo General Unsecured Claims*" means General Unsecured Claims against OpCo.

118.     "*OpCo Note Claims*" means any and all Claims against the Debtors arising on account of the OpCo Notes MNPA and the OpCo Notes, excluding the OpCo Note Guarantee Claims and OpCo Note Makewhole Claims, if any.

119.     "*OpCo Note Guarantee Claims*" means any and all Claims arising on account of HoldCo and UP Energy Corporation's guarantee of the OpCo Notes.

120.     "*OpCo Note Makewhole Claims*" means any Claims derived from or based upon makewhole, applicable premium, redemption premium, or other similar payment provisions under the OpCo Notes MNPA or any other alleged premiums, fees, or Claims arising from the treatment of the OpCo Notes hereunder, including any Claims for damages or other relief arising from such treatment.

121.     "*OpCo Noteholder*" means any holder of the OpCo Notes.

122.     "*OpCo Note/RCF Claim Election*" means the option available to a holder of an OpCo Note Claim or OpCo RCF Claim to elect into Class 5.

123.     "*OpCo Notes*" means the senior unsecured notes issued pursuant to the OpCo Notes MNPA.

124.     "*OpCo Notes MNPA*" means that certain Master Note Purchase Agreement, dated as of March 6, 2008, as amended modified, or supplemented in accordance with the terms thereof, by and among OpCo, as issuer, and the purchasers party thereto.

125.     "*OpCo RCF*" means the revolving credit facility incurred pursuant to that certain Credit Agreement, dated as of October 6, 2011, as amended, modified, or supplemented in accordance with the terms thereof, by and among OpCo, as borrower, the OpCo RCF Lenders, the OpCo RCF Agent, and certain other parties thereto.

126.     "*OpCo RCF Agent*" means Wilmington Savings Fund Society, FSB, as successor administrative agent to JPMorgan Chase Bank, N.A., with respect to the OpCo RCF.

127.     "*OpCo RCF Claims*" means any and all Claims arising under the OpCo RCF, excluding the OpCo RCF Guarantee Claims.

128.     "*OpCo RCF Guarantee Claims*" means any and all Claims arising on account of HoldCo and UP Energy Corporation's guarantee of the OpCo RCF.

129.     "*OpCo RCF Lenders*" means the lenders party to the OpCo RCF.

130.     "*OpCo Subsidiary General Unsecured Claims*" means General Unsecured Claims against the direct or indirect subsidiaries of OpCo.

131.     "*OpCo Trade General Unsecured Claims*" means OpCo General Unsecured Claims that are held by Trade Creditors as of the Voting Record Date.

132.     "*Other Existing HoldCo Equity Interest*" means any Existing HoldCo Equity Interest other than Existing HoldCo Common Stock.

133.     "*Other General Unsecured Claims*" means General Unsecured Claims other than OpCo General Unsecured Claims and OpCo Subsidiary General Unsecured Claims.

134.     "*Other OpCo General Unsecured Claims*" means OpCo General Unsecured Claims other than OpCo Trade General Unsecured Claims.

135.     "*Other Priority Claim*" means any Claim other than an Administrative Claim or a Priority Tax Claim entitled to priority in right of payment under section 507(a) of the Bankruptcy Code, including, without limitation, all KEIP Order Other Priority Claims.

136.     "*Person*" has the meaning set forth in section 101(41) of the Bankruptcy Code.

137.     "*Petition Date*" means April 29, 2016, the date on which each of the Debtors Filed its respective petition for relief commencing the Chapter 11 Cases.

138.     "*Plan*" means the chapter 11 plan, as it may be altered, amended, modified, or supplemented from time to time in accordance with the terms hereof, the Backstop Commitment Agreement, and the Plan Support Agreement, including the Plan Supplement and all exhibits, supplements, appendices, and schedules.

139.     "*Plan Supplement*" means the compilation of documents and forms of documents, schedules, and exhibits to the Plan (as amended, supplemented, or modified from time to time in accordance with the terms thereof, the Plan, the Bankruptcy Code, the Bankruptcy Rules, the Backstop Commitment Agreement, and the Plan Support Agreement), to be initially Filed by the Debtors no later than 14 days before the Confirmation Hearing, and additional documents or amendments to previously Filed documents, Filed before the Effective Date as additions or amendments to the Plan Supplement, including the following, as applicable:  (a) the New Organizational Documents; (b) a list of retained Causes of Action; (c) the Registration Rights Agreement; (d) the Schedule of Assumed Executory Contracts and Unexpired Leases; (e) the Schedule of Rejected Executory Contracts and Unexpired Leases; (f) the form of the Management Incentive Plan; (g) the New OpCo Notes and, if applicable, the Additional New OpCo Notes (and any agreements, documents, or instruments related thereto); (h) the documents governing the New Revolver (and any agreements, documents or instruments related thereto); and (i) any and all other documentation necessary to effectuate the Restructuring Transactions or that is contemplated by the Plan subject to the process and approval rights of the Required Consenting Parties set forth in the Backstop Commitment Agreement and the Plan Support Agreement; provided, that the Schedule of Assumed Executory Contracts and Unexpired Leases and Schedule of Rejected Executory Contracts and Unexpired Leases shall be Filed no later than 35 days before the Confirmation Hearing.  The Debtors shall have the right to amend the documents contained in, and exhibits to, the Plan Supplement through the Effective Date in accordance with the processes and approval rights of the Required Consenting Parties set forth in the Plan Support Agreement and the Backstop Commitment Agreement.

140.     "*Plan Support Agreement*" means that certain Plan Support Agreement, dated as of November 21, 2016, by and among the Debtors and the Plan Support Parties, including all exhibits thereto.

141.     "*Plan Support Parties*" means, collectively, (a) the Consenting HoldCo Noteholders and (b) the Consenting HoldCo Equityholders, in each case, that are party to the Plan Support Agreement.

142.     "*Plan Term Sheet*" means the term sheet attached as <u>Exhibit A</u> to the Plan Support Agreement.

143.     "*Priority Tax Claim*" means any Claim of a Governmental Unit of the kind specified in section 507(a)(8) of the Bankruptcy Code.

144.     "*Pro Rata*" means the proportion that the amount of an Allowed Claim or Existing HoldCo Common Stock in a particular Class bears to the aggregate amount of the Allowed Claims or Existing HoldCo Common Stock in that Class, or the proportion of the Allowed Claims or Existing HoldCo Common Stock in a particular Class and other Classes entitled to share in the same recovery as such Claim or Existing HoldCo Common Stock under the Plan.

145.     "*Professional*" means an Entity:  (a) employed in the Chapter 11 Cases pursuant to a Final Order in accordance with sections 327, 328, 363, or 1103 of the Bankruptcy Code and to be compensated for services rendered prior to or on the Effective Date pursuant to sections 327, 328, 329, 330, and 331 of the Bankruptcy Code, or (b) for which compensation and reimbursement has been Allowed by the Bankruptcy Court pursuant to section 503(b)(4) of the Bankruptcy Code.

146.    "*Professional Fee Amount*" means the aggregate amount of Professional Fee Claims and other unpaid fees and expenses that the Professionals estimate they have incurred or will incur in rendering services to the Debtors prior to and as of the Effective Date, which estimates Professionals shall deliver to the Debtors as set forth in Section 2.2 of this Plan.

147.    "*Professional Fee Claims*" means all Administrative Claims for the compensation of Professionals and the reimbursement of expenses incurred by such Professionals through and including the Confirmation Date to the extent such fees and expenses have not been paid pursuant to the Interim Compensation Order or any other order of the Bankruptcy Court.  To the extent the Bankruptcy Court denies or reduces by a Final Order any amount of a Professional's requested fees and expenses, then the amount by which such fees or expenses are reduced or denied shall reduce the applicable Professional Fee Claim.

148.    "*Professional Fee Escrow Account*" means an interest-bearing account funded by the Debtors with Cash on the Effective Date in an amount equal to the Professional Fee Amount as set forth in Section 2.2 of this Plan.

149.    "*Proof of Claim*" means a proof of Claim Filed against any of the Debtors in the Chapter 11 Cases.

150.    "*Registration Rights Agreement*" means the Registration Rights Agreement with respect to the New Common Stock, substantially in the form to be included in the Plan Supplement.

151.    "*Reinstated*" means, with respect to Claims and Interests, that the Claim or Interest shall be rendered Unimpaired for purposes of section 1124 of the Bankruptcy Code.  "*Reinstatement*" shall have a correlative meaning.

152.    "*Released Parties*" means each of the following, solely in its capacity as such:  (a) the Debtors; (b) the Reorganized Debtors; (c) the Consenting HoldCo Noteholders; (d) the HoldCo Notes Indenture Trustees; (e) the Consenting HoldCo Equityholders; (f) the Backstop Parties; (g) all holders of Claims and Interests who vote to accept the Plan; (h) all holders of Claims in Classes that are deemed to accept the Plan; (i) all holders of Claims and Interests in voting Classes who abstain from voting on the Plan and who do not opt out of the releases provided by the Plan; and (j) with respect to each of the foregoing parties in clauses (a) through (i), each of such Entity's current and former Affiliates, and such Entities' and their current and former Affiliates' current and former directors, managers, officers, principals, members, employees, equity holders (regardless of whether such interests are held directly or indirectly), predecessors, successors, assigns, subsidiaries, agents, advisory board members, financial advisors, partners, attorneys, accountants, investment bankers, consultants, representatives, and other professionals.

153.    "*Releasing Parties*" means collectively, and in each case solely in its capacity as such:  (a) the Debtors; (b) the Reorganized Debtors; (c) the Consenting HoldCo Noteholders; (d) the HoldCo Notes Indenture Trustees; (e) the Consenting HoldCo Equityholders; (f) Backstop Parties; (g) all holders of Claims and Interests who vote to accept the Plan; (h) all holders of Claims in Classes that are deemed to accept the Plan; (i) all holders of Claims and Interests in voting Classes who abstain from voting on the Plan and who do not opt out of the releases provided by the Plan; and (j) with respect to the foregoing clauses (a) through (i), each such Entity and its current and former Affiliates, and such Entities' and their current and former Affiliates' current and former directors, managers, officers, principals, members, employees, equity holders (regardless of whether such interests are held directly or indirectly), predecessors, successors, assigns, subsidiaries, agents, advisory board members, financial advisors, partners, attorneys, accountants, investment bankers, consultants, representatives, and other professionals.

154.    "*Reorganized Debtor*" means a Debtor, or any successor or assign thereto, by merger, consolidation, or otherwise, on and after the Effective Date, pursuant to the Plan.

155.    "*Reorganized HoldCo*" means HoldCo, or any successors thereto, by merger, consolidation, or otherwise, on and after the Effective Date, pursuant to the Plan.

156.    "*Reorganized OpCo*" means OpCo, or any successors thereto, by merger, consolidation, or otherwise, on and after the Effective Date, pursuant to the Plan.

157.    "*Reorganized Ultra Wyoming*" means Ultra Wyoming, Inc., or any successors thereto, by merger, consolidation, or otherwise, on and after the Effective Date, pursuant to the Plan.

158.    "*Reorganized UP Energy*" means UP Energy, or any successors thereto, by merger, consolidation, or otherwise, on and after the Effective Date, pursuant to the Plan.

159.    "*Required Consenting Parties*" means, collectively:  (a) the "Required Consenting Parties" as defined in the Plan Support Agreement at the time of the relevant determination; and (b) the "Requisite Commitment Parties" as defined in the Backstop Commitment Agreement at the time of the relevant determination, in the case of each of (a) and (b), each voting as a separate class (and with each class within each such class voting separately, as set forth in the Plan Support Agreement and the Backstop Commitment Agreement).

160.    "*Restructuring Transactions*" means the transactions described in, approved by, contemplated by, or necessary to implement the Plan in a manner consistent with the Plan Support Agreement and the Backstop Commitment Agreement, including, without limitation, the Rights Offering and the transactions contemplated by the New Organizational Documents, in each case in accordance with the processes and approval rights with respect to the Required Consenting Parties set forth in the Backstop Commitment Agreement and the Plan Support Agreement.

161.    "*Rights Offering*" means the distribution of Subscription Rights to the holders of Allowed HoldCo Note Claims and Existing HoldCo Common Stock, pursuant to which such holders are eligible to purchase Rights Offering Shares in accordance with the Rights Offering Procedures.

162.    "*Rights Offering Amount*" means an amount equal to $580,000,000.00

163.    "*Rights Offering Participants*" means, collectively, (i) the holders of Allowed HoldCo Note Claims and Existing HoldCo Common Stock as of the Rights Offering Record Date and (ii) the Backstop Parties.

164.    "*Rights Offering Procedures*" means the procedures governing the Rights Offering attached as Exhibit A to the Backstop Commitment Agreement, as approved by the Disclosure Statement Order.

165.    "*Rights Offering Record Date*" has the meaning set forth in the Rights Offering Procedures.

166.    "*Rights Offering Shares*" means the shares of New Common Stock distributed pursuant to and in accordance with the Rights Offering and subject to the terms of the Backstop Commitment Agreement and the Rights Offering Procedures, at a price that reflects a discount of 20% to Settlement Plan Value.  For the avoidance of doubt, the term "Rights Offering Shares" does not include the New Common Stock issued on account of the Commitment Premium.

167.    "*Schedule of Assumed Executory Contracts and Unexpired Leases*" means the schedule of Executory Contracts and Unexpired Leases to be assumed by the Debtors pursuant to the Plan, Filed as part of the Plan Supplement, as may be amended by the Debtors from time to time prior to the Confirmation Date.

168.    "*Schedule of Rejected Executory Contracts and Unexpired Leases*" means the schedule of Executory Contracts and Unexpired Leases to be rejected by the Debtors pursuant to the Plan, Filed as part of the Plan Supplement, as may be amended by the Debtors from time to time prior to the Confirmation Date.

169.    "*Schedules*" means, collectively, the schedules of assets and liabilities, schedules of Executory Contracts and Unexpired Leases, and statements of financial affairs Filed by the Debtors pursuant to section 521 of the Bankruptcy Code and in substantial accordance with any applicable official bankruptcy forms, as the same may have been amended, modified, or supplemented from time to time.

170.    "*Section 510(b) Claim*" means any Claim against any Debtor arising from rescission of a purchase or sale of a Security of the Debtors or any Affiliate of the Debtors, for damages arising from the purchase or sale of such a Security, or for reimbursement or contribution Allowed under section 502 of the Bankruptcy Code on account of such a Claim.

171.    "*Secured Claim*" means any Secured Non-Tax Claim or Secured Tax Claim.

172.    "*Secured Non-Tax Claim*" means, other than a Secured Tax Claim, any Claim:  (a) secured by a Lien on collateral to the extent of the value of such collateral, as determined in accordance with section 506(a) of the Bankruptcy Code or (b) subject to a valid right of setoff pursuant to section 553 of the Bankruptcy Code.

173.    "*Secured Tax Claim*" means any Claim: (a) secured by a Lien on collateral to the extent of the value of such collateral, as determined in accordance with section 506(a) of the Bankruptcy Code or (b) subject to a valid right of setoff pursuant to section 553 of the Bankruptcy Code,  that, absent its secured status, would be entitled to priority in right of payment under section 507(a)(8) of the Bankruptcy Code (determined irrespective of time limitations), including any related Secured Claim for penalties.

174.    "*Securities Act*" means the Securities Act of 1933, as amended, 15 U.S.C. §§ 77a–77aa, or any similar federal, state, or local law.

175.    "*Security*" shall have the meaning set forth in section 101(49) of the Bankruptcy Code.

176.    "*Servicer*" means an agent or other authorized representative of holders of Claims or Interests.

177.    "*Settlement Plan Value*" means:  (i) $6 billion, in the event that the Settlement Plan Value HH Strip Price is in the range of $3.25 to $3.65; (ii) $5.5 billion, in the event that the Settlement Plan Value HH Strip Price is below $3.25; or (iii) $6.25 billion, in the event that the Settlement Plan Value HH Strip Price is above $3.65.

178.    "*Settlement Plan Value HH Strip Price*" means the average of the closing HH Strip Price for the seven (7) trading days preceding the Subscription Commencement Date.

