IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | § | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| ULTRA PETROLEUM CORP, et al[1] | § | Case No. 16-32202 (MI) |
| | § | |
| Debtors. | § | (Jointly Administered) |
| | § | |
| | § | |
| ULTRA RESOURCES, INC., | § | Chapter 11 |
| | § | Adversary Case No. 16-_____ (MI) |
| | § | |
| *Plaintiff,* | § | |
| vs. | § | |
| | § | |
| SUNOCO PARTNERS MARKETING & TERMINALS, L.P., | § | |
| | § | |
| | § | |
| *Defendant.* | § | |

**ADVERSARY COMPLAINT**

Ultra Petroleum Corp. [alternatively Ultra Resources, Inc.,] ("Ultra" or "Plaintiff") complains of defendant Sunoco Partners Marketing & Terminals, L.P. ("Sunoco" or "Defendant") and respectfully states as follows:

**Nature of the Action**

1.     Ultra is a debtor in one of several jointly-administered Chapter 11 proceedings before this Court (primary Case No. 16-32202). Sunoco filed a proof of claim against Ultra in that case based upon a contract between the parties for the sale of black

---

[1]     The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number (if any), are: Ultra Petroleum Corp. (3838); Keystone Gas Gathering, LLC; Ultra Resources, Inc. (0643); Ultra Wyoming, Inc. (0378); UP Energy Corporation (4296); UPL Pinedale, LLC (7214); and UPL Three Rivers Holdings, LLC (7158)

wax crude oil from Ultra's production facilities in Utah. Ultra brings this complaint to assert a state-based claim against Sunoco for breaching the contract prior to date Ultra filed its bankruptcy petition.[2]

## Parties, Jurisdiction, and Venue

2. Plaintiff Ultra Petroleum Corp. is incorporated in Yukon, Canada, and has its principal place of business in Houston, Texas.

3. Defendant Sunoco is a Texas limited partnership.

4. This Court has jurisdiction over this controversy pursuant to 28 U.S.C. § 157 and 28 U.S.C. § 1334.

5. This adversary proceeding constitutes an otherwise related proceeding within the meaning of 28 U.S.C. § 157(c).

6. Venue is proper in this district pursuant to 28 U.S.C. § 1409 based on Ultra's bankruptcy case filed under chapter 11 of title 11 of the United States Code.

## Background

7. This Complaint arises out of a crude oil purchase agreement (the "Purchase Contract") between Sunoco, successor-in-interest to the original contract counterparty, EDF Trading North America, LLC, as buyer, and Ultra Resources, successor-in-interest to the original contract counterparty, Axia Energy, LLC, as seller. The original agreement was entered July 31, 2013, and was to continue for four years. On April 22, 2014, less than

---

{[2] The bankruptcy petition was filed on April 29, 2016. Ultra's argument is that Sunoco breached the contract nine days earlier on April 20 by not paying for March deliveries. I am not sure when Ultra stopped deliveries in April based upon

a year into the contract, the parties executed an agreement that amended and restated the terms of the contract, and those amended terms underlie the facts of this Complaint.

8.      The amended Purchase Contract had two phases. Phase I began on September 1, 2013, and had flexible volume terms to give Ultra the opportunity to ramp up its deliveries prior to the transition to Phase II. The volume commitment for that phase was an approximate target of 2,000 barrels per day. But the Purchase Contract only obligated Ultra to make "reasonable efforts to deliver any mutually agreed upon Phase I volumes." Additionally, for deliveries made prior to December 18, 2013—approximately three and one-half months into the contract—deliveries falling short of that daily target, or "shortfall" barrels, did not have to be made up. On and after December 18, shortfall barrels were to be made up, but the Purchase Contract allowed those additional barrels to be delivered "in later months per mutual agreement."

9.      The transition to Phase II of the agreement was to begin when Ultra's average daily deliveries reached 2,000 barrels per day, but no later than July 31, 2014. Because delivery volumes did not reach an average of 2,000 per barrel until August 2014, Phase II began July 31, 2014, and had a three-year term through July 31, 2017. Ultra's volume commitment during Phase II increased to 2,500 barrels per day, but in addition, the Purchase Contract set a total delivery obligation during Phase II of 2,737,500 barrels. Aggregate monthly shortfalls from that total were to be made up before the contract ended.

10.     Due to falling commodity prices and declining production in the field, from time to time during 2014, 2015, and the early months of 2016, the parties negotiated temporarily-reduced daily delivery targets. While the Purchase Contract contemplates reductions in delivery volumes of as much of 15% per month, the parties negotiated and

3

agreed to revised delivery targets that exceeded this percentage. By April 2016 the agreed target was 500 barrels per day.

11. The Purchase Contract requires that Sunoco pay for barrels delivered each month by the 20th day of the month following the month of delivery. Ultra delivered 20,734 barrels to Sunoco in March 2016. Sunoco was required to pay for those barrels no later than April 20, 2016, but failed to do so.

12. Ultra's April 2016 deliveries to Sunoco—in the thousands of barrels—were underway when Sunoco failed and refused to pay for Ultra's March 2016 deliveries. When it became clear that Sunoco had breached the contract by refusing to pay for on-going deliveries under the contract, Ultra discontinued further deliveries during April 2016.

13. The total price for the barrels delivered to Sunoco but not paid for during March and April 2016 was approximately $581,000.

## Claim for Relief

14. Ultra repeats and incorporate the allegations contained in paragraphs 1–12 as if fully set forth herein.

15. The Purchase Contract was a valid, enforceable, and subsisting contract in April 2016. Pursuant to its terms, Sunoco was obligated to pay for deliveries received in March 2016 by the 20th of the following month.

16. Ultra performed its obligations under the contract by delivering barrels of crude oil to Sunoco, which Sunoco accepted. Sunoco breached the contract by failing and refusing to pay for barrels delivered.

17. Sunoco's breach caused injury to Ultra, which resulted in damages of at least $581,000, plus interest as provided in Conoco's General Provisions for Domestic

Crude Oil Agreements incorporated in the Purchase Contract. Ultra seeks reimbursement for all reasonable attorneys' fees as provided for under Chapter 38, of Texas Civil Practice and Remedies Code.

WHEREFORE, Plaintiff Ultra demands that it have judgment against defendant Sunoco for the holding that Sunoco breached the Purchase Contract; awarding Ultra damages in the amount of at least $581,000, plus interest; costs of court, and such other relief as the Court deems just and proper to protect Plaintiff including, but not limited to, equitable relief under 11 U.S.C. § 105.

Respectfully submitted,

**FARNSWORTH & vonBERG, LLP**

By: /S/ *T Brooke Farnsworth*
T Brooke Farnsworth
brooke@fvllp.com
State Bar No. 06828000
Bennett S. Bartlett
bennett@fvllp.com
State Bar No. 01842440
333 North Sam Houston Parkway
 Suite 300
Houston, Texas 77060
Telephone:    281-931-8902
Facsimile:     281-931-6032

ATTORNEYS FOR ULTRA PETROLEUM CORP. AND ITS DEBTOR-AFFILIATES