# UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

_____
§
In re:                                              §
§          Chapter 11
ULTRA PETROLEUM CORP., et al.,                      §
§          Case No.: 16-32202
           Debtors.                                 §
§          (Jointly Administered)
_____

JONAH LLC                                           §
WEEKS PINEDALE, LLC                                 §
WEEKS RESOURCES, LLC                                §
WEEKS OIL PROPERTIES, LLC                           §
MCMURRY LIMITED LIABILITY COMPANY                   §
BUSHONG OIL & GAS PROPERTIES, LLC                   §
JOSEPH J. SCOTT                                     §
§
           Plaintiffs                               §
§
v.                                                  §          Adversary No. 16-_____
§
ULTRA PETROLEUM CORP.                               §
KEYSTONE GAS GATHERING, LLC                         §
ULTRA RESOURCES, INC.                               §
ULTRA WYOMING LGS, LLC                              §
UP ENERGY CORPORATION                               §
ULTRA WYOMING, INC.                                 §
UPL PINEDALE, LLC                                   §
UPL THREE RIVERS HOLDINGS, LLC                      §
§
           Defendants                               §

1

## ORIGINAL COMPLAINT

Jonah LLC, Weeks Pinedale, LLC, Weeks Resources, LLC, Weeks Oil Properties, LLC, McMurry Limited Liability Company, Bushong Oil & Gas Properties, LLC, and Joseph J. Scott (the "Jonah Plaintiffs"), hereby file this Complaint for Declaratory Judgment ("Complaint") against the Debtors Ultra Petroleum Corp., Keystone Gas Gathering, LLC, Ultra Resources, Inc., Ultra Wyoming, Inc., Ultra Wyoming LGS, LLC, UP Energy Corporation, UPL Pinedale, LLC, and UPL Three Rivers Holdings, LLC ("Ultra Defendants").  In support thereof, the Jonah Plaintiffs state as follows:

## I. SUMMARY OF COMPLAINT

1.     This Complaint involves a dispute concerning (a) the validity and extent of various overriding royalty interests owned by the Jonah Plaintiffs that encumber the oil and gas leasehold or working interest of certain of the Ultra Defendants in the Pinedale Field in Sublette County, Wyoming, (b) whether the Ultra Defendants properly paid the overriding royalties, (c) whether any underpaid overriding royalties are property of the Ultra Defendants' bankruptcy estates, and (d) other claims for relief relating to underpaid overriding royalty interests.

## II. JURISDICTION, CONSENT TO ENTRY OF JUDGMENT, AND VENUE

2.     This Court has jurisdiction over the subject matter of this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334, and General Order 2012-6 of the United States District Court for the Southern District of Texas. The matters set

forth herein are core proceedings pursuant to 28 U.S.C. § 157(b)(2)(A), (B), (E), and (O).

3.      The statutory predicates for the relief requested herein are 28 U.S.C. § 2201, 11 U.S.C. §§ 105 and 541, and Rule 7001(1), (2), and (9) of the Federal Rules of Bankruptcy Procedure.

4.      Pursuant to Local Bankruptcy Rule 7008-1, the Jonah Plaintiffs consent to the entry of final orders or a judgment by the bankruptcy judge in this adversary proceeding.

5.      Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

### III. PARTIES

6.      Jonah LLC is a Wyoming limited liability company with its principal place of business located in Casper, Wyoming.

7.      Weeks Pinedale LLC is a Colorado limited liability company with its principal place of business located in Denver, Colorado.

8.      Weeks Resources LLC is a Colorado limited liability company with its principal place of business located in Denver, Colorado.

9.      Weeks Oil Properties LLC is a Colorado limited liability company with its principal place of business located in Denver, Colorado.

10.     McMurry Limited Liability Company is a Wyoming limited liability company with its principal place of business located in Casper, Wyoming.

11.     Bushong Oil & Gas Properties, LLC is a Colorado limited liability company with its principal place of business located in Denver, Colorado.

12.     Joseph J. Scott is an individual who resides in Casper, Natrona County, Wyoming.

13.     Ultra Petroleum Corp. is, on information and belief, a Texas corporation with a principal place of business located in Houston, Texas.

14.     Keystone Gas Gathering, LLC is, on information and belief, a Delaware limited liability company with a principal place of business located in Houston, Texas.

15.     UP Energy Corporation is, on information and belief, a Nevada corporation with a principal place of business located in Houston, Texas.

16.     Ultra Wyoming LGS, LLC is, on information and belief, a Delaware limited liability company with a principal place of business located in Houston, Texas.

17.     Ultra Resources, Inc. is a Wyoming corporation with a principal place of business located in Houston, Texas.

18.     Ultra Wyoming, Inc. is a Wyoming corporation with a principal place of business located in Houston, Texas.

19.     UPL Pinedale, LLC is a Delaware limited liability company with a principal place of business in Houston, Texas.

20.     UPL Three Rivers Holdings, LLC is, on information and belief, a Delaware limited liability company with a principal place of business in Houston, Texas.