179.    "*Share Reserve*" has the meaning set forth in Section 4.17 of this Plan.

180.    "*Solicitation Procedures*" means the solicitation materials with respect to the Plan, in the form attached as Schedule 2 to the Disclosure Statement Order.

181.    "*Subscription Commencement Date*" has the meaning ascribed to such term in the Disclosure Statement Order.

182.    "*Subscription Rights*" means the rights to purchase Rights Offering Shares in accordance with the Rights Offering Procedures.

183.    "*Trade Creditors*" means holders of General Unsecured Claims against the Debtors with whom the Reorganized Debtors intend to continue to transact business in the ordinary course of their operations.

184.    "*U.S. Trustee*" means the Office of the United States Trustee for the Southern District of Texas.

185.    "*U.S. Trustee Fees*" means fees arising under 28 U.S.C. § 1930(a)(6) and, to the extent applicable, accrued interest thereon arising under 31 U.S.C. § 3717.

186.    "*Unclaimed Distribution*"  means any distribution under the Plan on account of an Allowed Claim or Existing HoldCo Common Stock to a holder that has not:  (a) accepted a particular distribution or, in the case of distributions made by check, negotiated such check; (b) given notice to the Reorganized Debtors of an intent to accept a particular distribution; (c) responded to the Debtors' or Reorganized Debtors' requests for information necessary to facilitate a particular distribution; or (d) taken any other action necessary to facilitate such distribution.

187.     "*Unexpired Lease*" means a lease of nonresidential real property to which one or more of the Debtors is a party that is subject to assumption or rejection under section 365 of the Bankruptcy Code.

188.     "*Unimpaired*" means, with respect to a Class of Claims or Interests, a Class of Claims or Interests that is unimpaired within the meaning of section 1124 of the Bankruptcy Code.

189.     "*Unlegended Shares*" has the meaning ascribed to such term in the Backstop Commitment Agreement.

190.     "*Unsecured Claim*" means any Claim that is not a Secured Claim, a claim under section 510(b) of the Bankruptcy Code, or a claim that may be asserted relating to any Interest.

191.     "*Unsubscribed Shares*" has the meaning ascribed to such term in the Backstop Commitment Agreement.

192.     "*UP Energy*" means UP Energy Corporation., a Nevada corporation and the predecessor to Reorganized UP Energy.

193.     "*Voting Deadline*" means February [●], 2017, as defined in the Disclosure Statement Order.

**1.2     Rules of Interpretation**

For purposes of the Plan:  (a) in the appropriate context, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and the neuter gender; (b) unless otherwise specified, any reference herein to a contract, lease, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that such document shall be in such form or on such terms and conditions; (c) unless otherwise specified, any reference herein to an existing document, schedule, or exhibit, shall mean such document, schedule, or exhibit, as it may have been or may be amended, modified, or supplemented; (d) unless otherwise specified, all references herein to "Articles" and "Sections" are references to Articles and Sections, respectively, hereof or hereto; (e) the words "herein," "hereof," and "hereto" refer to the Plan in its entirety rather than to any particular portion of the Plan; (f) captions and headings to Articles and Sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan; (g) unless otherwise specified herein, the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; (h) any term used in capitalized form herein that is not otherwise defined but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to such term in the Bankruptcy Code or the Bankruptcy Rules, as applicable; (i) references to docket numbers of documents Filed in the Chapter 11 Cases are references to the docket numbers under the Bankruptcy Court's CM/ECF system; (j) references to "Proofs of Claim," "holders of Claims," "Disputed Claims," and the like shall include "Proofs of Interest," "holders of Interests," "Disputed Interests," and the like as applicable; (k) references to "shareholders," "directors," and/or "officers" shall also include "members" and/or "managers," as applicable, as such terms are defined under the applicable state limited liability company laws; and (l) the words "include" and "including," and variations thereof, shall not be deemed to be terms of limitation, and shall be deemed to be followed by the words "without limitation."

**1.3     Computation of Time**

Bankruptcy Rule 9006(a) applies in computing any period of time prescribed or Allowed herein.

**1.4     Governing Law**

Except to the extent the Bankruptcy Code or Bankruptcy Rules apply, and subject to the provisions of any contract, lease, instrument, release, indenture, or other agreement or document entered into expressly in connection herewith, the rights and obligations arising hereunder shall be governed by, and construed and enforced in accordance with, the laws of the state of New York, without giving effect to conflict of laws principles.

**1.5**     **Reference to Monetary Figures**

All references in the Plan to monetary figures refer to currency of the United States of America, unless otherwise expressly provided.

**1.6**     **Reference to the Debtors or the Reorganized Debtors**

Except as otherwise specifically provided in the Plan to the contrary, references in the Plan to the Debtors or to the Reorganized Debtors mean the Debtors and the Reorganized Debtors, as applicable, to the extent the context requires.

**1.7**     **Controlling Document**

In the event of an inconsistency between the Plan and the Disclosure Statement, the terms of the Plan shall control.  In the event of an inconsistency between the Plan and the Plan Supplement, the Plan shall control.  In the event of any inconsistency between the Plan and the Confirmation Order, the Confirmation Order shall control.

**ARTICLE II**

**ADMINISTRATIVE AND PRIORITY CLAIMS**

In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims, Professional Fee Claims, and Priority Tax Claims have not been classified and thus are excluded from the Classes of Claims and Interests set forth in Article III of this Plan.

**2.1**     **Administrative Claims**

Unless otherwise agreed to by the holder of an Allowed Administrative Claim and the Debtors, or the Reorganized Debtors, as applicable, each holder of an Allowed Administrative Claim (other than holders of Professional Fee Claims, and Claims for fees and expenses pursuant to section 1930 of chapter 123 of title 28 of the United States Code) will receive in full and final satisfaction of its Allowed Administrative Claim an amount of Cash equal to the amount of such Allowed Administrative Claim either:  (a) if an Administrative Claim is Allowed on or prior to the Effective Date, on the Effective Date or as soon as reasonably practicable thereafter (or, if not then due, when such Allowed Administrative Claim is due or as soon as reasonably practicable thereafter); (b) if such Administrative Claim is not Allowed as of the Effective Date, unless otherwise agreed, no later than 30 days after the date on which an order Allowing such Administrative Claim becomes a Final Order, or as soon as reasonably practicable thereafter; (c) if such Allowed Administrative Claim is based on liabilities incurred by the Debtors in the ordinary course of their business after the Petition Date, in accordance with the terms and conditions of the particular transaction giving rise to such Allowed Administrative Claim without any further action by the holders of such Allowed Administrative Claim (for the avoidance of doubt, holders of such Allowed Administrative Claims shall not be required to file a request for payment of administrative claim as provided in the second paragraph of this Section 2.1 of this Plan); (d) at such time and upon such terms as may be agreed upon by such holder and the Debtors or the Reorganized Debtors, as applicable; or (e) at such time and upon such terms as set forth in an order of the Bankruptcy Court.

Except as otherwise provided in this Section 2.1 of this Plan, and except with respect to Administrative Claims that are Professional Fee Claims, requests for payment of Administrative Claims must be Filed and served on the Reorganized Debtors pursuant to the procedures specified in the Confirmation Order and the notice of entry of the Confirmation Order no later than the Administrative Claims Bar Date. Holders of Administrative Claims that are required to, but do not, File and serve a request for payment of such Administrative Claims by such date shall be forever barred, estopped, and enjoined from asserting such Administrative Claims against the Debtors or their property and such Administrative Claims shall be deemed discharged as of the Effective Date. Objections to such requests, if any, must be Filed and served on the Reorganized Debtors and the requesting party no later than 60 days after the Effective Date. Notwithstanding the foregoing, no request for payment of an Administrative Claim need be Filed with respect to an Administrative Claim previously Allowed.

## 2.2    Professional Fee Claims

All requests for payment of Professional Fee Claims for services rendered and reimbursement of expenses incurred prior to the Confirmation Date must be filed no later than the Administrative Claims Bar Date. Any requests for Professional Fee Claims must be served in accordance with prior orders of the Bankruptcy Court, including the Interim Compensation Order. The Bankruptcy Court shall determine the Allowed amounts of such Professional Fee Claims after notice and a hearing in accordance with the procedures established by the Bankruptcy Code. The Reorganized Debtors shall pay Professional Fee Claims in Cash in the amount the Bankruptcy Court allows, including from the Professional Fee Escrow Account, which the Debtors will establish in trust for the Professionals and fund with Cash equal to the Professional Fee Amount no later than three Business Days prior to the Effective Date. Professionals shall deliver to the Debtors their estimates for purposes of the Reorganized Debtors computing the Professional Fee Amount no later than five Business Days prior to the Effective Date. For the avoidance of doubt, no such estimate shall be deemed to limit the amount of the fees and expenses that are the subject of a Professional's final request for payment of Professional Fee Claims filed with the Bankruptcy Court. If a Professional does not provide an estimate, the Debtors or the Reorganized Debtors, as applicable, may estimate the unpaid and unbilled fees and expenses of such Professional. No funds in the Professional Fee Escrow Account shall be property of the Estates or subject to any Lien. Any funds remaining in the Professional Fee Escrow Account after all Allowed Professional Fee Claims have been paid will be turned over to the Reorganized Debtors.

From and after the Confirmation Date, any requirement that Professionals comply with sections 327 through 331 and 1103 of the Bankruptcy Code in seeking retention or compensation for services rendered after such date shall terminate, and the Reorganized Debtors may employ and pay any Professional in the ordinary course of business without any further notice to or action, order, or approval of the Bankruptcy Court.

## 2.3    Priority Tax Claims

Each holder of an Allowed Priority Tax Claim against a Debtor due and payable on or before the Effective Date shall receive, in the discretion of the Reorganized Debtors, either (a) on the Effective Date, or as soon as practicable thereafter, from the respective Debtor liable for such Allowed Priority Tax Claim, payment in Cash in an amount equal to the amount of such Allowed Priority Tax Claim or (b) treatment provided in section 1129(a)(9) of the Bankruptcy Code. To the extent any Allowed Priority Tax Claim is not due and owing on the Effective Date, such Claim shall be paid in accordance with the terms of any agreement between the Debtors and the holder of such Claim, or as may be due and payable under applicable non-bankruptcy law, or in the ordinary course of business.

## 2.4    Statutory Fees

All fees payable pursuant to section 1930 of Title 28 of the U.S. Code due and payable through the Effective Date shall be paid by the Debtors, or the Reorganized Debtors, as applicable, on or before the Effective Date. Any deadline for filing claims in the Chapter 11 Cases shall not apply to fees payable by any of the Debtors pursuant to section 1930 of Title 28 of the U.S. Code or any interest accruing thereon. On and after the Effective Date, the Reorganized Debtors shall pay any and all such fees when due and payable, and shall File with the Bankruptcy Court quarterly reports in a form reasonably acceptable to the U.S. Trustee and consistent with the requirements of the Local Rules of the United States Bankruptcy Court for the Southern District of Texas. Each Debtor shall remain obligated to pay fees pursuant to section 1930 of Title 28 of the U.S. Code until the earliest of

that particular Debtor's case being converted to a case under Chapter 7 of the Bankruptcy Code or dismissed or the issuance of a Final Decree.

## ARTICLE III

### CLASSIFICATION, TREATMENT, AND VOTING OF CLAIMS AND INTERESTS

**3.1    Classification of Claims and Interests**

This Plan constitutes a separate Plan proposed by each Debtor.  Except for the Claims addressed in Article II of this Plan, all Claims and Interests are classified in the Classes set forth below in accordance with section 1122 of the Bankruptcy Code.  A Claim or an Interest is classified in a particular Class only to the extent that the Claim or Interest qualifies within the description of that Class and is classified in other Classes to the extent that any portion of the Claim or Interest qualifies within the description of such other Classes.  A Claim also is classified in a particular Class for the purpose of receiving distributions under the Plan only to the extent that such Claim is an Allowed Claim in that Class and has not been paid, released, or otherwise satisfied prior to the Effective Date.  For all purposes under the Plan, each Class will contain sub-Classes for each of the Debtors (*i.e.*, there will be 15 Classes for each Debtor); provided, that any Class that is vacant as to a particular Debtor will be treated in accordance with Section 3.4 below.

Below is a chart assigning each Class a number for purposes of identifying each separate Class.

| Class | Claim or Interest | Status | Voting Rights |
|---|---|---|---|
| 1 | Other Priority Claims | Unimpaired | Presumed to Accept |
| 2 | Secured Non-Tax Claims | Unimpaired | Presumed to Accept |
| 3 | HoldCo Note Claims | Impaired | Entitled to Vote |
| 4 | Non-Election OpCo Note Claims and Non-Election OpCo RCF Claims | Impaired | Entitled to Vote |
| 5 | Election OpCo Note Claims and Election OpCo RCF Claims | Impaired | Entitled to Vote |
| 6 | OpCo Note Guarantee Claims and OpCo RCF Guarantee Claims | Unimpaired | Presumed to Accept |
| 7 | OpCo Note Makewhole Claims | Impaired | Entitled to Vote |
| 8 | OpCo Subsidiary General Unsecured Claims | Unimpaired | Presumed to Accept |
| 9 | OpCo Trade General Unsecured Claims | Impaired | Entitled to Vote |
| 10 | Other OpCo General Unsecured Claims | Impaired | Entitled to Vote |
| 11 | Other General Unsecured Claims | Impaired | Entitled to Vote |
| 12 | Intercompany Claims | Unimpaired or Impaired | Presumed to Accept or Presumed to Reject |
| 13 | Intercompany Interests | Unimpaired or Impaired | Presumed to Accept or Presumed to Reject |

| Class | Claim or Interest | Status | Voting Rights |
|-------|-------------------|--------|---------------|
| 14 | Existing HoldCo Common Stock | Impaired or Unimpaired[2] | Entitled to Vote |
| 15 | Other Existing HoldCo Equity Interests | Impaired | Deemed to Reject |

## 3.2   Treatment of Classes of Claims and Interests

Except to the extent that the Debtors and a holder of an Allowed Claim or Existing HoldCo Common Stock, as applicable, agree to either less favorable treatment, or (to the extent consistent with the requirements of the Bankruptcy Code and the approval rights of the Required Consenting Parties under the Backstop Commitment Agreement and the Plan Support Agreement) more favorable treatment, such holder shall receive under the Plan the treatment described below in full and final satisfaction, settlement, release, and discharge of, and in exchange for, such holder's Allowed Claim or Existing HoldCo Common Stock.  Unless otherwise indicated, the holder of an Allowed Claim or Existing HoldCo Common Stock, as applicable, shall receive such treatment on the Effective Date or as soon as reasonably practicable thereafter.

(a)   **Class 1 — Other Priority Claims**

(1)   *Classification*:  Class 1 consists of all Other Priority Claims against any Debtor.

(2)   *Treatment*:  Each holder of an Allowed Other Priority Claim shall receive payment in full, in Cash, of the unpaid portion of its Allowed Other Priority Claim on the latest of: (i) on or as soon as reasonably practicable after the Effective Date if such Allowed Other Priority Claim is Allowed as of the Effective Date; (ii) on or as soon as reasonably practicable after the date such Other Priority Claim is Allowed; and (iii) the date such Allowed Other Priority Claim becomes due and payable, or as soon thereafter as is reasonably practicable.

(3)   *Voting*:  Class 1 is Unimpaired and is not entitled to vote to accept or reject the Plan.

(b)   **Class 2 — Secured Non-Tax Claims**

(1)   *Classification*:  Class 2 consists of all Secured Non-Tax Claims against any Debtor.

(2)   *Treatment*:  Each holder of an Allowed Secured Non-Tax Claim shall receive, at the Debtors' option, either (i) Reinstatement of its Allowed Secured Non-Tax Claim or (ii) payment in full, in Cash, of the unpaid portion of its Allowed Secured Non-Tax Claim on the latest of:  (a) on or as soon as reasonably practicable after the Effective Date if such Allowed Secured Non-Tax Claim is Allowed as of the Effective Date; (b) on or as soon as reasonably practicable after the date such Secured Non-Tax Claim is Allowed; and (c) the date such Allowed Secured Non-Tax Claim becomes due and payable, or as soon thereafter as is reasonably practicable.