## IV. FACTUAL ALLEGATIONS

### A. The Jonah Plaintiffs' Overriding Royalty Interests

21.     An overriding royalty is defined under Wyoming law as "a share of production, free of the costs of production, carved out of the lessee's interest under an oil and gas lease."  Wyo. Stat. § 30-5-304(a)(v).  Under Wyoming law, an overriding royalty is considered an interest in real property that encumbers or "burdens" a leasehold/working interest.

22.     Certain of the Ultra Defendants own working interests in the following federal oil and gas leases located in Sublette County, Wyoming: Lease Nos. Wyw-026025, Wyw-026026, Wyw–015316, Wyw–06283, Wyw-144993, Wyw–06269, Wyw-06270, Wyw-06286, Wyw-015314, Wyw 016155, Wyw-016158 and Wyw-016161, Wyw-016162, Wyw-06934, Wyw-144996, Wyw-06933, Wyw-144994, Wyw-144995, and Wyw-018039 (the "Leases").   The

Leases were all issued by the Bureau of Land Management between 1950 and 1952.

23.    Each of the Jonah Plaintiffs' overriding royalties burdens one or more of the Leases.  Certain of the Ultra Defendants pay overriding royalties to the Jonah Plaintiffs on nearly 1,000 wells.  The various classes of instruments governing the Jonah Plaintiffs' overriding royalties are summarized below.

24.    The first class of overriding royalty was created by three 1952 Assignments of Overriding Royalty from Donald B. Anderson and Patricia Gaylord Anderson to Blue Royalties, Inc., which Assignments state that the:

> [O]verriding royalty shall be computed and paid at the same time and in the same manner as royalties payable to the United States of America under the terms of said lease are computed and paid and the Assignee shall be responsible for Assignee's proportionate part of all taxes and assessments levied upon or against or measured by the production of oil or gas therefrom.

("Class 1 Overrides").  An example of a Class 1 Override Assignment is attached hereto as Exhibit A.

25.    The second class of overriding royalty was reserved in 1955 by Assignments Affecting Record Title to the entire working interest in certain of the Leases, which Assignments state:

> Said overriding royalty shall be computed and paid on the basis of the market price for oil, gas, and casinghead gas prevailing in the field where produced for oil, gas and casinghead gas of like quality, provided that no overriding royalty shall be paid or shall

accrue upon any oil, gas or casinghead gas used for operating, development or production purposes upon said above described lands or unavoidably lost, and no overriding royalty shall be payable upon gas and casinghead gas used for recycling or repressuring operations benefiting said above described lands.

In computing the amounts to be paid assignor hereunder as above provided, assignees shall have the right to deduct from the value of the oil, gas, casinghead gas, or the proceeds thereof, upon which said overriding royalty is computed the full amount of any taxes required to be paid on such oil, gas and casinghead gas for on account of the production or sale thereof, including the so-called gross production or severance taxes.

("Class 2 Overrides").  An example of a Class 2 Override Assignment is attached hereto as Exhibit B.

26.     The third class of overriding royalty was reserved in Assignments Affecting Record Title to Oil and Gas Lease, each dated September 5, 1978.  The reserved overriding royalty was created on the standard BLM form of Assignment Affecting Record Title and simply stated the overriding royalty as "3-1/8% of 8/8ths," without additional language as to how it should be computed.  (Class 3 Overrides").  An example of a Class 3 Override Assignment document with the reservation is attached hereto as Exhibit C.

27.     The fourth class of overriding royalty was reserved in an Assignment Of Oil and Gas Lease dated August 3, 1951.  This Assignment simply provided: "There is hereby reserved to the undersigned and to the heirs, personal representatives, successors and assigns of the undersigned an overriding royalty of One per cent (1%) of all oil, gas, casinghead gas, or other hydrocarbons that may

7

be produced and saved from the above described land" without additional language as to how it should be computed. ("Class 4 Overrides"). The Class 4 Override Assignment document with the reservation is attached hereto as Exhibit D.

28.     The fifth class of overriding royalty was carved out of portions of the working interest in the Leases then owned by McMurry Oil Company ("MOC"), Nerd Enterprises, Inc. ("Nerd"), and Fort Collins Consolidated Royalties, Inc. ("Fort Collins) ("Class 5 Overrides"). The Class 5 Overrides are governed by the document attached as Exhibit E.

29.     The Ultra Defendants, or some of them, are owners of working interests in the Leases, operators of the Leases, or are otherwise persons legally responsible for payment of royalties and overriding royalties held by the Jonah Plaintiffs that burden the Leases under Wyo. Stat. § 30-5-301 et seq.

## B. The Chain of Title

30.     Certain of the Ultra Defendants own large portions of the leasehold or working interest in the Leases burdened by the Jonah Plaintiffs' overriding royalties.

31.     Although the chain of title to the working interest in the Leases is complex, it is summarized in pertinent part below.

32.     In the early 1990s, two oil and gas companies owned large working interests in the Leases: Atlantic Richfield Company ("ARCO") and Burlington Resources Oil & Gas Company LP ("Burlington").