(3)   *Voting*:  Class 2 is Unimpaired and is not entitled to vote to accept or reject the Plan.

---

[2]    As provided under Section 3.2(n) of the Plan, the Debtors reserve the right to dilute the holders of Existing HoldCo Common Stock by issuing additional Existing HoldCo Common Stock rather than cancelling the Existing HoldCo Common Stock.  To the extent the Debtors determine to issue additional Existing HoldCo Common Stock, Class 14 will be Unimpaired under the Plan, though the Debtors will still solicit the votes of holders of Class 14 Existing HoldCo Common Stock.

(c)    **Class 3 — HoldCo Note Claims**

    (1)    *Classification*:  Class 3 consists of all HoldCo Note Claims.

    (2)    *Allowance:* The HoldCo Note Claims shall be Allowed in the amount of $1.34 billion, plus all applicable postpetition interest, charges and fees (as determined by the Bankruptcy Court or as otherwise agreed by the relevant parties).

    (3)    *Treatment*:  On the Effective Date, each holder of an Allowed HoldCo Note Claim shall receive its Pro Rata share of the HoldCo Noteholder New Common Stock Distribution. In addition, each holder of an Allowed HoldCo Note Claim as of the Rights Offering Record Date shall receive its Pro Rata share of the HoldCo Noteholder Subscription Rights.

    (4)    *Voting*:  Class 3 is Impaired.  Each holder of a HoldCo Note Claim will be entitled to vote to accept or reject the Plan.

(d)    **Class 4 — Non-Election OpCo Note Claims and Non-Election OpCo RCF Claims**

    (1)    *Classification*:  Class 4 consists of all OpCo Note Claims and OpCo RCF Claims, other than the Election OpCo Note Claims and Election OpCo RCF Claims.

    (2)    *Allowance:* The OpCo Note Claims shall be Allowed in the amount of the principal outstanding under the OpCo Notes MNPA plus applicable Allowed prepetition interest and postpetition interest calculated at the Federal Judgment Rate or such other rate as determined by the Bankruptcy Court.  For the avoidance of doubt, the Allowed OpCo Note Claims shall exclude the Allowed OpCo Note Makewhole Claims, if any.  The OpCo RCF Claims shall be Allowed in the amount of the principal outstanding under the OpCo RCF plus applicable Allowed prepetition interest and postpetition interest calculated at the Federal Judgment Rate or such other rate as determined by the Bankruptcy Court.

    (3)    *Treatment*:  On the Effective Date or as soon as reasonably practicable thereafter, each holder of an Allowed Class 4 Claim shall receive:  (a) its Pro Rata share of the New OpCo Notes; and (b) Cash in an amount equal to the difference, if any, between (x) the amount of such holder's Allowed Class 4 Claim and (y) the amount of New OpCo Notes distributed to such holder under the preceding clause (a); provided, that in no event shall a holder of an Allowed Class 4 Claim receive under the preceding clause (a) an amount of New OpCo Notes that is greater than such holder's Allowed Class 4 Claim.

    (4)    *Voting*:  Class 4 is Impaired.  Each holder of a Non-Election OpCo Note Claim or Non-Election OpCo RCF Claim will be entitled to vote to accept or reject the Plan.

(e)    **Class 5 — Election OpCo Note Claims and Election OpCo RCF Claims**

    (1)    *Classification*:  Class 5 consists of all Election OpCo Note Claims and Election OpCo RCF Claims.

    (2)    *Allowance:* The OpCo Note Claims shall be Allowed in the amount of the principal outstanding under the OpCo Notes MNPA plus applicable Allowed prepetition interest and postpetition interest calculated at the Federal Judgment Rate or such other rate as determined by the Bankruptcy Court.  For the avoidance of doubt, the Allowed OpCo Note Claims shall exclude the Allowed OpCo Note Makewhole Claims, if any.  The OpCo RCF Claims shall be Allowed in the amount of the principal outstanding under the OpCo RCF plus applicable Allowed prepetition interest and postpetition interest

calculated at the Federal Judgment Rate or such other rate as determined by the Bankruptcy Court.

(3)   *Treatment*:

If Class 5 votes to accept the Plan then, on the Effective Date or as soon as reasonably practicable thereafter, each holder of an Allowed Class 5 Claim shall receive no later than six (6) months after the Effective Date: (a) a Cash payment equal to between [20.0% and 100.0%] of such holder's Allowed Class 5 Claim; and (b) New OpCo Notes in an amount equal to the difference between (x) the amount of such holder's Allowed Class 5 Claim and (y) the amount of Cash distributed to such holder under the preceding clause (a); provided, that the Debtors shall consult with the Required Consenting Parties with respect to the size of the Cash payment made pursuant to the preceding clause (a).

If Class 5 votes to reject the Plan, then on the Effective Date or as soon as reasonably practicable thereafter, each holder of an Allowed Class 5 Claim shall receive:  (a) its Pro Rata share of the New OpCo Notes; and (b) Cash in an amount equal to the difference, if any, between (x) the amount of such holder's Allowed Class 5 Claim and (y) the amount of New OpCo Notes distributed to such holder under the preceding clause (a); provided, that in no event shall a holder of an Allowed Class 5 Claim receive under the preceding clause (a) an amount of New OpCo Notes that is greater than such holder's Allowed Class 5 Claim.

(4)   *Voting*:  Class 5 is Impaired.  Each holder of an Election OpCo Note Claim or Election OpCo RCF Claim will be entitled to vote to accept or reject the Plan.

(f)   **Class 6 — OpCo Note Guarantee Claims and OpCo RCF Guarantee Claims**

(1)   *Classification*:  Class 6 consists of all OpCo Note Guarantee Claims and OpCo RCF Guarantee Claims.

(2)   *Treatment*:   On the Effective Date or as soon as reasonably practicable thereafter, Reorganized HoldCo and Reorganized UP Energy shall guarantee the New OpCo Notes and the Additional New OpCo Notes, if any, on the same terms (except as to amount) as the current guarantees of the OpCo Notes and OpCo RCF.

(3)   *Voting*:  Class 6 is Unimpaired and is not entitled to vote to accept or reject the Plan.

(g)   **Class 7 — OpCo Note Makewhole Claims**

(1)   *Classification*:  Class 7 consists of all OpCo Note Makewhole Claims.

(2)   *Allowance:*  The OpCo Note Makewhole Claims shall not be Allowed pending a determination by the Bankruptcy Court as to the allowance of such Claims.  The Allowed amount of any OpCo Note Makewhole Claims, if any, shall be reduced to account for the fact that interest on the New OpCo Notes should be taken into account in connection with such determination.

(3)   *Treatment*:  As soon as reasonably practicable after a determination by the Bankruptcy Court with respect to the Allowed amount of any OpCo Note Makewhole Claims, if any, each holder of an Allowed OpCo Note Makewhole Claim, if any, shall receive an amount of Additional New OpCo Notes equal to the amount of the Allowed OpCo Note Makewhole Claims held by such holder.

(4)     *Voting*:  Class 7 is Impaired.  Each holder of an OpCo Note Makewhole Claim shall be entitled to vote to accept or reject the Plan.

(h)     **Class 8 — OpCo Subsidiary General Unsecured Claims**

(1)     *Classification*:  Class 8 consists of all OpCo Subsidiary General Unsecured Claims.

(2)     *Allowance:* The Allowed amount of any OpCo Subsidiary General Unsecured Claims shall reflect postpetition interest calculated at the Federal Judgment Rate or such other rate as determined by the Bankruptcy Court.

(3)     *Treatment*:  On the Effective Date or as soon as reasonably practicable thereafter, each holder of an Allowed OpCo Subsidiary General Unsecured Claim shall either (a) be paid in full in Cash or (b) receive such other treatment rendering such Claim Unimpaired.

(4)     *Voting*:  Class 8 is Unimpaired.  Each holder of an OpCo Subsidiary General Unsecured Claim shall be presumed to accept the Plan.

(i)     **Class 9 — OpCo Trade General Unsecured Claims**

(1)     *Classification*:  Class 9 consists of all OpCo Trade General Unsecured Claims.

(2)     *Allowance:* The Allowed amount of any OpCo Trade General Unsecured Claims shall reflect postpetition interest calculated at the Federal Judgment Rate or such other rate as determined by the Bankruptcy Court.

(3)     *Treatment*:  Each holder of an Allowed OpCo Trade General Unsecured Claims shall receive:  (i) on the later of (a) six (6) months after the Effective Date and (b) as soon as reasonably practicable after an OpCo Trade General Unsecured Claim becomes Allowed, payment in in full in Cash; or (ii) such other treatment as may be provided by the settlement agreement related to such OpCo Trade General Unsecured Claim.

(4)     *Voting*:  Class 9 is Impaired.  Each holder of an Allowed OpCo Trade General Unsecured Claim shall be entitled to vote to accept or reject the Plan.

(j)     **Class 10 — Other OpCo General Unsecured Claims**

(1)     *Classification*:  Class 10 consists of all Other OpCo General Unsecured Claims.

(2)     *Allowance:* The Allowed amount of any Other OpCo General Unsecured Claims shall reflect postpetition interest calculated at the Federal Judgment Rate or such other rate as determined by the Bankruptcy Court.

(3)     *Treatment*:  On the later of (i) six (6) months after the Effective Date and (ii) as soon as reasonably practicable after an Other OpCo General Unsecured Claim becomes Allowed, each holder of an Allowed Other OpCo General Unsecured Claim shall be paid in full in Cash.

(4)     *Voting*:  Class 10 is Impaired.  Each holder of an Allowed Other OpCo General Unsecured Claim shall be entitled to vote to accept or reject the Plan.

(k)     **Class 11 — Other General Unsecured Claims**

(1)     *Classification*:  Class 11 consists of all Other General Unsecured Claims.

(2)     *Allowance:* The Allowed amount of any Other General Unsecured Claims shall reflect postpetition interest calculated at the Federal Judgment Rate or such other rate as determined by the Bankruptcy Court.

(3)     *Treatment*: On the later of (i) six (6) months after the Effective Date and (ii) as soon as reasonably practicable after an Other General Unsecured Claim becomes Allowed, each holder of an Allowed Other General Unsecured Claim shall be paid in full in Cash.

(4)     *Voting*: Class 11 is Impaired. Each holder of an Allowed Other General Unsecured Claim shall be entitled to vote to accept or reject the Plan.

(l)     **Class 12 — Intercompany Claims**

(1)     *Classification*: Class 12 consists of all Intercompany Claims.

(2)     *Treatment*: Each Intercompany Claim shall be, at the option of the Debtors or Reorganized Debtors, either (a) Reinstated as of the Effective Date; (b) cancelled, in which case no distribution shall be made on account of such Intercompany Claims; or (c) treated in such other manner as determined by the Debtors or Reorganized Debtors.

(3)     *Voting*: Class 12 is Unimpaired if the Class 12 Claims are Reinstated, Impaired if the Class 12 Claims are cancelled, and may be Unimpaired or Impaired if the Class 12 Claims are treated in another manner. Holders of Class 12 Claims are conclusively deemed to have accepted or rejected the Plan pursuant to section 1126(f) or 1126(g) of the Bankruptcy Code. Therefore, each holder of an Intercompany Claim will not be entitled to vote to accept or reject the Plan.

(m)     **Class 13 — Intercompany Interests**

(1)     *Classification*: Class 13 consists of all Intercompany Interests.

(2)     *Treatment*: Each Intercompany Interest shall be, at the option of the Debtors or Reorganized Debtors, either (a) Reinstated as of the Effective Date or (b) cancelled, in which case no distribution shall be made on account of such interests.

(3)     *Voting*: Class 13 is Unimpaired if the Class 13 Interests are Reinstated or Impaired if the Class 13 Interests are cancelled. Holders of Class 13 Interests are conclusively deemed to have accepted or rejected the Plan pursuant to section 1126(f) or 1126(g) of the Bankruptcy Code. Therefore, each holder of an Intercompany Interest will not be entitled to vote to accept or reject the Plan.

(n)     **Class 14 — Existing HoldCo Common Stock**

(1)     *Classification*: Class 14 consists of all Existing HoldCo Common Stock.

(2)     *Treatment*: On the Effective Date, each holder of Existing HoldCo Common Stock shall receive its Pro Rata share of the HoldCo Equityholder New Common Stock Distribution. In addition, each holder of Existing HoldCo Common Stock as of the Rights Offering Record Date shall receive its Pro Rata share of the HoldCo Equityholder Subscription Rights.

(3)     *Voting*:  Class 14 is Impaired.[3]  Each holder of Existing HoldCo Common Stock will be entitled to vote to accept or reject the Plan.

(o)     **Class 15 — Other Existing HoldCo Equity Interests**

(1)     *Classification*:  Class 15 consists of all Other Existing HoldCo Equity Interests.

(2)     *Treatment*:  On the Effective Date, each Other Existing HoldCo Equity Interest shall be cancelled and of no further force and effect, and the holders thereof shall not receive or retain any distribution on account of their Other Existing HoldCo Equity Interests.

(3)     *Voting*:  Class 15 is Impaired.  Each holder of an Other Existing HoldCo Equity Interest will be conclusively presumed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.  Therefore, holders of Other Existing HoldCo Equity Interests are not entitled to vote to accept or reject the Plan.

## 3.3     Special Provision Governing Unimpaired Claims

Except as otherwise provided in the Plan, nothing under the Plan shall affect the Debtors' or the Reorganized Debtors' rights regarding any Unimpaired Claim, including all rights regarding legal and equitable defenses to or setoffs or recoupments against any such Unimpaired Claim.

## 3.4     Elimination of Vacant Classes

Any Class of Claims or Interests that does not have a holder of an Allowed Claim or Existing HoldCo Common Stock, or a Claim temporarily Allowed by the Bankruptcy Court as of the date of the Confirmation Hearing, shall be deemed eliminated from the Plan for purposes of voting to accept or reject the Plan and for purposes of determining acceptance or rejection of the Plan by such Class pursuant to section 1129(a)(8) of the Bankruptcy Code.

## 3.5     Voting Classes; Presumed Acceptance by Non-Voting Classes

If a Class contains Claims or Interests eligible to vote and no holder of Claims or Interests eligible to vote in such Class votes to accept or reject the Plan, the Plan shall be presumed accepted by the holders of such Claims or Interests in such Class.

## 3.6     Confirmation Pursuant to Sections 1129(a)(10) and 1129(b) of the Bankruptcy Code

The Debtors shall seek Confirmation of the Plan pursuant to section 1129(b) of the Bankruptcy Code with respect to any rejecting Class of Claims or Interests.  The Debtors reserve the right to modify the Plan in accordance with Article X of this Plan to the extent, if any, that Confirmation pursuant to section 1129(b) of the Bankruptcy Code requires modification, including by (a) modifying the treatment applicable to a Class of Claims or Interests to render such Class of Claims or Interests Unimpaired to the extent permitted by the Bankruptcy Code and the Bankruptcy Rules and (b) withdrawing the Plan as to an individual Debtor at any time before the Confirmation Date.

## 3.7     Intercompany Interests

To the extent Reinstated under the Plan, distributions on account of Intercompany Interests are not being received by holders of such Intercompany Interests on account of their Intercompany Interests but for the purposes of administrative convenience, for the ultimate benefit of the holders of the New Common Stock, and in exchange

---

[3]     The Debtors reserve the right to dilute the holders of Existing HoldCo Common Stock by issuing additional Existing HoldCo Common Stock rather than cancelling the Existing HoldCo Common Stock.  To the extent the Debtors determine to issue additional Existing HoldCo Common Stock, Class 14 will be Unimpaired under the Plan, though the Debtors will still solicit the votes of holders of Class 14 Existing HoldCo Common Stock.

24

for the Debtors' and Reorganized Debtors' agreement under the Plan to make certain distributions to the holders of Allowed Claims. For the avoidance of doubt, to the extent Reinstated pursuant to the Plan, on and after the Effective Date, all Intercompany Interests shall be owned by the same Reorganized Debtor that corresponds with the Debtor that owned such Intercompany Interests immediately prior to the Effective Date.