33.     The working interest owned by Burlington ("Burlington Working Interest") was burdened Class 1, 2, 3 and 4 Overrides.  The working interest owned by ARCO ("ARCO Working Interest") was burdened by Class 1, 2 and 4 Overrides.

34.     In 1992, ARCO sold substantially all of the ARCO Working Interest to McMurry Oil Company ("MOC"), Nerd Enterprises, Inc. ("Nerd"), and Fort Collins Consolidated Royalties, Inc. ("Fort Collins") in undivided portions.

35.     In 1997, Burlington sold the majority of the Burlington Working Interest to Defendant Ultra Resources, Inc.  Ultra Resources, Inc. continues to own this portion of the Burlington Working Interest to the present day (burdened by Class 1, 2, 3 and 4 Overrides).

36.     Effective June 1, 2000, pursuant to the document attached hereto as Exhibit E, MOC, Nerd and Fort Collins and a group of overriding royalty owners, including the Jonah Plaintiffs or their predecessors in title, amended the overriding royalties burdening the ARCO Working Interest.  This Amendment of Assignments of Overriding Royalty Interest is attached as Exhibit E and will hereafter be referred to as the "2000 Amendment."

37.     The 2000 Amendment created the Class 5 Overrides.   More importantly to the case at bar, the 2000 Amendment amended *only* those Class 1, 2 and 4 Overrides that burdened the ARCO Working Interest (then owned by MOC, Nerd and Fort Collins).  Because Defendant Ultra Resources, Inc. was not a party to the 2000 Amendment, the 2000 Amendment did not amend the Class 1, 2, 3 and 4 Overrides that burden the Burlington Working Interest.  There was no privity of contract between the overriding royalty owners who were signatory to the 2000 Amendment and Defendant Ultra Resources, Inc.

38.     In 2001 and 2002, MOC, Nerd, and Fort Collins assigned the ARCO Working Interest to SWEPI LP ("Shell") or its affiliated predecessor.  After the 2000 Amendment, this portion of the working interest was burdened only by Class 5 Overrides.

39.     In late 2014, Defendant UPL Pinedale, LLC acquired the ARCO Working Interest from Shell.  Starting on December 1, 2014, the Ultra Defendants were responsible to pay the Jonah Plaintiffs their Class 5 Overrides burdening the ARCO Working Interest in addition to the Class 1, 2, 3 and 4 Overrides burdening the Burlington Working Interest.

40.     A basic depiction of the chain of title described above is depicted on Exhibit F.

<u>C. The State Court Litigation</u>

10

41.     In late 2013, a dispute arose between the Jonah Plaintiffs (except for Joseph Scott) and some of the Ultra Defendants concerning the proper method of paying the Class 1, 2, 3 and 4 Overrides that burden the Burlington Working Interest that Ultra Resources, Inc. acquired in 1997.

42.     This dispute arose before UPL Pinedale, LLC acquired the ARCO Working Interest in 2014.  When the dispute arose, Shell was paying the Class 5 Overrides on the Arco Working Interest.

43.     The Jonah Plaintiffs contended that the Class 1 and 2 Overrides had to be paid according to their express terms.  Specifically, that the Class 1 Overrides had to be paid in the same manner as the federal government's royalty interest, and that the Class 2 Overrides were subject to deductions for taxes only.

44.     As to the Class 3 and 4 Overrides, the Jonah Plaintiffs contended that the interests were subject to the definitions under the Wyoming Royalty Payment Act ("WRPA").   The WRPA states, "Unless otherwise expressly provided for by specific language in an executed written agreement, 'royalty', 'overriding royalty', 'other nonworking interests' and 'working interests' shall be interpreted as defined in W.S. 30-5-304."  Wyo. Stat. § 30-5-305(a).

45.     Section 304(a)(v) of the WRPA defines "overriding royalty" as "a share of production, free of the costs of production, carved out of the lessee's interest under an oil and gas lease."

11

46.     Section 304(a)(vi) then defines "costs of production" as

> [A]ll costs incurred for exploration, development, primary or enhanced recovery and abandonment operations including, but not limited to lease acquisition, drilling and completion, pumping or lifting, recycling, gathering, compressing, pressurizing, heater treating, dehydrating, separating, storing or transporting the oil to the storage tanks or the gas into the market pipeline.

Specifically excluded from "costs of production," however, are "the reasonable and actual direct costs associated with transporting the oil from the storage tanks to market or the gas from the point of entry into the market pipeline or the processing of gas in a processing plant."

47.     In response to the Jonah Plaintiffs' arguments, the Ultra Defendants stated that they had paid all of the Jonah Plaintiffs' overriding royalties burdening the Burlington Working Interest in the same manner as the federal government's royalty interest.   The Ultra Defendants stated that this was justified by the language of the Class 1 Overrides.   As to the Class 2, 3 and 4 Overrides, Ultra contended that the instruments allowed for payment in the same manner as the federal government's royalty.