## ARTICLE IV

## PROVISIONS FOR IMPLEMENTATION OF THE PLAN

### 4.1    Restructuring Transactions

On the Effective Date, or as soon as reasonably practicable thereafter in the case of clauses (b), (c), (d), and (e) below, the Reorganized Debtors shall take all actions as may be necessary or appropriate in accordance with the Plan Support Agreement to effectuate the Restructuring Transactions, including, without limitation: (a) the execution and delivery of any appropriate agreements or other documents of merger, consolidation, restructuring, conversion, disposition, transfer, dissolution, or liquidation containing terms that are consistent with the terms of the Plan and Plan Support Agreement, and that satisfy the requirements of applicable law and any other terms in accordance with the Plan to which the applicable Entities may agree; (b) the execution and delivery of appropriate instruments of transfer, assignment, assumption, or delegation of any asset, property, right, liability, debt, or obligation on terms consistent with the terms of the Plan and having other terms in accordance with the Plan for which the applicable Entities agree that are necessary to consummate the Plan; (c) the filing of appropriate certificates or articles of incorporation, reincorporation, merger, consolidation, conversion, or dissolution pursuant to applicable state law; (d) such other transactions that are required to effectuate the Restructuring Transactions; and (e) all other actions that the applicable Entities determine to be necessary or appropriate, including making filings or recordings that may be required by applicable law and in accordance with the Plan, but in each case only to the extent not inconsistent with the Plan Support Agreement and the Backstop Commitment Agreement.

### 4.2    General Settlement of Claims and Interests

Unless otherwise set forth in the Plan, pursuant to section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the classification, distributions, releases, and other benefits provided under the Plan, on the Effective Date, the provisions of the Plan shall constitute a good-faith compromise and settlement of all Claims and Interests.

### 4.3    New Common Stock

All existing Interests in HoldCo shall be cancelled as of the Effective Date and Reorganized HoldCo shall issue the New Common Stock to the holders of Claims and Interests entitled to receive New Common Stock pursuant to the Plan, the Rights Offering Procedures, and the Backstop Commitment Agreement. The issuance of New Common Stock shall be authorized without the need for any further corporate action and without any further action by the Debtors or Reorganized Debtors, as applicable. Reorganized HoldCo's New Organizational Documents shall authorize the issuance and distribution on the Effective Date of New Common Stock to the Distribution Agent for the benefit of holders of Allowed Claims in Class 3 and Existing HoldCo Common Stock in Class 14. All New Common Stock issued under the Plan shall be duly authorized, validly issued, fully paid, and non-assessable.

### 4.4    Rights Offering

The Debtors shall distribute the Subscription Rights and Rights Offering Shares to the Rights Offering Participants as set forth in the Plan and the Rights Offering Procedures. Pursuant to the Backstop Commitment Agreement and the Rights Offering Procedures, the Rights Offering shall be open to all Rights Offering Participants, and (a) Rights Offering Participants that are holders of Allowed HoldCo Note Claims shall be entitled to participate in the Rights Offering to receive up to a maximum amount of each holder's Pro Rata share of the HoldCo Noteholders Rights Offering Shares, and (b) Rights Offering Participants that are holders of Existing HoldCo Common Stock shall be entitled to participate in the Rights Offering to receive up to a maximum amount of each holder's Pro Rata share of the HoldCo Equityholders Rights Offering Shares.

Upon exercise of the Subscription Rights by the Rights Offering Participants pursuant to the terms of the Backstop Commitment Agreement and the Rights Offering Procedures, the Reorganized Debtors shall be authorized to issue the New Common Stock in accordance with the Plan, the Backstop Commitment Agreement, and the Rights Offering Procedures.

In addition, on the Effective Date, New Common Stock in an amount equal to the Commitment Premium shall be distributed to the Backstop Parties under and as set forth in the Backstop Commitment Agreement, the Backstop Approval Order, and the Plan Term Sheet.

**4.5     New OpCo Notes; Additional New OpCo Notes**

On the Effective Date, Reorganized OpCo shall issue $2.0 billion in New OpCo Notes, the form of which shall be included in the Plan Supplement, to holders of Allowed Claims in Class 4 and Class 5, as applicable.

A further $200 million (or such other amount as may be determined by the Bankruptcy Court) in Additional New OpCo Notes will be "held in reserve" pending, or issued to applicable holders of Allowed Claims in Class 7 (if any) by OpCo following, the determination of the Bankruptcy Court on the allowance of the OpCo Note Makewhole Claims (if any).

**4.6     Exemption from Registration Requirements**

All shares of New Common Stock issued under the Plan will be issued without registration under the Securities Act or any similar federal, state, or local law in reliance upon either (a) section 1145 of the Bankruptcy Code or (b) section 4(a)(2) of the Securities Act or Regulation D promulgated thereunder. All shares of New Common Stock issued pursuant to the exemption from registration set forth in section 4(a)(2) of the Securities Act or Regulation D promulgated thereunder will be considered "restricted securities" and may not be transferred except pursuant to an effective registration statement under the Securities Act or an available exemption therefrom.

Persons who purchase the New Common Stock pursuant to the exemption from registration set forth in section 4(a)(2) of the Securities Act or Regulation D promulgated thereunder will hold "restricted securities." Resales of such restricted securities would not be exempted by section 1145 of the Bankruptcy Code from registration under the Securities Act or other applicable law. Holders of restricted securities would, however, be permitted to resell New Common Stock without registration if they are able to comply with the applicable provisions of Rule 144 or Rule 144A (if available) or any other registration exemption under the Securities Act, or if such securities are registered with the Securities and Exchange Commission.

All shares of New Common Stock issued to holders of Allowed HoldCo Note Claims and holders of Existing HoldCo Common Stock (including to the Backstop Parties) on account of their Claims or Interests, including the Rights Offering Shares and the New Common Stock issued on account of the Commitment Premium, will be issued without registration under the Securities Act or any similar federal, state, or local law in reliance on Section 1145(a) of the Bankruptcy Code. All Unsubscribed Shares of New Common Stock issued to the Backstop Parties pursuant to the Backstop Commitment Agreement (other than shares of New Common Stock issued on account of the Commitment Premium) will be issued without registration under the Securities Act or any similar federal, state, or local law in reliance on Section 4(a)(2) of the Securities Act or Regulation D promulgated thereunder.

The Registration Rights Agreement shall be in the form included within the Plan Supplement and: (a) shall be effective as of the Effective Date and shall provide, inter alia, that: (i) Each HoldCo Equityholder and HoldCo Noteholder receiving at least ten percent (10%) or more of the New Common Stock issued under the Plan and/or the Rights Offerings or that cannot sell its New Common Stock under Rule 144 of the Securities Act without volume or manner of sale restrictions and (ii) each Backstop Party, in each case, shall be entitled to registration rights that are customary for a transaction of this nature, and (b) shall provide for customary demand, shelf and piggyback registration rights with respect to all New Common Stock beneficially owned by such Persons or their successors in interest (whether acquired at the Effective Date or thereafter) and shall provide for a shelf registration statement to be filed by the Debtors for the benefit of such Persons within ten (10) Business Days following the later of (i) the

Effective Date and (ii) the filing of the Debtors' Annual Report on Form 10-K for the year ended December 31, 2016.

The Debtors shall, on or before the Effective Date, take such action as the Debtors shall reasonably determine is necessary in order to obtain an exemption for, or to qualify the offer and sale of the Unsubscribed Shares (as defined in the Backstop Commitment Agreement) to the Backstop Parties pursuant to the Backstop Commitment Agreement under applicable securities and "Blue Sky" Laws of the states of the United States (or to obtain an exemption from such qualification) and any applicable foreign jurisdictions, and shall provide evidence of any such action so taken to the Backstop Parties on or prior to the Effective Date.  The Reorganized Debtors shall timely make all filings and reports relating to the offer and sale of the Unsubscribed Shares issued under the Plan as provided for in the Backstop Commitment Agreement required under applicable securities and "Blue Sky" Laws of the states of the United States following the Effective Date.  The Debtors or the Reorganized Debtors, as applicable, shall pay all fees and expenses in connection with satisfying its obligations under this paragraph.

Unless otherwise requested by the Required Consenting Parties, the Reorganized Debtors shall use commercially reasonable efforts to promptly make, when applicable from time to time after the Closing, all Unlegended Shares eligible for deposit with The Depository Trust Company.  The Confirmation Order shall provide that The Depository Trust Company shall be required to accept and conclusively rely upon the Plan and Confirmation Order in lieu of a legal opinion regarding whether the Unlegended Shares are exempt from registration and/or eligible for The Depository Trust Company book-entry delivery, settlement, and depository services.  The Debtors will use commercially reasonable efforts to cause the New Common Shares to become publicly traded and listed on the NASDAQ , New York Stock Exchange, or another national securities exchange on or as soon as reasonably practicable after the Effective Date.

## 4.7    Subordination

The allowance, classification, and treatment of all Claims and Interests under the Plan shall conform to and be consistent with the respective contractual, legal, and equitable subordination rights of such Claims and Interests, and the Plan shall recognize and implement any such rights.  Pursuant to section 510 of the Bankruptcy Code, except where otherwise provided herein, the Reorganized Debtors reserve the right to re-classify any Allowed Claim or Interest in accordance with any contractual, legal, or equitable subordination rights relating thereto.

## 4.8    Vesting of Assets in the Reorganized Debtors

Except as otherwise provided herein, or in any agreement, instrument, or other document incorporated in the Plan, on the Effective Date, all property in each Debtor's Estate, all Causes of Action, and any property acquired by any of the Debtors under the Plan shall vest in each respective Reorganized Debtor, free and clear of all Liens, Claims, charges, or other encumbrances.  On and after the Effective Date, except as otherwise provided herein, each Reorganized Debtor may operate its business and may use, acquire, or dispose of property and pursue, compromise or settle any Claims, Interests, or Causes of Action without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules.

## 4.9    Cancellation of Notes, Instruments, Certificates, and Other Documents

On the Effective Date, except to the extent otherwise provided in the Plan:  (1) the obligations of the Debtors under the HoldCo Notes Indentures, the OpCo Notes MNPA, the OpCo RCF, all Interests in HoldCo, and each certificate, share, note, bond, indenture, purchase right, option, warrant, or other instrument or document, directly or indirectly, evidencing or creating any indebtedness or obligation of or ownership interest in the Debtors or giving rise to any Claim or Interest shall be cancelled and the Debtors and the Reorganized Debtors shall not have any continuing obligations thereunder; and (2) the obligations of the Debtors pursuant, relating, or pertaining to any agreements, indentures, certificates of designation, bylaws, or certificates or articles of incorporation or similar documents governing the shares, certificates, notes, bonds, purchase rights, options, warrants, or other instruments or documents evidencing or creating any indebtedness or obligation of the Debtors shall be released and discharged; provided, that notwithstanding Confirmation or the occurrence of the Effective Date, any such indenture or agreement that governs the rights of the holder of a Claim or Interest shall continue in effect solely for purposes of enabling holders of Allowed Claims and Existing HoldCo Common Stock to receive distributions under the Plan as

provided herein; provided, further, that the preceding proviso shall not affect the discharge of Claims or Interests pursuant to the Bankruptcy Code, the Confirmation Order, or the Plan or result in any expense or liability to the Reorganized Debtors, except to the extent set forth in or provided for under the Plan; provided, further, that nothing in this section shall effect a cancellation of any New Common Stock, Intercompany Interests, or Intercompany Claims.

**4.10    Corporate Action**

On the Effective Date, or as soon thereafter as is reasonably practicable in the case of clauses (a), (d), (e), and (f) below, all actions contemplated by the Plan shall be deemed authorized and approved by the Bankruptcy Court in all respects, including, as applicable:  (a) the adoption and/or filing of the New Organizational Documents; (b) the selection of the directors, managers, and officers for the Reorganized Debtors, including the appointment of the New Board; (c) the authorization, issuance, and distribution of New Common Stock, including upon the exercise of the Holdco Equityholder Subscription Rights and Holdco Noteholder Subscription Rights; (d) the rejection, assumption, or assumption and assignment, as applicable, of Executory Contracts and Unexpired Leases; (e) the implementation of the Restructuring Transactions; and (f) all other actions contemplated by the Plan (whether to occur before, on, or after the Effective Date).  Upon the Effective Date, all matters provided for in the Plan involving the corporate structure of the Reorganized Debtors and any corporate action required by the Debtors or the other Reorganized Debtors in connection with the Plan shall be deemed to have occurred and shall be in effect, without any requirement of further action by the security holders, directors, or officers of the Debtors or the Reorganized Debtors.  On or (as applicable) before the Effective Date, the appropriate officers of the Debtors, Reorganized HoldCo, or the other Reorganized Debtors shall be authorized and (as applicable) directed to issue, execute, and deliver the agreements, documents, securities, and instruments contemplated by the Plan (or necessary or desirable to effectuate the Restructuring Transactions) in the name of and on behalf of the Reorganized Debtors, including any and all other agreements, documents, Securities, and instruments relating to the foregoing, to the extent not previously authorized by the Bankruptcy Court.  The authorizations and approvals contemplated by this Section 4.10 shall be effective notwithstanding any requirements under non-bankruptcy law.

**4.11    Corporate Existence**

Except as otherwise provided in the Plan or any agreement, instrument, or other document incorporated in the Plan or the Plan Supplement, on the Effective Date, each Debtor shall continue to exist after the Effective Date as a separate corporation, limited liability company, partnership, or other form of entity, as the case may be, with all the powers of a corporation, limited liability company, partnership, or other form of entity, as the case may be, pursuant to the applicable law in the jurisdiction in which each applicable Debtor is incorporated or formed and pursuant to the respective certificate of incorporation and by-laws (or other analogous formation documents) in effect before the Effective Date, except to the extent such certificate of incorporation and bylaws (or other analogous formation documents) are amended by the Plan or otherwise, and to the extent such documents are amended, such documents are deemed to be amended pursuant to the Plan and require no further action or approval (other than any requisite filings required under applicable state, provincial, or federal law).

**4.12    Charter, Bylaws, and New Organizational Documents**

On the Effective Date, the Debtors' respective certificates of incorporation and bylaws (and other formation and constituent documents relating to limited liability companies) shall be amended as may be required to be consistent with the provisions of the Plan and the Bankruptcy Code.  The New Organizational Documents shall, among other things:  (a) authorize the issuance of the New Common Stock; (b) pursuant to and only to the extent required by section 1123(a)(6) of the Bankruptcy Code, include a provision prohibiting the issuance of non-voting equity Securities; and (c) incorporate and give effect to the provisions set forth in Section 4.15 of the Plan.  After the Effective Date, each Reorganized Debtor may amend and restate its certificate of incorporation and other formation and constituent documents as permitted by the laws of its respective jurisdiction of formation and the terms of such documents.

**4.13**     **Effectuating Documents; Further Transactions**

On and after the Effective Date, the Reorganized Debtors, and the officers and members of the boards of directors and managers thereof, shall be authorized to and may issue, execute, deliver, file, or record such contracts, Securities, instruments, releases, and other agreements or documents and take such actions in a manner not inconsistent with the Plan Support Agreement or Backstop Commitment Agreement as may be necessary or appropriate to effectuate, implement, and further evidence the terms and conditions of the Plan, and the Securities issued pursuant to the Plan in the name of and on behalf of the Reorganized Debtors, without the need for any approvals, authorizations, or consents except for those expressly required under the Plan, including, without limitation, as set forth in Section 4.15 of the Plan.