48.     The parties attempted to resolve their differences informally but were unable to do so.   Therefore, on October 1, 2014, the Jonah Plaintiffs (except for Joseph Scott) filed an action on the Burlington Overrides in Sublette County District Court, Ninth Judicial District, State of Wyoming (Civil Action No. 8266, the "First Civil Action").

49.     The parties to the First Civil Action stipulated to bifurcate the action into two phases.  The first phase was to allow discovery and summary judgment briefing on the proper deductions that may be taken under the Class 1, 2, 3 and 4 Override instruments.

50.     While the First Civil Action was pending, in late 2014, Defendant UPL Pinedale, LLC acquired the ARCO Working Interest from Shell.  Thus, at that time, the Ultra Defendants became responsible to pay the Class 5 Overrides burdening the ARCO Working Interest in addition to the Class 1, 2, 3 and 4 Overrides burdening the Burlington Working Interest that were the subject of the First Civil Action.

51.     Through discovery in the First Civil Action, the Ultra Defendants first learned of the 2000 Amendment (Exhibit E).  Although the Ultra Defendants had not previously made the argument, when the parties submitted their summary judgment briefing, the Ultra Defendants in the First Civil Action argued that ***all*** of the Jonah Plaintiffs' overriding royalties were governed by the 2000 Amendment and were therefore Class 5 Overrides.

52.     Until briefing on summary judgment, there was not any dispute in the First Civil Action that the Class 1, 2, 3 and 4 Override instruments were the operative instruments.  The parties had stipulated that the overriding royalties burdening the ARCO Working Interest were not part of the First Civil Action.

The determinative issue to be briefed was whether the federal royalty valuation regulations apply to "silent" instruments, or whether the definitions in Wyo. Stat. § 30-5-304 apply as stated in Wyo. Stat. § 30-5-305(a).

53.     By arguing that the 2000 Amendment governs all of the Jonah Plaintiffs' overrides, the Ultra Defendants created a case or controversy concerning the ongoing validity and scope of the Class 1, 2, 3 and 4 Overrides, and a case or controversy concerning the scope of the Class 5 Overrides.

54.     Additionally, after UPL Pinedale, LLC acquired the ARCO Working Interest in late 2014, the Ultra Defendants started paying the overriding royalties burdening that interest. The Jonah Plaintiffs' overriding royalties paid by the Ultra Defendants has diminished substantially from the amounts received from Shell in prior years.

55.     Because the parties to the First Civil Action stipulated that it involved only the overriding royalties burdening the Burlington Working Interest acquired in 1997, and did not involve the Jonah Plaintiffs' overrides borne out of the ARCO Working Interest acquired from Shell in 2014, the Jonah Plaintiffs demanded an accounting from the Ultra Defendants.

56.     The Ultra Defendants did not respond to the demand, so the Jonah Plaintiffs filed a separate civil action on April 28, 2016 in Sublette County District

Court relative to the overriding royalties borne out of the ARCO Working Interest (Civil Action No. 8428, "Second Civil Action").

57.    The Ultra Defendants filed for bankruptcy on April 29, 2016.  As of that date, both the First Civil Action and the Second Civil Action were stayed under 11 U.S.C. § 362.

58.    Each of the Jonah Plaintiffs timely filed proofs of claim in approximately the following amounts:

        (a)    Jonah LLC: $2.28 million

        (b)    McMurry Limited Liability Company: $1.16 million

        (c)    Weeks Oil Properties, LLC: $114,300

        (d)    Weeks Pinedale, LLC: $37,285

        (e)    Weeks Resources, LLC: $26,900

        (f)    Bushong Oil & Gas Properties, LLC: $29,300

        (g)    Joseph Scott: Unknown

59.    The Jonah Plaintiffs' claims are unliquidated at this time. Additionally, the Jonah Plaintiffs are likely owed significantly more than the estimates stated above because they had no means to estimate their claims against the Ultra Defendants on the Class 5 Overrides borne out of the ARCO Working Interest.  The estimated amounts stated above are based solely on information the Jonah Plaintiffs currently possess relative to the underpayments on the Class 1 through 4 Overrides borne out of the Burlington Working Interest.

## V. FIRST CLAIM FOR RELIEF:
## DECLARATORY JUDGMENT

60.    The foregoing paragraphs are hereby incorporated as if fully set forth herein.

61.    28 U.S.C. § 2201 provides, in pertinent part, that:

In a case of actual controversy within its jurisdiction . . . any court of the United States, upon a filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

28 U.S.C. § 2201.

62.    Pursuant to 28 U.S.C. § 2201 and 11 U.S.C. § 105(a), this Court has the power to declare and adjudicate the rights and obligations of the parties hereto and to grant such other and further relief as may be necessary to enforce the rights and obligations of the parties relative to the various overriding royalties owned by the Jonah Plaintiffs.

63.    A substantial and actual controversy exists between the Jonah Plaintiffs and the Ultra Defendants. Uncertainty and insecurity currently exists with respect to the rights, status, and other legal relations between the parties concerning the validity, scope and extent of the various classes of overriding royalties owned by the Jonah Plaintiffs, as set forth below.