**4.14**     **Section 1146(a) Exemption**

To the fullest extent permitted by section 1146(a) of the Bankruptcy Code, any transfers (whether from a Debtor to a Reorganized Debtor or to any other Person) of property under the Plan or pursuant to: (a) the issuance, distribution, transfer, or exchange of any debt, equity security, or other interest in the Debtors or the Reorganized Debtors; (b) the creation, modification, consolidation, termination, refinancing, and/or recording of any mortgage, deed of trust, or other security interest, or the securing of additional indebtedness by such or other means; (c) the making, assignment, or recording of any lease or sublease; or (d) the making, delivery, or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan, including any deeds, bills of sale, assignments, or other instrument of transfer executed in connection with any transaction arising out of, contemplated by, or in any way related to the Plan, shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, regulatory filing or recording fee, or other similar tax or governmental assessment, and upon entry of the Confirmation Order, the appropriate state or local governmental officials or agents shall forego the collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax, recordation fee, or governmental assessment. All filing or recording officers (or any other Person with authority over any of the foregoing), wherever located and by whomever appointed, shall comply with the requirements of section 1146(c) of the Bankruptcy Code, shall forego the collection of any such tax or governmental assessment, and shall accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

**4.15**     **Directors and Officers**

The New Board shall have seven (7) members. The five (5) members of the HoldCo Board as of the date prior to the Effective Date shall remain on the New Board post-Effective Date and two (2) additional directors reasonably acceptable to the Chairman of the pre-Effective Date HoldCo Board shall be selected prior to the Effective Date by the existing board of directors after solicitation from a list of director candidates proposed by individual members of the HoldCo Noteholder Committee and the Equityholder Committee. These two (2) additional directors shall have a two-year term and the votes of such directors shall be required to approve any Material M&A Transaction during such two-year term. Michael D. Watford shall remain Chairman of the New Board post-Effective Date.

**4.16**     **Employee Arrangements of the Reorganized Debtors**

Except as otherwise provided in the Plan or the Plan Supplement, all written employment, severance, retirement, indemnification, and other similar employee-related agreements or arrangements in place as of the Effective Date with the Debtors, retirement income plans and welfare benefit plans, or discretionary bonus plans or variable incentive plans regarding payment of a percentage of annual salary based on performance goals and financial targets for certain employees, shall be assumed by the Reorganized Debtors and shall remain in place after the Effective Date, as may be amended by agreement between the beneficiaries of such agreements, plans, or arrangements, on the one hand, and the Debtors, on the other hand, or, after the Effective Date, by agreement with the Reorganized Debtors, and the Reorganized Debtors will continue to honor such agreements, arrangements, programs, and plans. Notwithstanding the foregoing, and unless otherwise provided in the Plan Supplement, all plans or programs calling for stock grants, stock issuances, stock reserves, or stock options shall be deemed rejected

with regard to such issuances, grants, reserves, and options.  Nothing in the Plan shall limit, diminish, or otherwise alter the Reorganized Debtors' defenses, claims, Causes of Action, or other rights with respect to any such contracts, agreements, policies, programs, and plans.  Notwithstanding the foregoing, pursuant to section 1129(a)(13) of the Bankruptcy Code, on and after the Effective Date, all retiree benefits (as that term is defined in section 1114 of the Bankruptcy Code), if any, shall continue to be paid in accordance with applicable law.

**4.17**     **Management Incentive Plan**

The Plan provides for the establishment of the Management Incentive Plan under which 7.5% of the fully-diluted, fully-distributed shares of HoldCo will be reserved for issuance to management (the "Share Reserve").  Forty percent (40%) of the Share Reserve will be granted to members of management identified by the pre-Effective Date HoldCo Board (the "Initial MIP Grants") on the Effective Date in the form of full shares (or equivalent) and will vest as follows:  (i) one-third (1/3) of the Initial MIP Grants will vest on the Effective Date; (ii) one-third (1/3) of the Initial MIP Grants will vest, if at all, at such time when the total enterprise value of the Reorganized Debtors equals or exceeds the Settlement Plan Value based upon the volume weighted average price of the New Common Stock during a consecutive 30-day period; and (iii) one-third (1/3) of the Initial MIP Grants will vest, if at all, at such time when the total enterprise value of the Reorganized Debtors equals or exceeds 110% of the Settlement Plan Value based upon the volume weighted average price of the New Common Stock during a consecutive 30-day period; provided, however, that if any Initial MIP Grants do not vest before the fifth anniversary of the Effective Date, such Initial MIP Grants shall automatically expire; and (ii) the remaining sixty percent (60%) of the Share Reserve will be available to be granted by the New Board from time to time to management.  The Management Incentive Plan shall dilute all of the New Common Stock.

**4.18**     **Preservation of Causes of Action**

Unless any Causes of Action against an Entity are expressly waived, relinquished, exculpated, released, compromised, or settled in, or according to the terms of, the Plan, including pursuant to Article VIII of this Plan or a Final Order, in accordance with section 1123(b) of the Bankruptcy Code, the Reorganized Debtors shall retain and may enforce all rights to commence and pursue any and all Causes of Action, whether arising before or after the Petition Date, including any actions specifically enumerated in the Plan Supplement, and the Reorganized Debtors' rights to commence, prosecute, or settle such Causes of Action shall be preserved notwithstanding the occurrence of the Effective Date.  **No Entity may rely on the absence of a specific reference in the Plan, the Plan Supplement, or the Disclosure Statement to any Cause of Action against them as any indication that the Debtors or the Reorganized Debtors will not pursue any and all available Causes of Action against them.  The Debtors and the Reorganized Debtors expressly reserve all rights to prosecute any and all Causes of Action against any Entity, except as otherwise expressly provided herein.**  Unless any Causes of Action against an Entity are expressly waived, relinquished, exculpated, released, compromised, or settled in, or according to the terms of, the Plan, including pursuant to Article VIII of this Plan or a Bankruptcy Court order, the Reorganized Debtors expressly reserve all Causes of Action, for later adjudication and, therefore, no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise), or laches, shall apply to such Causes of Action upon, after, or as a consequence of the Confirmation or Consummation.  For the avoidance of doubt, in no instance will any Cause of Action preserved pursuant to this Section 4.18 include any claim or Cause of Action with respect to, or against, a Released Party.

In accordance with section 1123(b)(3) of the Bankruptcy Code, any Causes of Action preserved pursuant to the first paragraph of this Section 4.18 that a Debtor may hold against any Entity shall vest in the Reorganized Debtors.  The applicable Reorganized Debtor, through its authorized agents or representatives, shall retain and may exclusively enforce any and all such Causes of Action.  The Reorganized Debtors shall have the exclusive right, authority, and discretion to determine and to initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment any such Causes of Action, or to decline to do any of the foregoing, without the consent or approval of any third party or any further notice to or action, order, or approval of the Bankruptcy Court.

**4.19**     **Indenture Trustee Expenses**

On the Effective Date, the Debtors shall distribute Cash to the HoldCo Notes Indenture Trustee in an amount equal to the Indenture Trustee Expenses.  If the Debtors, Reorganized Debtors or Equityholder Committee

dispute the reasonableness of the Indenture Trustee Expenses, the Debtors, the Reorganized Debtors, or the HoldCo Notes Indenture Trustee, as applicable, may submit such dispute to the Bankruptcy Court for a determination of the reasonableness of such fees or expenses and the disputed portion of the Indenture Trustee Expenses shall not be paid until the dispute is resolved. The undisputed portion of the Indenture Trustee Expenses shall be paid as provided herein. Nothing contained herein shall otherwise affect the right of the HoldCo Notes Indenture Trustee from asserting its Indenture Trustee Charging Lien, to the extent applicable under the terms of the HoldCo Notes Indentures; provided, however, that upon the full and indefeasible payment of the Indenture Trustee Expenses, the Indenture Trustee Charging Lien shall be deemed released and discharged in full. For the avoidance of doubt, the HoldCo Notes Indenture Trustee shall not be required to file a Proof of Claim on account of either the HoldCo Note Claims or the Indenture Trustee Expenses.

**4.20     Reimbursement of Certain Fees and Expenses**

Without any further notice to or action, order or approval of the Bankruptcy Court, except as otherwise paid in accordance with the Plan Support Agreement and the Backstop Commitment Agreement, the Debtors or Reorganized Debtors shall pay on the Effective Date all reasonable, documented fees, costs and expenses of counsel and other professional advisors engaged by the HoldCo Noteholder Committee and the Equityholder Committee in accordance with the Plan Support Agreement and Backstop Commitment Agreement, including, without limitation (a) Brown Rudnick LLP, as co-counsel to the Equityholder Committee, (B) Gray, Reed & McGraw, P.C., as co-counsel to the Equityholder Committee, (c) Peter J. Solomon Company, as financial advisor to the Equityholder Committee, (d) Paul Weiss, as co-counsel to the HoldCo Noteholder Committee, (e) Porter Hedges LLP, as co-counsel to the HoldCo Noteholder Committee, and (f) Houlihan Lokey, as financial advisor to the HoldCo Noteholder Committee. In accordance with the Plan Support Agreement and Backstop Commitment Agreement, the Reorganized Debtors shall pay the reasonable, documented fees, costs and expenses of such counsel and other professional advisors incurred within three (3) months following the Effective Date, but only to the extent such costs and expenses relate to services rendered in the course of consummation and implementation of the Plan or as contemplated under the Plan, whether such fees, costs and expenses were previously incurred or invoiced.

## ARTICLE V

## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

**5.1     Assumption of Executory Contracts and Unexpired Leases**

On the Effective Date, except as otherwise provided herein and under the Backstop Approval Order, and following consultation with counsel to the Equityholder Committee and counsel to the HoldCo Noteholder Committee, all Executory Contracts or Unexpired Leases will be deemed assumed and assigned to the Reorganized Debtors in accordance with the provisions and requirements of sections 365 and 1123 of the Bankruptcy Code, regardless of whether such Executory Contract or Unexpired Lease is set forth on the Schedule of Assumed Executory Contracts and Unexpired Leases, other than: (1) those that are identified on the Schedule of Rejected Executory Contracts and Unexpired Leases; (2) those that have been previously rejected by a Final Order; (3) those that are the subject of a motion to reject that is pending on the Effective Date or pursuant to which the requested effective date of rejection is after the Effective Date.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the assumptions, assumptions and assignments, or rejections, as applicable, of such Executory Contracts or Unexpired Leases pursuant to sections 365(a) and 1123 of the Bankruptcy Code. Unless otherwise indicated, assumptions or rejections of Executory Contracts and Unexpired Leases pursuant to the Plan are effective as of the Effective Date. Each Executory Contract or Unexpired Lease assumed pursuant to the Plan or by Bankruptcy Court order but not assigned to a third party before the Effective Date shall re-vest in and be fully enforceable by the applicable Reorganized Debtor in accordance with its terms, except as such terms may have been modified by the provisions of the Plan or any order of the Bankruptcy Court authorizing and providing for its assumption under applicable federal law. Any motions to assume or reject Executory Contracts or Unexpired Leases pending on the Effective Date shall be subject to approval by the Bankruptcy Court on or after the Effective Date.

**5.2**     **Claims Based on Rejection of Executory Contracts or Unexpired Leases**

Proofs of Claim with respect to Claims against any Debtor arising from the rejection of Executory Contracts or Unexpired Leases, if any, must be filed with the Bankruptcy Court within thirty (30) days after the date of entry of an order of the Bankruptcy Court (including the Confirmation Order) approving such rejection.  **Any Claim arising from the rejection of an Executory Contract or Unexpired Lease that is not Filed within such time will be automatically disallowed, forever barred from assertion, and shall not be enforceable against, as applicable, the Debtors, the Reorganized Debtors, the Estates, or property of the foregoing parties, without the need for any objection by the Debtors or the Reorganized Debtors, as applicable, or further notice to, or action, order, or approval of the Bankruptcy Court or any other Entity, and any such Claim arising out of the rejection of the Executory Contract or Unexpired Lease shall be deemed fully satisfied, released, and discharged, notwithstanding anything in the Schedules or a Proof of Claim to the contrary.**  Claims arising from the rejection of the Executory Contracts or Unexpired Leases shall be classified as General Unsecured Claims and shall be treated in accordance with Section 3.2 of this Plan.

**5.3**     **Cure of Defaults for Assumed Executory Contracts and Unexpired Leases**

Any monetary defaults under an Assumed Executory Contract or Unexpired Lease, shall be satisfied, pursuant to section 365(b)(1) of the Bankruptcy Code, by payment of the default amount, as reflected in the applicable Cure Notice, in Cash on the Effective Date or as soon as reasonably practicable thereafter, subject to the limitations described below, or on such other terms as the parties to such Executory Contracts or Unexpired Leases, and the Debtors, in consultation with counsel to the Equityholder Committee and counsel to the HoldCo Noteholder Committee, may otherwise agree.

At least 35 days before the Confirmation Hearing, the Debtors shall distribute, or cause to be distributed, Cure Notices to the applicable third parties.  **Any objection by a counterparty to an Executory Contract or Unexpired Lease to the proposed assumption or related Cure amount must be Filed, served and actually received by the Debtors at least seven days before the Confirmation Hearing.**  Any counterparty to an Executory Contract or Unexpired Lease that fails to object timely to the proposed assumption or Cure amount will be deemed to have assented to such assumption or Cure amount.  Notwithstanding anything herein to the contrary, in the event that any Executory Contract or Unexpired Lease is removed from the Schedule of Rejected Executory Contracts and Unexpired Leases after such 35-day deadline, a Cure Notice with respect to such Executory Contract or Unexpired Lease will be sent promptly to the counterparty thereof and a noticed hearing set to consider whether such Executory Contract or Unexpired Lease can be assumed.

In the event of an unresolved dispute regarding (1) the amount of any Cure Claim, (2) the ability of the Reorganized Debtors or any assignee to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under the Executory Contract or Unexpired Lease to be assumed, or (3) any other matter pertaining to assumption, assignment, or the Cure payments required by section 365(b)(1) of the Bankruptcy Code, such dispute shall be resolved by a Final Order of the Bankruptcy Court (which may be the Confirmation Order).

If the Bankruptcy Court determines that the Allowed Cure Claim with respect to any Executory Contract or Unexpired Lease is greater than the amount set forth in the applicable Cure Notice, the Debtors or Reorganized Debtors, as applicable, following consultation with counsel to the Equityholder Committee and counsel to the HoldCo Noteholder Committee, will have the right to add such Executory Contract or Unexpired Lease to the Schedule of Rejected Executory Contracts and Unexpired Leases, in which case such Executory Contract or Unexpired Lease will be deemed rejected as of the Effective Date.

Assumption of any Executory Contract or Unexpired Lease pursuant to the Plan or otherwise shall result in the full release and satisfaction of any Claims against any Debtor or defaults by any Debtor, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition or other bankruptcy related defaults, arising under any assumed Executory Contract or Unexpired Lease at any time before the date that the Debtors assume such Executory Contract or Unexpired Lease.  Any Proofs of Claim Filed with respect to an Executory Contract or Unexpired Lease that has been assumed shall be deemed disallowed and expunged, without further notice to or action, order, or approval of the Bankruptcy Court.

### 5.4 **Indemnification**

On and as of the Effective Date, the Indemnification Provisions will be assumed and irrevocable and will survive the effectiveness of the Plan, and the Reorganized Debtors' governance documents will provide for the indemnification, defense, reimbursement, exculpation, and/or limitation of liability of, and advancement of fees and expenses to the Debtors' and the Reorganized Debtors' directors, officers, employees, or agents that were employed by, or serving on the board of directors of, any of the Debtors as of the Petition Date, to the fullest extent permitted by law and at least to the same extent as the organizational documents of each of the respective Debtors on the Petition Date, against any claims or Causes of Action whether direct or derivative, liquidated or unliquidated, fixed or contingent, disputed or undisputed, matured or unmatured, known or unknown, foreseen or unforeseen, asserted or unasserted, and, notwithstanding anything in this Plan to the contrary, none of the Reorganized Debtors will amend and/or restate their respective governance documents or the New Organizational Documents before or after the Effective Date to terminate or adversely affect any of the Reorganized Debtors' obligations to provide such indemnification rights or such directors', officers', employees', or agents' indemnification rights.

### 5.5 **Insurance Policies**

Notwithstanding anything in the Plan to the contrary, all of the Debtors' insurance policies and any agreements, documents, or instruments relating thereto, are treated as and deemed to be Executory Contracts under the Plan.  On the Effective Date, pursuant to section 365(a) of the Bankruptcy Code, the Debtors shall be deemed to have assumed all insurance policies and any agreements, documents, and instruments related thereto, including all D&O Liability Insurance Policies (including tail coverage liability insurance).  Entry of the Confirmation Order will constitute the Bankruptcy Court's approval of the Reorganized Debtors' assumption of all such insurance policies, including the D&O Liability Insurance Policies.  Notwithstanding anything to the contrary contained in the Plan, Confirmation of the Plan shall not discharge, impair, or otherwise modify any indemnity obligations assumed by the foregoing assumption of insurance policies, including the D&O Liability Insurance Policies, and each such indemnity obligation will be deemed and treated as an Executory Contract that has been assumed by the Reorganized Debtors under the Plan as to which no Proof of Claim need be filed, and shall survive the Effective Date.