### A. First Claim for Declaratory Relief:
### Validity, Scope and Extent of Overriding Royalty Burdens

64.     Based on the factual allegations above, the Jonah Plaintiffs generally seek a declaratory judgment determining the validity, scope and extent of their overriding royalties burdening the Ultra Defendants' working interests in the Leases.

65.     Without limitation, the Jonah Plaintiffs seek a determination that the Class 1, 2, 3 and 4 Overrides are valid and subsisting overriding royalty interests that burden the Burlington Working Interest, and that the 2000 Amendment relates only to the overriding royalty interest that burdens the ARCO Working Interest because there was no privity of contract between Ultra Resources, Inc. and the signatory overriding royalty owners at the time of the 2000 Amendment (*see* Exhibit F).

### B. Second Claim for Declaratory Relief: Underpaid Overrides
### Are Not Property of the Ultra Defendants' Bankruptcy Estates

66.     The Jonah Plaintiffs further seek a declaration that any overriding royalty underpayments are not property of the Ultra Defendants' bankruptcy estates and must therefore be turned over to them.

67.     Section 541(a)(1) of the Bankruptcy Code generally provides that all property to which a debtor has a legal or equitable interest becomes property of the estate upon the commencement of a Chapter 11 case.  However, section 541 does

17

not by itself create new legal or equitable interests in property. Instead, property interests are created and defined by state law.

68. Thus, if a debtor holds no legal or equitable interest in property as of the commencement of the case, such property does not become property of the debtor's estate under § 541 of the Bankruptcy Code and the debtor is prohibited from distributing such property to its creditors.

69. Further, 11 U.S.C. § 541(d) provides that property for which a debtor holds only bare record title is not property of the estate. And, a debtor who holds proceeds attributable to real property owned by another holds at most bare record title to such proceeds.

70. Under Wyoming law, an overriding royalty is an interest in real property. Once created, an overriding royalty becomes the property of its holder. Consequently, when the oil and gas production attributable to an overriding royalty is sold and the proceeds are held by a bankrupt debtor, the proceeds are not property of the bankruptcy estate and they must be paid to the owners thereof.

71. The Wyoming Supreme Court has stated numerous times that the WRPA was specifically designed and adopted to "stop oil producers from retaining other people's money for their own use."

72.     To the extent Wyoming law does not govern, § 541(b)(4)(B) would similarly exclude overriding royalties and the proceeds attributable thereto from property of the estate.

73.     Because overriding royalties are not property of the estate either by application of Wyoming law or pursuant to section 541(b) of the Bankruptcy Code, any proceeds or profits that the Ultra Defendants have in their possession which are attributable to the Jonah Plaintiffs' overriding royalties are not property of the bankruptcy estates under section 541(a)(6) of the Bankruptcy Code.

74.     To the extent the Ultra Defendants have the Jonah Plaintiffs' overriding royalty proceeds in their possession, the Ultra Defendants hold no legal or beneficial title thereto.  The Ultra Defendants only take possession of proceeds from the sale of the Jonah Plaintiffs' share of oil and gas production because they market and sell the oil and gas production on behalf of the Jonah Plaintiffs.

75.     Courts have also held that in such situations, a resulting or constructive trust is established on behalf of the owners of the interests and that the property subject to the trust is not property of the bankruptcy estate.

76.     On April 30, 2016, the Ultra Defendants filed an Emergency Motion for Entry of Interim and Final Orders Authorizing Payment of Mineral Payments, Working Interest Disbursements, Non-Operated Working Interest Expenses, and Gathering, Processing, and Transport Expenses ("Royalty Motion").   In the

Royalty Motion, the Ultra Defendants admitted to the foregoing allegations and obtained an Interim and Final Order approving the Royalty Motion based on the allegations.

77.     Because the Jonah Plaintiffs' overriding royalty proceeds are not property of the bankruptcy estates, the Ultra Defendants have no right to distribute any such proceeds to their creditors.   The Jonah Plaintiffs therefore request a determination that all proceeds attributable to underpaid overriding royalties be turned over to them.

## VI. SECOND CLAIM FOR RELIEF:
## BREACH OF CONTRACT AND
## THE WYOMING ROYALTY PAYMENT ACT

78.     The foregoing paragraphs are hereby incorporated as if fully set forth herein.

79.     Under Wyoming law, unless otherwise expressly provided for by specific language in an executed written agreement, the term "overriding royalty," is defined as an interest carved out of an oil and gas lease that is free of the costs of production.   Wyo. Stat. §§ 30-5-305(a), 304(a)(v).   Costs of production include, but are not limited to, exploration, drilling, completion, gathering, compressing, pressurizing, heater treating, dehydrating, separating, or transporting the gas into the market pipeline.   *Id.* § 305(a)(i).

80.     Certain of the Ultra Defendants have taken numerous deductions against the interests of the Jonah Plaintiffs in the Class 1 through 5 Overrides that are either in breach of the specific language of the relevant instrument or in violation of the WRPA.

81.     These deductions are a breach of contract and/or a breach of the WRPA.   The Ultra Defendants' breaches have caused the Jonah Plaintiffs damages.