After the Effective Date, the Reorganized Debtors shall not terminate or otherwise reduce, modify or restrict in any way, the coverage under any D&O Liability Insurance Policy (including such tail coverage liability insurance) in effect as of the Effective Date, and all members, managers, directors, and officers of the Debtors who served in such capacity at any time prior to the Effective Date of the Plan shall be entitled to the full benefits of any such policy for the full term of such policy regardless of whether such members, managers, directors, and/or officers remain in such positions after the Effective Date of the Plan.

### 5.6 **Contracts and Leases After the Petition Date**

Contracts and leases entered into after the Petition Date by any Debtor, including any Executory Contracts and Unexpired Leases assumed under section 365 of the Bankruptcy Code, will be performed by the applicable Debtor or Reorganized Debtor liable thereunder in the ordinary course of its business.  Such contracts and leases that are not rejected under the Plan will survive and remain unaffected by entry of the Confirmation Order.

### 5.7 **Modifications, Amendments, Supplements, Restatements, or Other Agreements**

Unless otherwise provided in the Plan, each Executory Contract or Unexpired Lease that is assumed shall include all modifications, amendments, supplements, restatements, or other agreements that in any manner affect such Executory Contract or Unexpired Lease, and Executory Contracts and Unexpired Leases related thereto, if any, including easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, and any other interests, unless any of the foregoing agreements has been previously rejected or repudiated or is rejected or repudiated under the Plan.

Modifications, amendments, supplements, and restatements to prepetition Executory Contracts and Unexpired Leases that have been executed by the Debtors during the Chapter 11 Cases shall not be deemed to alter

the prepetition nature of the Executory Contract or Unexpired Lease, or the validity, priority, or amount of any Claims that may arise in connection therewith.

**5.8**    **Reservation of Rights**

Nothing contained in the Plan or the Plan Supplement shall constitute an admission by the Debtors or any other party that any contract or lease is in fact an Executory Contract or Unexpired Lease or that any Reorganized Debtor has any liability thereunder.  If there is a dispute regarding whether a contract or lease is or was executory or unexpired at the time of assumption, the Debtors or the Reorganized Debtors, as applicable, shall have 45 days following entry of a Final Order resolving such dispute to alter their treatment of such contract or lease.

**5.9**    **Nonoccurrence of Effective Date**

In the event that the Effective Date does not occur, the Bankruptcy Court shall retain jurisdiction with respect to any request to extend the deadline for assuming or rejecting Unexpired Leases pursuant to section 365(d)(4) of the Bankruptcy Code.

**ARTICLE VI**

**PROVISIONS GOVERNING DISTRIBUTIONS**

**6.1**    **Distributions on Account of Claims Allowed and Existing HoldCo Common Stock Outstanding as of the Distribution Record Date**

(a)    **Delivery of Distributions in General**

Except as otherwise provided herein, a Final Order, or as otherwise agreed to by the Debtors or the Reorganized Debtors, as the case may be, and the holder of the applicable Claim or Interest, the Distribution Agent shall make distributions to holders of Allowed Claims and Existing HoldCo Common Stock, as applicable, as of the Distribution Record Date, at the address for each such holder as indicated on the Debtors' records as of the date of any such distribution, and in accordance with the Rights Offering Procedures.

If a Claim is not an Allowed Claim as of the Effective Date, the Distribution Agent shall distribute the full amount of the distributions that the Plan provides for holders of Allowed Claims in each applicable Class by no later than the later of (i) the date provided for distribution under Article III of the Plan and (ii) as soon as reasonably practicable after allowance of such Claim.

**6.2**    **Delivery of Distributions**

(a)    **Record Date for Distributions to Holders of Non-Publicly Traded Securities**

On the Effective Date, the Claims Register shall be closed and the Distribution Agent shall be authorized and entitled to recognize only those record holders, if any, listed on the Claims Register as of the close of business on the Effective Date.  Notwithstanding the foregoing, if a Claim or Interest, other than one based on a publicly traded Certificate, is transferred and the Debtors have been notified in writing of such transfer less than 10 days before the Effective Date, the Distribution Agent shall make distributions to the transferee (rather than the transferor) only to the extent practical and in any event only if the relevant transfer form contains an unconditional and explicit certification and waiver of any objection to the transfer by the transferor.

(b)    **Distribution Process**

The Distribution Agent shall make all distributions required under the Plan, except that distributions to holders of Allowed Claims governed by a separate agreement, which shall include the HoldCo Notes Indentures, the OpCo RCF, and the OpCo Notes MNPA, and administered by a Servicer, including the HoldCo Notes Indenture Trustee, and the OpCo RCF Agent, shall be deposited with the appropriate Servicer, at which time such distributions

34

shall be deemed complete, and the Servicer shall deliver such distributions in accordance with the Plan and the terms of the governing agreement.   Except as otherwise provided herein, and notwithstanding any authority to the contrary, distributions to holders of Allowed Claims and Existing HoldCo Common Stock, including Claims that become Allowed after the Effective Date, shall be made to holders of record as of the Effective Date by the Distribution Agent or a Servicer, as appropriate:   (1) to the address of such holder as set forth in the books and records of the applicable Debtor (or if the Debtors have been notified in writing, on or before the date that is 10 days before the Effective Date, of a change of address, to the changed address); (2) in accordance with Federal Rule of Civil Procedure 4, as modified and made applicable by Bankruptcy Rule 7004, if no address exists in the Debtors' books and records, no Proof of Claim has been filed and the Distribution Agent has not received a written notice of a change of address on or before the date that is 10 days before the Effective Date; or (3) on any counsel that has appeared in the Chapter 11 Cases on the holder's behalf.   The Debtors, the Reorganized Debtors, and the Distribution Agent, as applicable, shall not incur any liability whatsoever on account of any distributions under the Plan.   In addition, notwithstanding anything to contrary contained herein, including this <u>Section 6.2</u>, distributions under the Plan to holders of publicly traded securities shall be made in accordance with customary distribution procedures applicable to such securities.

(c)      **Compliance Matters**

In connection with the Plan, to the extent applicable, the Reorganized Debtors and the Distribution Agent shall comply with all tax withholding and reporting requirements imposed on them by any Governmental Unit, and all distributions pursuant to the Plan shall be subject to such withholding and reporting requirements. Notwithstanding any provision in the Plan to the contrary, the Reorganized Debtors and the Distribution Agent shall be authorized to take all actions necessary or appropriate to comply with such withholding and reporting requirements, including liquidating a portion of the distribution to be made under the Plan to generate sufficient funds to pay applicable withholding taxes, withholding distributions pending receipt of information necessary to facilitate such distributions, or establishing any other mechanisms they believe are reasonable and appropriate.   The Reorganized Debtors reserve the right to allocate all distributions made under the Plan in compliance with all applicable wage garnishments, alimony, child support, and other spousal awards, liens, and encumbrances.

(d)      **Foreign Currency Exchange Rate**

Except as otherwise provided in a Bankruptcy Court order, as of the Effective Date, any Claim asserted in currency other than U.S. dollars shall be automatically deemed converted to the equivalent U.S. dollar value using the exchange rate for the applicable currency as published in *The Wall Street Journal, National Edition*, on the Effective Date.

(e)      **Fractional, Undeliverable, and Unclaimed Distributions**

(1)      *Fractional Distributions*.   Whenever any distribution of fractional shares of New Common Stock would otherwise be required pursuant to the Plan, the actual distribution shall reflect a rounding of such fraction to the nearest whole share (up or down) with half shares or less being rounded down.   Whenever any payment of Cash of a fraction of a dollar pursuant to the Plan would otherwise be required, the actual payment shall reflect a rounding of such fraction to the nearest whole dollar (up or down), with half dollars or less being rounded down.

(2)      *Undeliverable and Unclaimed Distributions*.   If any distribution to a holder of an Allowed Claim (including any Claim on account of any royalty, working interest, or related interest) or Existing HoldCo Common Stock, as applicable, is returned to the Distribution Agent as undeliverable, no further distributions shall be made to such holder unless and until the Distribution Agent is notified in writing of such holder's then-current address or other necessary information for delivery, at which time all currently due missed distributions shall be made to such holder without interest; <u>provided</u>, <u>however</u>, that such distributions shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code at the expiration of one year from the Effective Date.   After such date, all unclaimed property or interests in property (including any property on account of any

Claim on account of any royalty, working interest, or related interest) shall revert to the Reorganized Debtors automatically and without need for a further order by the Bankruptcy Court (notwithstanding any applicable federal, provincial or state escheat, abandoned, or unclaimed property laws to the contrary), and, to the extent such Unclaimed Distribution is New Common Stock, shall be deemed cancelled. Upon such revesting, the Claim of the holder or its successors with respect to such property shall be cancelled, discharged, and forever barred notwithstanding any applicable federal or state escheat, abandoned, or unclaimed property laws, or any provisions in any document governing the distribution that is an Unclaimed Distribution, to the contrary.

(f)      **Surrender of Cancelled Instruments or Securities**

On the Effective Date, each holder of a Certificate shall be deemed to have surrendered such Certificate to the Distribution Agent or a Servicer (to the extent the relevant Claim or Interest is governed by an agreement and administered by a Servicer).   Such Certificate shall be cancelled solely with respect to the Debtors, and such cancellation shall not alter the obligations or rights of any non-Debtor third parties vis-à-vis one another with respect to such Certificate.   Notwithstanding the foregoing paragraph, this Section 6.2(f) shall not apply to any Claims and Interests reinstated pursuant to the terms of the Plan.

**6.3      Minimum Distributions**

Holders of Allowed Claims entitled to distributions of $50 or less shall not receive distributions, and each Claim to which this limitation applies shall be discharged pursuant to Article VIII of this Plan and its holder shall be forever barred pursuant to Article VIII of this Plan from asserting that Claim against the Reorganized Debtors or their property.

**6.4      Claims Paid or Payable by Third Parties**

(a)      **Claims Paid by Third Parties**

A Claim shall be reduced in full, and such Claim shall be disallowed without an objection to such Claim having to be filed and without any further notice to or action, order, or approval of the Bankruptcy Court, to the extent that the holder of such Claim receives payment in full on account of such Claim from a party that is not a Debtor or Reorganized Debtor.   To the extent a holder of a Claim receives a distribution on account of such Claim and receives payment from a party that is not a Debtor or a Reorganized Debtor on account of such Claim, such holder shall repay, return, or deliver any distribution held by or transferred to the holder to the applicable Reorganized Debtor to the extent the holder's total recovery on account of such Claim from the third party and under the Plan exceeds the amount of such Claim as of the date of any such distribution under the Plan.

(b)      **Claims Payable by Insurance Carriers**

No distributions under the Plan shall be made on account of an Allowed Claim that is payable pursuant to one of the Debtors' insurance policies until the holder of such Allowed Claim has exhausted all remedies with respect to such insurance policy.   To the extent that one or more of the Debtors' insurers agrees to satisfy in full a Claim (if and to the extent adjudicated by a court of competent jurisdiction), then immediately upon such insurers' agreement, such Claim may be expunged to the extent of any agreed upon satisfaction on the Claims Register by the Notice and Claims Agent without a Claims objection having to be filed and without any further notice to or action, order, or approval of the Bankruptcy Court.

(c)      **Applicability of Insurance Policies**

Except as otherwise provided herein, distributions to holders of Allowed Claims shall be in accordance with the provisions of any applicable insurance policy.   Nothing contained in the Plan shall constitute or be deemed a waiver of any Cause of Action that the Debtors or any Entity may hold against any other Entity, including insurers

under any policies of insurance, nor shall anything contained herein constitute or be deemed a waiver by such insurers of any defenses, including coverage defenses, held by such insurers.

**6.5**      <u>Setoffs</u>

Except as otherwise expressly provided for herein, each Reorganized Debtor, pursuant to the Bankruptcy Code (including section 553 of the Bankruptcy Code), applicable non-bankruptcy law, or as may be agreed to by the holder of a Claim, may set off against any Allowed Claim and the distributions to be made pursuant to the Plan on account of such Allowed Claim (before any distribution is made on account of such Allowed Claim), any Claims, rights, and Causes of Action of any nature that such Debtor or Reorganized Debtor, as applicable, may hold against the holder of such Allowed Claim, to the extent such Claims, rights, or Causes of Action against such holder have not been otherwise compromised or settled on or prior to the Effective Date (whether pursuant to the Plan or otherwise); <u>provided</u>, <u>however</u>, that neither the failure to effectuate such a setoff nor the allowance of any Claim pursuant to the Plan shall constitute a waiver or release by such Reorganized Debtor of any such Claims, rights, and Causes of Action that such Reorganized Debtor may possess against such holder.

**6.6**      <u>Allocation Between Principal and Accrued Interest</u>

Except as otherwise provided herein, the aggregate consideration paid to holders with respect to their Allowed Claims shall be treated pursuant to the Plan as allocated first to the principal amount of such Allowed Claims (to the extent thereof) and, thereafter, to interest, if any, on such Allowed Claim accrued through the Effective Date.

**ARTICLE VII**

**PROCEDURES FOR RESOLVING DISPUTED CLAIMS**

**7.1**      <u>Allowance of Claims and Interests</u>

After the Effective Date, each of the Reorganized Debtors shall have and retain any and all rights and defenses its predecessor Debtor had with respect to any Claim or Interest immediately before the Effective Date.

**7.2**      <u>Claims Administration Responsibilities</u>

Except as otherwise specifically provided in the Plan and notwithstanding any requirements that may be imposed pursuant to Bankruptcy Rule 9019, after the Effective Date, the Reorganized Debtors shall have the sole authority, without prior notice to, or approval by the Bankruptcy Court, to: (1) File, withdraw, or litigate to judgment objections to Claims; (2) settle or compromise any Disputed Claim without any further notice to or action, order, or approval by the Bankruptcy Court; and (3) administer and adjust the Claims Register to reflect any such settlements or compromises without any further notice to or action, order, or approval by the Bankruptcy Court.

**7.3**      <u>Estimation of Claims</u>

Before or after the Effective Date, the Debtors or the Reorganized Debtors, as applicable, may (but are not required to) at any time request that the Bankruptcy Court estimate any Disputed Claim pursuant to section 502(c) of the Bankruptcy Code for any reason, regardless of whether any party previously has objected to such Claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court shall retain jurisdiction to estimate any such Claim, including during the litigation of any objection to any Claim or during the appeal relating to such objection. Notwithstanding any provision otherwise in the Plan, a Claim that has been expunged from the Claims Register, but that either is subject to appeal or has not been the subject of a Final Order, shall be deemed to be estimated at zero dollars, unless otherwise ordered by the Bankruptcy Court. In the event that the Bankruptcy Court estimates any Claim that is disputed, contingent, or unliquidated, that estimated amount shall constitute a maximum limitation on such Claim for all purposes under the Plan (including for purposes of distributions), and the relevant Debtor may elect to pursue any supplemental proceedings to object to any ultimate distribution on such

Claim.  In addition to the foregoing, the Debtors shall comply with the claims determination procedures set forth in Section 7.1(r) of the Backstop Commitment Agreement, as and to the extent provided therein.

**7.4**    **Adjustment to Claims without Objection**

Any Claim that has been paid or satisfied, or any Claim that has been amended or superseded, may be adjusted or expunged on the Claims Register by the Debtors or the Reorganized Debtors without an objection having to be Filed and without any further notice to or action, order, or approval of the Bankruptcy Court.