## VII. THIRD CLAIM FOR RELIEF:
## CONVERSION

82.     The foregoing paragraphs are hereby incorporated as if fully set forth herein.

83.     The Jonah Plaintiffs are legally and equitably entitled to the proceeds attributable to their overriding royalties, including the right to possess the same. The owed but unpaid overriding royalties are not the Ultra Defendants' property, nor property of the Ultra Defendants' bankruptcy estates and cannot be used as part of their plan of reorganization.

84.     The Ultra Defendants are required to set aside and hold in trust the oil and gas revenues/proceeds attributable to the Jonah Plaintiffs' overriding royalties, both before and after the petition date.

85.     The Ultra Defendants (or some of them), without justification, wrongfully exercised dominion over the revenues derived from the Jonah Plaintiffs' overriding royalties, or a portion of them, both before and after the petition date, and used them for their own use and benefit to the detriment of the Jonah Plaintiffs and in denial of their rights to use and enjoy the revenues.  The Jonah Plaintiffs made demand for these revenues, and the Ultra Defendants refused to honor the demand.

86.     The Ultra Defendants (or some of them) improperly converted the Jonah Plaintiffs' overriding royalty revenues.  The Ultra Defendants' actions were committed intentionally and maliciously, or at a minimum with reckless disregard for the rights of the Jonah Plaintiffs. Accordingly, the Jonah Plaintiffs are entitled to recover both actual and punitive damages from the Ultra Defendants, as well as pre-judgment interest, post judgment interest, penalties (including but not limited to reporting penalties under the WRPA), attorneys' fees and costs as permitted under Wyoming law.

## VIII. FOURTH CLAIM FOR RELIEF:
##  FRAUD AND MISREPRESENTATION

87.     The foregoing paragraphs are hereby incorporated as if fully set forth herein.

88.     Certain of the Ultra Defendants made uniform misrepresentations and/or omissions on the monthly check stubs provided to the Jonah Plaintiffs

about the overriding royalty payments being made to the Jonah Plaintiffs. These Ultra Defendants included false statements or omissions on their paystubs that indicated that they were taking proper deductions against the overriding royalties.

89.     Without limitation, these Ultra Defendants denoted "gathering" costs as "transportation" vosts.   Under Wyoming law, "gathering" is the process of transporting natural gas from the wellhead to the market pipeline. "Transportation" is the process of transporting natural gas from the point of entry into the market pipeline.   Transportation costs are a permissible deduction under the WRPA, whereas gathering costs are not.   By denoting gathering costs as "transportation" costs on the check stubs, the Ultra Defendants actively misled the Jonah Plaintiffs to believe for years that the stated gathering deductions were permissible.

90.     The pertinent Ultra Defendants' check stubs contained material representations that were false and/or they omitted material facts needed to make what was stated not misleading.   These Ultra Defendants' intent was to affirmatively represent to the Jonah Plaintiffs that their overriding royalties were being calculated correctly.

91.     These Ultra Defendants knew their material representations and/or omissions on the check stubs were false or misleading or at least made the representations recklessly.

92.     These Ultra Defendants knew or should have known that the Jonah Plaintiffs would rely on the misrepresentations.

93.     The Jonah Plaintiffs reasonably believed the representations to be true, relied on the representations, and suffered damages thereby.  The Jonah Plaintiffs' damages include, but are not limited to, unpaid overriding royalties.

94.     The Ultra Defendants may have also concealed or failed to disclose complete and accurate information about the price, volume, value, various products produced, and deductions, which the Ultra Defendants had a duty to disclose.

95.     The Ultra Defendants had the duty to properly account to the Jonah Plaintiffs by providing complete and accurate information on the monthly check stubs as required under the WRPA.  By providing the information to Jonah Plaintiffs on the issue, the Ultra Defendants had a duty to make a full and fair disclosure in light of the Ultra Defendants superior knowledge and access to information.

96.     Accordingly, the Jonah Plaintiffs are entitled to recover both actual and punitive damages from the Ultra Defendants, as well as pre-judgment interest, post judgment interest, penalties (including but not limited to reporting penalties under the WRPA), attorneys' fees and costs as permitted under Wyoming law.

## IX. FIFTH CLAIM FOR RELIEF:
## CONSTRUCTIVE TRUST AND EQUITABLE LIEN

97.     The foregoing paragraphs are hereby incorporated as if fully set forth herein.

98.     The Jonah Plaintiffs allow and have effectively transferred the right to certain of the Ultra Defendants to market the Jonah Defendants' overriding royalty production on the promise and understanding that the proceeds from such production will be properly paid over to the Jonah Plaintiffs, subject only to permissible deductions.

99.     These Ultra Defendants have marketed the Jonah Plaintiffs' production and have improperly retained a portion of the proceeds thereof.

100.    The Ultra Defendants hold Plaintiffs' unpaid overriding royalty proceeds in a constructive or resulting trust for the benefit of the Jonah Plaintiffs, including all profits derived from the use of such money.  The Jonah Plaintiffs also have an equitable lien on wrongfully withheld overriding royalty payments, and any other property of the Ultra Defendants purchased therewith. Accordingly, ownership of all such proceeds and other property must be accounted for and adjudicated to be vested in the Jonah Plaintiffs.