**7.5**    **[Reserved.]**

**7.6**    **Disallowance of Claims**

Any Claims held by Entities from which property is recoverable under sections 542, 543, 550, or 553 of the Bankruptcy Code or that is a transferee of a transfer avoidable under section 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of the Bankruptcy Code, shall be deemed disallowed pursuant to section 502(d) of the Bankruptcy Code, and holders of such Claims may not receive any distributions on account of such Claims until such time as such Causes of Action against that Entity have been settled or a Final Order with respect thereto has been entered and all sums due, if any, to the Debtors by that Entity have been turned over or paid to the Debtors or the Reorganized Debtors.  All Proofs of Claim Filed on account of an indemnification obligation to a director, officer, or employee shall be deemed satisfied and expunged from the Claims Register as of the Effective Date to the extent such indemnification obligation is assumed (or honored or reaffirmed, as the case may be) pursuant to the Plan, without any further notice to or action, order, or approval of the Bankruptcy Court.

**Except as provided herein or otherwise agreed, any and all Proofs of Claim filed after the Claims Bar Date, Administrative Claims Bar Date, or deadline for filing Proofs of Claim based on the rejection of an Executory Contract or Unexpired Lease, as applicable, shall be deemed disallowed and expunged as of the Effective Date without any further notice to or action, order, or approval of the Bankruptcy Court, and holders of such Claims may not receive any distributions on account of such Claims, unless on or before the Confirmation Hearing such late Filed Claim has been deemed timely Filed by a Final Order.**

**7.7**    **Amendments to Claims; Additional Claims**

On or after the Effective Date, a Claim may not be Filed or amended without the prior authorization of the Bankruptcy Court or the Reorganized Debtors, and any such new or amended Claim Filed shall be deemed disallowed in full and expunged without any further action, order, or approval of the Bankruptcy Court.

**7.8**    **No Distributions Pending Allowance**

If an objection to a Claim or portion thereof is Filed as set forth in Article VII of this Plan, no payment or distribution provided under the Plan shall be made on account of such Claim or portion thereof unless and until such Disputed Claim becomes an Allowed Claim.

**7.9**    **Distributions After Allowance**

To the extent that a Disputed Claim ultimately becomes an Allowed Claim, distributions (if any) shall be made to the holder of such Allowed Claim in accordance with the provisions of the Plan.  On the next Distribution Date following the date that the order or judgment of the Bankruptcy Court allowing any Disputed Claim becomes a Final Order, or as otherwise agreed, the Reorganized Debtors shall provide to the holder of such Claim the distribution (if any) to which such holder is entitled under the Plan as of the Effective Date without any interest, dividends, or accruals to be paid on account of such Claim unless required under applicable bankruptcy law.

**7.10**      **Single Satisfaction of Claims**

      Holders of Allowed Claims may assert such Claims against each Debtor obligated with respect to such Claim, and such Holders shall be entitled to share in the recovery provided for the applicable Class of Claims against each obligated Debtor based upon the full Allowed amount of the Claim.  Notwithstanding the foregoing, in no case shall the aggregate value of all property received or retained under the Plan on account of Allowed Claims exceed 100% of the underlying Allowed Claim plus applicable interest.  For the avoidance of doubt, this shall not affect the obligation of each and every Debtor to pay U.S. Trustee Fees until such time as a particular case is closed, dismissed, or converted.

**ARTICLE VIII**

**EFFECT OF CONFIRMATION OF THE PLAN**

**8.1**      **Discharge of Claims and Termination of Interests**

      **Except as otherwise provided for herein, effective as of the Effective Date:  (a) the rights afforded in the Plan and the treatment of all Claims and Interests shall be in exchange for and in complete satisfaction, discharge, and release of all Claims and Interests of any nature whatsoever, including any interest accrued on such Claims from and after the Petition Date, against the Debtors or any of their assets, property, or Estates; (b) the Plan shall bind all holders of Claims and Interests, notwithstanding whether any such holders failed to vote to accept or reject the Plan or voted to reject the Plan; (c) all Claims and Interests shall be satisfied, discharged, and released in full, and the Debtors' liability with respect thereto shall be extinguished completely, including any liability of the kind specified under section 502(g) of the Bankruptcy Code; and (d) all Entities shall be precluded from asserting against the Debtors, the Debtors' Estates, the Reorganized Debtors, their successors and assigns, and their assets and properties any other Claims or Interests based upon any documents, instruments, or any act or omission, transaction, or other activity of any kind or nature that occurred prior to the Effective Date.**

**8.2**      **Releases by the Debtors**

      **Notwithstanding anything contained in the Plan to the contrary, pursuant to section 1123(b) of the Bankruptcy Code, for good and valuable consideration, on and after the Effective Date, each Released Party is deemed released and discharged by the Debtors, the Reorganized Debtors, and their Estates from any and all Claims and Causes of Action, whether known or unknown, including any derivative claims, asserted on behalf of the Debtors, that the Debtors, the Reorganized Debtors, or their Estates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim or Interest, based on or relating to, or in any manner arising from, in whole or in part, the Debtors (including the management, ownership or operation thereof), the Debtors' in- or out-of-court restructuring efforts, any Avoidance Actions (but excluding Avoidance Action brought as counterclaims or defenses to Claims asserted against the Debtors), the formulation, preparation, dissemination, negotiation, or Filing of the Plan Support Agreement, the Backstop Commitment Agreement, or any Restructuring Transaction, contract, instrument, release, or other agreement or document (including providing any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or the Confirmation Order in lieu of such legal opinion) created or entered into in connection with the Plan Support Agreement, the Disclosure Statement, the Plan, the Plan Supplement, the Rights Offering, the Backstop Commitment Agreement, the Chapter 11 Cases, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance or distribution of Securities pursuant to the Plan, or the distribution of property under the Plan, or upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date related or relating to the foregoing.  Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release (a) any post-Effective Date obligations of any party or Entity under the Plan, any Restructuring Transaction, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan or (b) any individual from any claim related to an act or**

omission that is determined in a Final Order by a court competent jurisdiction to have constituted actual fraud or willful misconduct.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Debtor Release, which includes by reference each of the related provisions and definitions contained in the Plan, and further, shall constitute the Bankruptcy Court's finding that the Debtor Release is:  (1) in exchange for the good and valuable consideration provided by the Released Parties; (2) a good faith settlement and compromise of the Claims released by the Debtor Release; (3) in the best interests of the Debtors and all holders of Claims and Interests; (4) fair, equitable, and reasonable; (5) given and made after due notice and opportunity for hearing; and (6) a bar to any of the Debtors, the Reorganized Debtors, or the Debtors' Estates asserting any Claim or Cause of Action released pursuant to the Debtor Release.

**8.3     Releases by Holders of Claims and Interests**

Notwithstanding anything contained in the Plan to the contrary, as of the Effective Date, each Releasing Party is deemed to have released and discharged each Debtor, Reorganized Debtor, and Released Party from any and all Claims and Causes of Action, whether known or unknown, including any derivative claims, asserted on behalf of the Debtors, that such Entity would have been legally entitled to assert (whether individually or collectively), based on or relating to, or in any manner arising from, in whole or in part, the Debtors (including the management, ownership or operation thereof), the Debtors' in- or out-of-court restructuring efforts, any Avoidance Actions, the formulation, preparation, dissemination, negotiation, or Filing of the Plan Support Agreement, the Backstop Commitment Agreement, or any Restructuring Transaction, contract, instrument, release, or other agreement or document (including providing any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or the Confirmation Order in lieu of such legal opinion) created or entered into in connection with the Plan Support Agreement, the Disclosure Statement, the Plan, the Plan Supplement, the Rights Offering, the Backstop Commitment Agreement, the Chapter 11 Cases, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance or distribution of Securities pursuant to the Plan, or the distribution of property under the Plan, or upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date related or relating to the foregoing.  Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release: (a) any post-Effective Date obligations of any party or Entity under the Plan, any Restructuring Transaction; (b) any post-Effective Date obligations of any party or Entity under the Plan Support Agreement, the Backstop Commitment, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan or Plan Supplement; or (c) any individual from any claim related to an act or omission that is determined in a Final Order by a court competent jurisdiction to have constituted actual fraud or willful misconduct.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the releases described in this **Section 8.3**, which includes by reference each of the related provisions and definitions contained herein, and, further, shall constitute the Bankruptcy Court's finding that each release described in this **Section 8.3** is:  (1) consensual; (2) essential to the confirmation of the Plan; (3) given in exchange for the good and valuable consideration provided by the Released Parties; (4) a good faith settlement and compromise of such Claims; (5) in the best interests of the Debtors and their Estates; (6) fair, equitable, and reasonable; (7) given and made after due notice and opportunity for hearing; and (8) a bar to any of the Releasing Parties asserting any claim or Cause of Action released pursuant to this **Section 8.3**.

**8.4     Exculpation**

Notwithstanding anything contained herein to the contrary, no Exculpated Party shall have or incur liability for, and each Exculpated Party is hereby released and exculpated from, any Cause of Action for any claim related to any act or omission in connection with, relating to, or arising out of, the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, or Filing of the Plan Support Agreement, the Backstop Commitment Agreement and related prepetition transactions, the Disclosure Statement, the Plan,

the Plan Supplement, or any Restructuring Transaction, contract, instrument, release or other agreement or document (including providing any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Exculpated Party on the Plan or the Confirmation Order in lieu of such legal opinion) created or entered into in connection with the Disclosure Statement, the Plan, the Plan Supplement, the Plan Support Agreement, the Rights Offering, the Backstop Commitment Agreement, the Filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance of Securities pursuant to the Plan, or the distribution of property under the Plan, except for claims related to any act or omission that is determined in a Final Order by a court of competent jurisdiction to have constituted actual fraud or willful misconduct, but in all respects such Entities shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan.   The Exculpated Parties have, and upon Consummation of the Plan shall be deemed to have, participated in good faith and in compliance with the applicable laws with regard to the solicitation of, and distribution of, consideration pursuant to the Plan and, therefore, are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan.

### 8.5     Injunction

Except as otherwise provided herein or for obligations issued pursuant hereto, all Entities that have held, hold, or may hold Claims or Interests that have been released pursuant to Section 8.3 of this Plan, discharged pursuant to Section 8.1 of this Plan, or are subject to exculpation pursuant to Section 8.4 of this Plan shall be permanently enjoined, from and after the Effective Date, from taking any of the following actions against, as applicable, the Debtors, the Reorganized Debtors, the Released Parties, or the Exculpated Parties:  (a) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Interests; (b) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any such Claims or Interests; (c) creating, perfecting, or enforcing any encumbrance of any kind against such Entities or the property or Estates of such Entities on account of or in connection with or with respect to any such Claims or Interests; (d) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from such Entities or against the property of such Entities on account of or in connection with or with respect to any such Claims or Interests unless such Entity has timely asserted such setoff right in a document Filed with the Bankruptcy Court explicitly preserving such setoff, and notwithstanding an indication of a Claim or Interest or otherwise that such Entity asserts, has, or intends to preserve any right of setoff pursuant to applicable law or otherwise; and (e) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Interests discharged, released, exculpated, or settled pursuant to the Plan.

### 8.6     Protection Against Discriminatory Treatment

In accordance with section 525 of the Bankruptcy Code, and consistent with paragraph 2 of Article VI of the United States Constitution, no Governmental Unit shall discriminate against any Reorganized Debtor, or any Entity with which a Reorganized Debtor has been or is associated, solely because such Reorganized Debtor was a Debtor under chapter 11, may have been insolvent before the commencement of the Chapter 11 Cases (or during the Chapter 11 Cases but before such Debtor was granted or denied a discharge), or has not paid a debt that is dischargeable in the Chapter 11 Cases.

### 8.7     Release of Liens

Except as otherwise specifically provided in the Plan or in any contract, instrument, release, or other agreement or document created pursuant to the Plan, on the Effective Date and concurrently with the applicable distributions made pursuant to the Plan and, in the case of a Secured Claim, satisfaction in full of the portion of the Secured Claim that is Allowed as of the Effective Date, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estates shall be fully released and discharged, and all of the right, title,

and interest of any holder of such mortgages, deeds of trust, Liens, pledges, or other security interests shall revert to the Reorganized Debtors and their successors and assigns, in each case, without any further approval or order of the Bankruptcy Court and without any action or Filing being required to be made by the Debtors or any holder of a Secured Claim.

**8.8    Reimbursement or Contribution**

If the Bankruptcy Court disallows a Claim for reimbursement or contribution of an Entity pursuant to section 502(e)(1)(B) of the Bankruptcy Code, then to the extent that such Claim is contingent as of the Effective Date, such Claim shall be forever disallowed notwithstanding section 502(j) of the Bankruptcy Code, unless prior to the Effective Date (a) such Claim has been adjudicated as noncontingent, or (b) the relevant holder of a Claim has filed a noncontingent Proof of Claim on account of such Claim and a Final Order has been entered determining such Claim as no longer contingent.

**8.9    Recoupment**

In no event shall any holder of a Claim be entitled to recoup such Claim against any Claim, right, or Cause of Action of the Debtors or the Reorganized Debtors, as applicable, unless such holder actually has performed such recoupment and provided notice thereof in writing to the Debtors on or before the Confirmation Date, notwithstanding any indication in any Proof of Claim or otherwise that such holder asserts, has, or intends to preserve any right of recoupment.

**8.10    Subordination Rights**

Any distributions under the Plan to holders of Claims or Existing HoldCo Common Stock shall be received and retained free from any obligations to hold or transfer the same to any other holder and shall not be subject to levy, garnishment, attachment, or other legal process by any holder by reason of claimed contractual subordination rights.  Any such subordination rights shall be waived, and the Confirmation Order shall constitute an injunction enjoining any Entity from enforcing or attempting to enforce any contractual, legal, or equitable subordination rights to property distributed under the Plan, in each case other than as provided in the Plan.

## ARTICLE IX

## CONDITIONS PRECEDENT TO THE EFFECTIVE DATE

**9.1    Conditions Precedent to the Effective Date**

It shall be a condition to the Effective Date that the following conditions shall have been satisfied or waived pursuant to Section 9.2 of this Plan:

(a)    the Disclosure Statement Order, Backstop Approval Order and Confirmation Order shall have been entered by the Bankruptcy Court, each of which shall be in form and substance reasonably satisfactory to the Debtors and the Required Consenting Parties, and such orders shall have become Final Orders that have not been stayed, modified or vacated on appeal;

(b)    the Canadian Court shall have entered an order recognizing the Confirmation Order;

(c)    the Definitive Documentation shall satisfy the Definitive Documentation Plan Support Agreement Requirements;

(d)    all governmental and material third party approvals and consents, including Bankruptcy Court approval, necessary in connection with the Restructuring Transactions shall have been obtained, not be subject to unfulfilled conditions, and be in full force and effect and all applicable waiting periods shall have expired without any action being taken or threatened by any competent authority that would restrain, prevent, or otherwise impose materially adverse conditions on such transactions;

(e)      the Plan and the Plan Supplement, including any exhibits, schedules, amendments, modifications, or supplements thereto, and inclusive of any amendments, modifications, or supplements made thereto, shall have been Filed in a manner consistent in all respects with the Plan Support Agreement and the Backstop Commitment Agreement, and any modifications made after the Confirmation Date but prior to the Effective Date shall have been made in accordance with Section 10.1 of this Plan;

(f)      all conditions precedent to the issuance of the New Common Stock, other than any conditions related to the occurrence of the Effective Date, shall have occurred;

(g)      the Debtors shall have implemented the Restructuring Transactions, including the Rights Offering, and all transactions contemplated herein, in a manner consistent in all respects with the Plan Support Agreement, the Plan Term Sheet, the Backstop Commitment Agreement, and the Plan;

(h)      all documents and agreements necessary to implement the Plan, including, without limitation, the New OpCo Notes and Additional New OpCo Notes, if any and to the extent applicable, shall have been executed, and all conditions precedent to the effectiveness of such documents shall have been satisfied or waived pursuant to the terms thereof (or will be satisfied and waived substantially concurrently with the occurrence of the Effective Date);

(i)      the New Organizational Documents shall have been duly filed with the applicable authorities in the relevant jurisdictions;

(j)      the Plan Support Agreement shall not have terminated and shall be in full force and effect, and the Debtors and the Consenting Equityholders and Consenting Noteholders shall be in compliance therewith;

(k)      the Backstop Commitment Agreement shall not have terminated and shall be in full force and effect, and the Debtors and the Backstop Parties shall be in substantial compliance therewith, and all conditions precedent to the obligations of the Backstop Parties to consummate the transactions contemplated thereby shall be satisfied (or waived in accordance with the terms of the Backstop Commitment Agreement) prior to or on the Effective Date; and

(l)      the Professional Fee Escrow Account shall have been established and funded with the Professional Fee Amount.