101.    The Jonah Plaintiffs are entitled to a judgment against the Ultra Defendants imposing a constructive trust, a resulting trust, or an equitable lien upon the proceeds from production, and other property traceable thereto and

profits derived therefrom, and requiring an accounting for all sums paid to or received by the Ultra Defendants from the sale of gas attributable to the Jonah Plaintiffs' overriding royalties.

## X. SIXTH CLAIM FOR RELIEF
## UNJUST ENRICHMENT

102.    The foregoing paragraphs are hereby incorporated as if fully set forth herein.

103.    The Ultra Defendants' conduct resulted in their withholding of overriding royalty payments owed to the Jonah Plaintiffs, which monies were accepted, used and enjoyed by Ultra Defendants under such circumstances as would reasonably notify the Ultra Defendants that the Jonah Plaintiffs expected to be paid by the Ultra Defendants, and, without such payment, the Ultra Defendants would be unjustly enriched.

104.    The Jonah Plaintiffs are entitled to recover the value of the benefit conferred as damages from the Ultra Defendants, together with pre-judgment interest, post-judgment interest, monthly reporting penalties under the WRPA, attorneys' fees, costs and expenses as permitted by law.

## XI. SEVENTH CLAIM FOR RELIEF:
## ACCOUNTING

105.    The foregoing paragraphs are hereby incorporated as if fully set forth herein.

26

106.    As the lessee, operator, or other party responsible for payment, the Ultra Defendants (or some of them) are obligated to report to the Jonah Plaintiffs in accordance with the WRPA for their overriding royalties.

107.    In addition, the Ultra Defendants are obligated to properly substantiate all of the matters reported under the WRPA including, but not limited to, production volumes, sales prices, and costs taken against the Jonah Plaintiffs' overriding royalties, so that the Jonah Plaintiffs can verify the information reported under the WRPA.

108.    The Ultra Defendants have provided no such substantiation and owe the Jonah Defendants a proper accounting, including but not limited to substantiation of all items reported under the WRPA for each month overriding royalty payments have been made.

109.    Without limitation, the Jonah Plaintiffs also seek an accounting of the payments from the Ultra Defendants on the overriding royalties burdening the leasehold that UPL Pinedale, LLC acquired from Shell in 2014.  These overriding royalties burden the ARCO Working Interest and are governed by the 2000 Amendment (Exhibit E).  Since UPL Pinedale, LLC acquired the ARCO Working Interest, the payments on the overriding royalties burdening that interest have diminished by approximately 85-90% from the time period when Shell was paying the same overriding royalties.

27

110.    The 2000 Amendment sets forth in detail the proper method of computing the Shell Overrides:

(a)    It contains specific provisions regarding valuation and permissible transportation deductions, and the applicable provisions vary depending on the place of sale and whether the production is sold at arms' length;

(b)    It provides that the overriding royalties must also be paid on production that is used and not sold; and

(c)    It allows for processing deductions if the gas is processed prior to sale, and in such instance it provides for permissible deductions depending on the processing arrangement.

111.    Although certain of the Ultra Defendants have generally purported to provide pay stubs to the Jonah Plaintiffs for payments made on the overrides burdening the ARCO Working Interest since about January, 2015, the information provided does not give the Jonah Plaintiffs the information they need to determine whether the Ultra Defendants have complied with the 2000 Amendment.

112.    For example, the information on the pay stubs does not require the Ultra Defendants to report to the Jonah Plaintiffs the place of sale, whether the sales were arms' length or non-arms' length, whether production was used and not sold, the processing arrangements Ultra Defendants have in place, and the basis for the processing deductions taken by the Ultra Defendants.

113.    Without this basic information, the Jonah Plaintiffs have no way of determining whether Ultra Defendants have complied with the 2000 Amendment when paying the overriding royalties burdening the ARCO Working Interest.

28

114.    In addition, the Ultra Defendants have ignored or otherwise failed to respond to written requests for information from the Jonah Plaintiffs concerning these overriding royalties.

115.    Based on the allegations above, the Jonah Plaintiffs are entitled to a complete accounting from the Ultra Defendants on all of their overriding royalties. At a minimum, this accounting must include documentation and/or information substantiating all of the matters reported by the Ultra Defendants on the pay stubs. As to the overriding royalties burdening the ARCO Working Interest, the Jonah Plaintiffs are entitled to the following additional information:

(a)    The place/location where all production was sold;

(b)    The identity of the purchaser(s) each month and an explanation of the relationship between the purchaser(s) and the Ultra Defendants;

(c)    The schedule of gathering fees charged by the Jonah Pipeline to MOC as of June 1, 2000 if any deductions were taken under this provision for any months;

(d)    Information concerning the basis of any transportation deductions taken for transportation downstream from the Jonah Pipeline;

(e)    The monthly index prices used for any production not sold at arms' length;

(f)    The monthly volumes of production used and not sold (gross and net to each Plaintiff); and

(g)    A description of the processing arrangement(s) and the basis for all monthly processing costs charged to Plaintiffs; and

116.     The Jonah Plaintiffs anticipate that, as they receive the information above, further information and documentation will be necessary to provide a full and complete accounting to the Jonah Plaintiffs for payments made on their overriding royalties

117.     Plaintiffs request that the Court periodically review the accounting provided by the Ultra Defendants and order the production of further information and documents as may be necessary for a full and complete accounting.