## 9.2      Waiver of Conditions Precedent

The conditions to the Effective Date set forth in Section 9.1 of this Plan may be waived with the prior written consent of the Debtors and the Required Consenting Parties at any time or as otherwise provided in the Plan Support Agreement and the Backstop Commitment Agreement, without any notice to any other parties in interest and without any further notice to or action, order, or approval of the Bankruptcy Court, and without any formal action other than proceeding to consummate the Plan.  The failure of the Debtors or Reorganized Debtors, as applicable, or the Required Consenting Parties, to exercise any of the foregoing rights shall not be deemed a waiver of any other rights, and each such right shall be deemed an ongoing right, which may be asserted at any time.

## 9.3      Effect of Non-Occurrence of Conditions to Consummation

If the Effective Date does not occur on or before the termination of the Plan Support Agreement or the Backstop Commitment Agreement, then: (a) the Plan will be null and void in all respects; (b) nothing contained in the Plan, the Disclosure Statement, the Backstop Commitment Agreement, or the Plan Support Agreement shall: (i) constitute a waiver or release of any Claims, Interests, or Causes of Action by an Entity; (ii) prejudice in any manner the rights of any Debtor or any other Entity; or (iii) constitute an admission, acknowledgment, offer, or undertaking of any sort by any Debtor or any other Entity; provided, however, that all provisions of the Plan Support Agreement and Backstop Commitment Agreement that survive termination of those agreements shall remain in effect in accordance with the terms thereof.

**9.4**     **Substantial Consummation**

"Substantial Consummation" of the Plan, as defined in 11 U.S.C. § 1101(2), shall be deemed to occur on the Effective Date.

## ARTICLE X

## MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE PLAN

**10.1**     **Modification of Plan**

Subject to the limitations and terms contained in the Plan, the Plan Support Agreement, the Backstop Commitment Agreement, and the approval rights of the Required Consenting Parties set forth therein, the Debtors reserve the right to (1) amend or modify the Plan before the entry of the Confirmation Order consistent with the terms set forth herein; and (2) after the entry of the Confirmation Order, the Debtors or the Reorganized Debtors, as applicable, may, upon order of the Bankruptcy Court, amend or modify the Plan, in accordance with section 1127(b) of the Bankruptcy Code, the Plan Support Agreement, and the Backstop Commitment Agreement, remedy any defect or omission, or reconcile any inconsistency in the Plan in such manner as may be necessary to carry out the purpose and intent of the Plan consistent with the terms set forth herein.

**10.2**     **Effect of Confirmation on Modifications**

Entry of the Confirmation Order shall constitute approval of all modifications to the Plan occurring after the solicitation of votes thereon pursuant to section 1127(a) of the Bankruptcy Code and a finding that such modifications to the Plan do not require additional disclosure or resolicitation under Bankruptcy Rule 3019.

**10.3**     **Revocation or Withdrawal of Plan**

The Debtors reserve the right, subject to the terms of the Plan Support Agreement and the approval rights of the Required Consenting Parties set forth therein, to revoke or withdraw the Plan with respect to any or all Debtors before the Confirmation Date and to file subsequent chapter 11 plans. If the Debtors revoke or withdraw the Plan, or if Confirmation or the Effective Date does not occur, then: (a) the Plan will be null and void in all respects; (b) any settlement or compromise embodied in the Plan, assumption or rejection of Executory Contracts or Unexpired Leases effectuated by the Plan, and any document or agreement executed pursuant hereto will be null and void in all respects; and (c) nothing contained in the Plan shall (1) constitute a waiver or release of any Claims, Interests, or Causes of Action by any Entity, (2) prejudice in any manner the rights of any Debtor or any other Entity, or (3) constitute an admission, acknowledgement, offer, or undertaking of any sort by any Debtor or any other Entity; provided, however, that all provisions of the Plan Support Agreement and Backstop Commitment Agreement that survive termination of those agreements shall remain in effect in accordance with the terms thereof.

## ARTICLE XI

## RETENTION OF JURISDICTION

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court shall retain exclusive jurisdiction over all matters arising out of, or related to, the Chapter 11 Cases and the Plan pursuant to sections 105(a) and 1142 of the Bankruptcy Code, including jurisdiction to:

1.     allow, disallow, determine, liquidate, classify, estimate, or establish the priority, secured or unsecured status, or amount of any Claim against a Debtor, including the resolution of any request for payment of any Claim and the resolution of any and all objections to the secured or unsecured status, priority, amount, or allowance of Claims;

2.      decide and resolve all matters related to the granting and denying, in whole or in part, any applications for allowance of compensation or reimbursement of expenses to Professionals authorized pursuant to the Bankruptcy Code or the Plan;

3.      resolve any matters related to Executory Contracts or Unexpired Leases, including:  (a) the assumption or assumption and assignment of any Executory Contract or Unexpired Lease to which a Debtor is party or with respect to which a Debtor may be liable and to hear, determine, and, if necessary, liquidate, any Cure or Claims arising therefrom, including pursuant to section 365 of the Bankruptcy Code; (b) any potential contractual obligation under any Executory Contract or Unexpired Lease that is assumed; and (c) any dispute regarding whether a contract or lease is or was executory or expired;

4.      ensure that distributions to holders of Allowed Claims and Existing HoldCo Common Stock are accomplished pursuant to the provisions of the Plan and adjudicate any and all disputes arising from or relating to distributions under the Plan;

5.      adjudicate, decide, or resolve any motions, adversary proceedings, contested or litigated matters, and any other matters, and grant or deny any applications involving a Debtor that may be pending on the Effective Date;

6.      enter and implement such orders as may be necessary or appropriate to execute, implement, or consummate the provisions of (a) contracts, instruments, releases, indentures, and other agreements or documents approved by Final Order in the Chapter 11 Cases and (b) the Plan, the Confirmation Order, and contracts, instruments, releases, indentures, and other agreements or documents created in connection with the Plan;

7.      enforce any order for the sale of property pursuant to sections 363, 1123, or 1146(a) of the Bankruptcy Code;

8.      grant any consensual request to extend the deadline for assuming or rejecting Unexpired Leases pursuant to section 365(d)(4) of the Bankruptcy Code;

9.      issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any Entity with Consummation or enforcement of the Plan;

10.      hear, determine, and resolve any cases, matters, controversies, suits, disputes, or Causes of Action in connection with or in any way related to the Chapter 11 Cases, including:  (a) with respect to the repayment or return of distributions and the recovery of additional amounts owed by the holder of a Claim for amounts not timely repaid pursuant to Section 6.4(a) of this Plan; (b) with respect to the releases, injunctions, and other provisions contained in Article VIII of this Plan, including entry of such orders as may be necessary or appropriate to implement such releases, injunctions, and other provisions; (c) that may arise in connection with the Consummation, interpretation, implementation, or enforcement of the Plan, the Confirmation Order, and contracts, instruments, releases, indentures, and other agreements or documents created in connection with the Plan; or (d) related to section 1141 of the Bankruptcy Code;

11.      enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked, or vacated;

12.      consider any modifications of the Plan, to cure any defect or omission, or to reconcile any inconsistency in any Bankruptcy Court order, including the Confirmation Order;

13.      hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code;

14.      enter an order or Final Decree concluding or closing the Chapter 11 Cases;

15.      enforce all orders previously entered by the Bankruptcy Court;

16.     decide and resolve all matters related to the Rights Offering;

17.     decide and resolve all matters related to the OpCo Note Makewhole Claims; and

18.     hear any other matter not inconsistent with the Bankruptcy Code.

## ARTICLE XII

## MISCELLANEOUS PROVISIONS

**12.1    Immediate Binding Effect**

Notwithstanding Bankruptcy Rules 3020(e), 6004(h), or 7062 or otherwise, upon the occurrence of the Effective Date, the terms of the Plan shall be immediately effective and enforceable and deemed binding upon the Debtors, the Reorganized Debtors, and any and all holders of Claims or Interests (irrespective of whether such Claims or Interests are deemed to have accepted the Plan), all Entities that are parties to or are subject to the settlements, compromises, releases, discharges, exculpations, and injunctions described in the Plan, each Entity acquiring property under the Plan, and any and all non-Debtor parties to Executory Contracts and Unexpired Leases with the Debtors.  All Claims and Interests shall be as fixed, adjusted, or compromised, as applicable, pursuant to the Plan regardless of whether any holder of a Claim or Interest has voted on the Plan.

**12.2    Additional Documents**

On or before the Effective Date, the Debtors may file with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan; provided, that such agreements and other documents shall be consistent in all material respects with the terms and conditions of the Plan Support Agreement and Backstop Commitment Agreement, including the condition that such documents be in form and substance reasonably satisfactory to the Required Consenting Parties.  The Debtors or the Reorganized Debtors, as applicable, and all holders of Claims and Interests receiving distributions pursuant to the Plan and all other parties in interest shall, from time to time, prepare, execute, and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan.

**12.3    Dissolution of the Committee**

On the Effective Date, the Committee shall dissolve automatically and the members thereof shall be released and discharged from all rights, duties, responsibilities, and liabilities arising from, or related to, the Chapter 11 Cases and under the Bankruptcy Code, except for the limited purpose of prosecuting requests for payment of Professional Fee Claims for services rendered and reimbursement of expenses incurred prior to the Effective Date by the Committee and its Professionals.

**12.4    Payment of Statutory Fees**

All fees payable pursuant to 28 U.S.C. § 1930(a) shall be paid in accordance with Section 2.4 of this Plan.

**12.5    Reservation of Rights**

The Plan shall have no force or effect unless the Bankruptcy Court shall enter the Confirmation Order. None of the filing of the Plan, any statement or provision contained in the Plan, or the taking of any action by any Debtor with respect to the Plan, the Disclosure Statement, or the Plan Supplement shall be or shall be deemed to be an admission or waiver of any rights of any Debtor with respect to the holders of Claims or Interests prior to the Effective Date.

**12.6**     **Successors and Assigns**

      The rights, benefits, and obligations of any Entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of any heir, executor, administrator, successor or assign, Affiliate, officer, director, agent, representative, attorney, beneficiaries, or guardian, if any, of each Entity.

**12.7**     **Service of Documents**

      After the Effective Date, any pleading, notice, or other document required by the Plan to be served on or delivered to the Reorganized Debtors shall be served on:

| | |
|---|---|
| **Reorganized Debtors** | **Ultra Petroleum Corp.**<br>400 N. Sam Houston Parkway E., Suite 1200<br>Houston, Texas 77060<br>Attn:    Chief Financial Officer |
| **Counsel to the Debtors** | **Kirkland & Ellis LLP**<br>300 North LaSalle<br>Chicago, Illinois 60654<br>Attn:    David R. Seligman, P.C.<br>        Gregory F. Pesce |
| | **Kirkland & Ellis LLP**<br>601 Lexington Avenue<br>New York, New York 10022<br>Attn:    Christopher T. Greco<br>        Matthew C. Fagen |
| **Counsel to the HoldCo Noteholder Committee** | **Paul, Weiss, Rifkind, Wharton & Garrison LLP**<br>1285 Avenue of the Americas<br>New York, New York 10019-6064<br>Attn:    Andrew N. Rosenberg<br>        Elizabeth R. McColm |
| | **Porter Hedges LLP**<br>1000 Main St<br>Houston, TX 77002<br>Attn:    John F. Higgins<br>        Joshua W. Wolfshohl |
| **Counsel to the Equityholder Committee** | **Brown Rudnick LLP**<br>Seven Times Square<br>New York, New York 10036<br>Attn:    Edward Weisfelner<br>        Howard Steel |
| **The Committee** | **Weil, Gotshal & Manges LLP**<br>767 Fifth Avenue<br>New York, NY 10153<br>Attn.:    Alfredo R. Pèrez |
| **The U.S. Trustee** | **Office of the United States Trustee**<br>**for the Southern District of Texas** |

515 Rusk Street, Suite 3401
Houston, Texas 77002
Attn.:  Christine March

**12.8**      **Term of Injunctions or Stays**

**Unless otherwise provided herein or in the Confirmation Order, all injunctions or stays in effect in the Chapter 11 Cases (pursuant to sections 105 or 362 of the Bankruptcy Code or any order of the Bankruptcy Court) and existing on the Confirmation Date (excluding any injunctions or stays contained in the Plan or the Confirmation Order) shall remain in full force and effect until the Effective Date.  All injunctions or stays contained in the Plan or the Confirmation Order shall remain in full force and effect in accordance with their terms.**

**12.9**      **Entire Agreement**

Except as otherwise indicated, the Plan supersedes all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into the Plan.

**12.10**      **Plan Supplement**

After any of such documents included in the Plan Supplement are filed, copies of such documents shall be made available upon written request to the Debtors' counsel at the address above or by downloading such exhibits and documents from http://dm.epiq11.com/UPT/info or the Bankruptcy Court's website at www.txs.uscourts.gov. Unless otherwise ordered by the Bankruptcy Court, to the extent any document in the Plan Supplement is inconsistent with the terms of the Plan, the Plan shall control.

**12.11**      **Non-Severability**

If, prior to Confirmation, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court, at the request of the Debtors, shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted; provided, that any such alteration or interpretation shall be consistent with the Plan Support Agreement and in form and substance reasonably satisfactory to the Required Consenting Parties.  Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation.  The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is:  (a) valid and enforceable pursuant to its terms; (b) integral to the Plan and may not be deleted or modified without the Debtors' consent, consistent with the terms set forth herein; and (c) nonseverable and mutually dependent.

**12.12**      **Votes Solicited in Good Faith**

Upon entry of the Confirmation Order, the Debtors will be deemed to have solicited votes on the Plan in good faith and in compliance with the Bankruptcy Code, and pursuant to section 1125(e) of the Bankruptcy Code, the Debtors, the Rights Offering Participants, the Consenting HoldCo Noteholders, the Consenting HoldCo Equityholders, and each of their respective Affiliates, agents, representatives, members, principals, equity holders (regardless of whether such interests are held directly or indirectly), officers, directors, managers, employees, advisors, and attorneys will be deemed to have participated in good faith and in compliance with the Bankruptcy Code in the offer, issuance, sale, and purchase of Securities offered and sold under the Plan, and, therefore, neither any of such parties or individuals or the Reorganized Debtors will have any liability for the violation of any applicable law, rule, or regulation governing the solicitation of votes on the Plan or the offer, issuance, sale, or purchase of the Securities offered and sold under the Plan.

48

**12.13**    **Closing of Chapter 11 Cases**

The Reorganized Debtors shall, promptly after the full administration of the Chapter 11 Cases, File with the Bankruptcy Court all documents required by Bankruptcy Rule 3022 and any applicable order of the Bankruptcy Court to close the Chapter 11 Cases; provided, that, following the Effective Date, the Reorganized Debtors may seek to close certain of the Chapter 11 Cases, other than the Chapter 11 Case pending for HoldCo, that have been fully administered, notwithstanding the fact that the reconciliation of Claims is ongoing.

**12.14**    **Waiver or Estoppel**

Each holder of a Claim shall be deemed to have waived any right to assert any argument, including the right to argue that its Claim should be Allowed in a certain amount, in a certain priority, secured or not subordinated by virtue of an agreement made with the Debtors or their counsel, or any other Entity, if such agreement or the Debtors or Reorganized Debtors' right to enter into settlements was not disclosed in the Plan, the Disclosure Statement, or papers Filed with the Bankruptcy Court or the Notice and Claims Agent prior to the Confirmation Date.

*[Remainder of page intentionally left blank]*

Dated:  December 6, 2016                     ULTRA PETROLEUM CORP.
                                             on behalf of itself and all other Debtors


                                             /s/ Michael D. Watford
                                             Michael D. Watford
                                             Chairman of the Board, President, and Chief Executive
                                             Officer