118.     The Jonah Plaintiffs anticipate that, after the accounting is complete, it may be necessary to amend their Complaint to assert additional claims against the Ultra Defendants and reserve their right to do so.

## XII.  EIGHTH CLAIM FOR RELIEF:
## PERMANENT INJUNCTION

119.     The foregoing paragraphs are hereby incorporated as if fully set forth herein.

120.     The Jonah Plaintiffs request a permanent injunction enjoining the Ultra Defendants from deducting costs from their overriding royalties that are not allowed by the WRPA and/or the pertinent instruments.  The Jonah Plaintiffs will suffer irreparable harm if the Ultra Defendants are not permanently enjoined from using the overriding royalty revenues that belong to the Jonah Plaintiffs.

121.   The Ultra Defendants will continue to wrongfully appropriate the Jonah Plaintiffs' property for their own benefit on at least a monthly basis.  By failing to segregate the Jonah Plaintiffs' overriding royalty payments, money that belongs to Jonah Plaintiffs becomes comingled with the assets of the Ultra Defendants estates that could be distributed to creditors, which would be difficult to trace. Such comingling may cause the Jonah Plaintiffs' funds to be irreparably converted to property of the estates and distributed to creditors.

122.   There is a substantial likelihood that the Jonah Plaintiffs will prevail on the merits in this adversary proceeding.

123.   The harm which may result to the Jonah Plaintiffs outweighs the harm that may be sustained, if any, by the Ultra Defendants if a permanent injunction were granted.

124.   The public interest and public policy would also be served by granting of a permanent injunction. Public interest and public policy is served by preventing ongoing and systematic conversion/theft by companies handling other people's money, like the Ultra Defendants.

125.   The Jonah Plaintiffs request the Court to grant them permanent injunctive relief after a trial on the merits of this Complaint, enjoining the Ultra Defendants from deducting costs from the Jonah Plaintiffs' overriding royalties that are not allowed by the WRPA and/or the pertinent instruments.

31

## VI. PRAYER FOR RELIEF

Wherefore, the Jonah Plaintiffs respectfully request that this matter be set for trial, and that, after final hearing, judgment be entered in their favor and against the Ultra Defendants for the following relief:

1.    A declaration adjudicating the validity and scope of the Class 1, 2, 3, 4 and 5 Overrides;

2.    A declaration determining that all unpaid overriding royalties are property of the Jonah Plaintiffs, and not property of the Ultra Defendants' bankruptcy estates;

3.    Awarding all damages caused by the Ultra Defendants' breach of contract and/or the WRPA;

4.    Awarding all damages caused by the Ultra Defendants' conversion of the Jonah Plaintiffs' overriding royalties;

5.    Awarding all damages caused by the Ultra Defendants' fraud and misrepresentation;

6.    Imposing a constructive trust and/or equitable lien against the proceeds from production attributable to the Jonah Plaintiffs' overriding royalties, including any property traceable thereto and profits derived therefrom;

7.    Requiring the Ultra Defendants to disgorge and reimburse the Jonah Plaintiffs for all sums to the extent the Ultra Defendants have been unjustly enriched to the detriment of the Jonah Plaintiffs;

8.    Requiring a complete accounting of the Jonah Plaintiffs' overriding royalties, as set forth above;

9.    Granting a permanent injunction preventing the Ultra Defendants from taking deductions that are not permitted under the pertinent instruments and/or the WRPA;

10.    Costs and reasonable attorney's fees under Wyo. Stat. § 30-5-303(b) or other applicable law;

11.    Statutory interest under Wyo. Stat § 30-5-303(a) or other applicable law;

12.     Punitive or exemplary damages as permitted by law;

13.     Statutory penalties as permitted by law, including but not limited to reporting penalties under the WRPA; and

14.     Such other or further relief that the Court deems just and proper.

Dated: December 19, 2016

NATHAN SOMMERS JACOBS, P.C.

By: */s/ Jarrod B. Martin*
Texas Bar No. 24070221
2800 Post Oak Blvd. 61st Floor
Houston, TX 77056
jmartin@nathansommers.com
Telephone: (713) 960-0303
Facsimile: (713) 892-4800

POULSON, ODELL & PETERSON, LLC

By: */s/ Nick A. Swartzendruber*
Pro Hac Vice
1775 Sherman Street, Suite 1400
Denver, CO  80203
Telephone: (303) 861-4400
Facsimile: (303) 861-1225
NSwartzendruber@popllc.com

Attorneys for the Jonah Plaintiffs