## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

|  |  |  |
|---|---|---|
| In re: | § | Chapter 11 |
|  | § |  |
| ULTRA PETROLEUM CORP., *et al.*,[1] | § | Case No. 16-32202 (MI) |
|  | § |  |
| Debtors. | § | (Jointly Administered) |
|  | § |  |

## MOTION OF THE AD HOC COMMITTEE OF UNSECURED CREDITORS OF ULTRA RESOURCES, INC. FOR AN ORDER (I) APPOINTING A TRUSTEE PURSUANT TO SECTION 1104(a) OF THE BANKRUPTCY CODE OR (II) IN THE ALTERNATIVE, APPOINTING INDEPENDENT DIRECTORS TO THE BOARD OF ULTRA RESOURCES, INC. PURSUANT TO SECTIONS 105(a), 1107(a) AND 1108 OF THE BANKRUPTCY CODE

> **A HEARING WILL BE CONDUCTED ON THIS MATTER ON JANUARY 19, 2017 AT 9:00 A.M., PREVAILING CENTRAL TIME, IN COURTROOM 404, 4th FLOOR, UNITED STATES BANKRUPTCY COURT FOR THE SOUTHERN DISTRICT OF TEXAS, 515 RUSK AVENUE, HOUSTON, TEXAS 77002.**
>
> **IF YOU OBJECT TO THE RELIEF REQUESTED, YOU MUST RESPOND IN WRITING, SPECIFICALLY ANSWERING EACH PARAGRAPH OF THIS PLEADING. UNLESS OTHERWISE DIRECTED BY THE COURT, YOU MUST FILE YOUR RESPONSE WITH THE CLERK OF THE BANKRUPTCY COURT WITHIN TWENTY-ONE DAYS FROM THE DATE YOU WERE SERVED WITH THIS PLEADING. YOU MUST SERVE A COPY OF YOUR RESPONSE ON THE PERSON WHO SENT YOU THE NOTICE; OTHERWISE, THE COURT MAY TREAT THE PLEADING AS UNOPPOSED AND GRANT THE RELIEF REQUESTED.**

The *ad hoc* committee of unsecured creditors of Ultra Resources (the "Senior

Creditor Committee")[2] hereby submits this motion for an Order (i) appointing a chapter 11

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number (if any), are: Ultra Petroleum Corp. (3838); Keystone Gas Gathering, LLC; Ultra Resources, Inc. (0643); Ultra Wyoming, Inc. (6117); Ultra Wyoming LGS, LLC (0378); UP Energy Corporation (4296); UPL Pinedale, LLC (7214); and UPL Three Rivers Holdings, LLC (7158).

[2] The Senior Creditor Committee is comprised of senior unsecured creditors of Ultra Resources, Inc. ("Ultra Resources" and, together with its subsidiaries, "Opco") that collectively hold, control, or otherwise have discretionary authority over a substantial portion of Ultra Resources' funded indebtedness arising under or in connection with (i) senior notes ("Opco Notes") issued under that certain Master Note Purchase Agreement dated as of March 6, 2008 among Ultra Resources, as issuer, and the purchasers party thereto from time to time; and (ii) that certain Credit Agreement dated as of October 6, 2011 among Ultra Resources, as borrower, the lenders party thereto from time to time, and JPMorgan Chase Bank, N.A., as administrative agent.

trustee for Opco pursuant to Section 1104(a) of the Bankruptcy Code, or (ii) in the alternative, appointing independent directors to the board of Ultra Resources pursuant to Sections 105(a), 1107(a) and 1108 of the Bankruptcy Code.

## PRELIMINARY STATEMENT

1.      From the outset of these cases, the Senior Creditor Committee has been urging the Debtors to pursue a restructuring strategy based on the respective legal rights of its creditor constituencies, while allowing for a quick exit that would preserve the Debtors' going concern value.  Any such restructuring would need to recognize the structural seniority of claims against Opco, where the Debtors' primary assets reside.

2.      Nonetheless, after failing for months to engage with the Senior Creditor Committee or even the official committee of unsecured creditors (the "Official Committee"),[3] the Debtors have proposed what purports to be a "joint" plan of reorganization ("Plan") for all Debtors, but which instead is a vehicle to transfer value from Opco to the structurally junior creditors and equity holders of Ultra Petroleum Corp. ("Holdco").   Specifically, the Plan provides for the cram-down of Opco's funded-debt claims with new notes, with what the PSA describes as the least favorable terms for the Opco creditors that the law will allow.[4]   The Debtors' Plan also seeks to attack certain portions of the Opco funded-debt claims, including the Opco funded-debt holders' rights to a makewhole.  The Debtors have chosen this path despite their belief that they are solvent.  In sum, the Debtors are using these chapter 11 cases for the benefit of their equity holders and structurally junior creditors at the parent level to the detriment

---

[3]     Indeed, both the Senior Creditor Committee and the Official Committee were entirely excluded from negotiations that led to the Plan Support Agreement (the "PSA").

[4]     *See* PSA, Ex. A "Plan Term Sheet" ("Opco will issue on the Effective Date of the Plan $2.0 billion in new unsecured notes bearing the most favorable terms to Opco . . . that are permitted under applicable law.").

of their senior creditors and other parties in interest, who have been completely excluded from the plan negotiation process.

      3.     Moreover, the Debtors are operating with blatant conflicts of interest that have been brought to the fore by the terms of the PSA and the Plan.[5]  According to Ultra Resources' chapter 11 petition (Case No. 16-32204 [ECF 1]), Opco's only board members are Messrs. Michael D. Watford and Garland R. Shaw—both of whom are also officers and significant equity holders at Holdco.  Not only do these board members stand to profit generously from the transfer of value to equity holders but, worse still, the PSA and the Plan reflect that they will receive record breaking compensation in their capacities as officers of both Holdco and Opco.  At the Debtors' assumed valuation of $6 billion, management stands to receive its *pro rata* share of 41% of the *pro forma* new equity issued under the Plan on account of its Holdco equity ownership (as well as subscription rights to participate in a rights offering for an additional 25% of the new equity) and nearly $292.5 million under a management incentive plan (the "MIP").[6]  Opco's senior creditors, on the other hand, are being crammed down by an ostensibly highly solvent company.

      4.     Messrs. Watford and Shaw appear committed to supporting a restructuring that reallocates value from Opco (and the Debtors' senior most creditors) to Holdco, and into their pockets.  This self-dealing is highly inappropriate and should not be countenanced.

      5.     In an attempt to resolve these glaring conflicts without the need for court intervention, the Senior Creditor Committee transmitted a letter to the Opco board of directors (the "Board") on December 10, 2016, a copy of which is attached hereto as Exhibit A (the

---

[5]    The conflicts of interest may be more pervasive than described herein but the Debtors have not disclosed the identity of the non-Debtor parties to the PSA.

[6]    *See Debtors' Joint Chapter 11 Plan of Reorganization* [ECF No. 817] §§ 3.2(n), 4.4, 4.17.

#4834-2586-4511v1

"December 10 Letter").  In the December 10 Letter, the Senior Creditor Committee asked that the Debtors appoint independent, disinterested directors to the Board.  Instead of addressing the concerns raised in the December 10 Letter, the Debtors' counsel responded with a letter, a copy of which is attached hereto as Exhibit B.

6.      The Debtors' response focuses on the Debtors' view that the Plan is consistent with the Bankruptcy Code.  This response, with which the Senior Creditor Committee strongly disagrees,[7] misses the point.  Tellingly, the Debtors have not denied the existence of the untenable conflicts of interest of Opco's board members nor have they demonstrated any independent analysis undertaken by the Board prior to agreeing to the terms of the PSA on behalf of Opco's estate.

7.      Based on the pervasive conflicts of interest plaguing these cases that have resulted in the Board's failure to act as a zealous advocate for the interests of Opco and its creditors, and the Board's steadfast refusal to recognize, much less mitigate, these conflicts, the Senior Creditor Committee has little choice but to request that this Court appoint a chapter 11 trustee for Opco.  In the alternative, the Senior Creditor Committee requests that the Court condition the continued ability of the Debtors to operate as debtors-in-possession upon the recusal of Messrs. Watford and Shaw from the Board and the appointment of at least three independent, disinterested directors in their stead, charged with making any and all decisions for Opco relating to these cases.

---

[7]     The Debtors go so far as to state that the PSA and the Plan "permit" the Debtors to satisfy the allowed claims against Opco.  At the Debtors' purported $6 billion valuation, the Debtors are solvent and have no choice but to satisfy all allowed claims against Opco.  The Debtors have not undergone a proper market test to evaluate whether the terms of the PSA provide any value or benefit to Opco or its creditors.  Indeed, the only "value" provided by the PSA parties, for which they presumably seek releases, is an inflated equity value that puts Holdco's equity holders and management in the money.

#4834-2586-4511v1

8.      Current management has been given the time and opportunity to "do the right thing" and they have failed to do so in every instance.  Unfortunately, the terms of the PSA and the Plan crystalize the concerns expressed by the Senior Creditor Committee early on in these cases.  Indeed, the evidence in support of appointing a trustee or, in the alternative, an independent board for Opco, is irrefutable.[8]

## JURISDICTION

9.      This Court has jurisdiction over this motion pursuant to 28 U.S.C. §§ 157 and 1334.  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.  The legal predicates for the relief requested herein are Sections 105(a), 1104(a), 1107(a) and 1108 of the Bankruptcy Code.

## BACKGROUND

10.     The Debtors are an oil and natural gas exploration and production company, which is publicly held at Holdco.  As acknowledged in the *Declaration of Garland R. Shaw in Support of Chapter 11 Petitions and First Day Motions* [ECF 30], the value of the Debtors' enterprise is concentrated almost entirely in Opco, while Holdco has no material assets other than its equity interests in Opco.  Opco's creditors are, therefore, structurally senior to Holdco's creditors, including the holders of unsecured notes issued by Holdco (the "Holdco Noteholders").

11.     Despite the senior-most creditor status of its constituency, the Senior Creditor Committee was denied a seat at the PSA bargaining table.  Instead, the PSA negotiations were controlled by Holdco and its stakeholders—which include Messrs. Watford

---

[8]  On December 6, 2016, the Senior Creditor Committee served the Debtors with document requests (informally, by agreement) relating to, among other things, the boards of directors and managers of Ultra Resources, Inc. and each of its subsidiaries.  As of the filing of this Motion, the Debtors have not produced any such documents to the Senior Creditor Committee.

and Shaw—without any input from Opco's creditors.  Although Messrs. Watford and Shaw are the only Opco directors, they also hold officer and director positions at Holdco:  Mr. Watford serves as the chief executive officer of Holdco and is the chairman of Holdco's board of directors, while Mr. Shaw is the chief financial officer and senior vice president of Holdco.  Thus, there is not a single member of Opco's Board who is free from the glaring conflicts of interest in these chapter 11 cases.

12.     Given the composition of the bargaining parties, it is not surprising that the PSA contemplates a restructuring designed to benefit solely Holdco's creditors, equity holders and management at the expense of senior Opco creditors.  Specifically, under the Plan, the Holdco Noteholders and equity holders (collectively, the "Holdco Stakeholders") will, collectively, receive nearly 100% (subject to dilution) of the equity interests in the reorganized company, while Opco's senior creditors will be crammed down with inferior paper of a reorganized Opco encumbered with $2.2 billion of debt.

13.     Holdco's senior management team and board members, including Messrs. Watford and Shaw, will benefit directly from the terms of the PSA and the Plan in their capacities as Holdco's equity holders.  The Plan provides that Holdco's equity holders will receive 41.0% of the reorganized equity post-rights offering dilution but before dilution by the MIP, under the Debtors' $6 billion valuation scenario.  As of March 23, 2016, the Debtors report that their directors and executive officers held in the aggregate approximately 5,161,040 of Holdco's common shares, or 3.4% of Holdco's equity interests.[9]  As of that same date, Mr. Watford owned or held a beneficial interest in 3,981,265 of those common shares, or 2.6% of Holdco's equity.[10]  As such, Mr. Watford's recovery as a Holdco shareholder represents

---

[9]   *See* Ultra Petroleum Proxy Statement, April 4, 2016, pursuant to Securities and Exchange Act of 1934 § 14 (a).
[10]   *Id.*

approximately 1.06% of the reorganized equity—or approximately $42.5 million—post-rights offering dilution but before dilution by the MIP, under he Debtors' $6 billion valuation scenario (before accounting for his share of the MIP or potential participation in the rights offering described below).  As of that same date, Mr. Shaw owned or held a beneficial interest in 64,888 of those common shares, or 0.4% of Holdco's equity.[11]  Mr. Shaw's recovery as Holdco's shareholder represents approximately 0.02% of the reorganized equity—or approximately $0.7 million—post-rights offering dilution but before dilution by the MIP, under the Debtors' $6 billion valuation scenario (before accounting for his share of the MIP or potential participation in the rights offering described below).

14.     The Plan further contemplates a $580 million rights offering for new common stock (the "Rights Offering") open for participation by the Holdco Stakeholders who, if they choose to participate, will have the right to further increase their equity stake in the reorganized Debtors.  *See* Plan, Section 4.4.  In connection with the Rights Offering, the Debtors filed a motion seeking approval of a backstop commitment agreement whereby, as consideration for their "commitment" to backstop the Rights Offering, certain of the Holdco Stakeholders are guaranteed additional distribution equal to 6% of the Rights Offering shares.  *See Debtors' Motion for Entry of an Order Authorizing (i) Debtors' Entry Into Backstop Commitment Agreement and (ii) Payment and Allowance of Related Fees and Expenses as Administrative Claims* [ECF 820].

15.     Finally, the Plan establishes the MIP, under which the Debtors' management is entitled to 7.5% of the fully-diluted shares of reorganized Holdco, translating, at the posited total enterprise value of $6 billion, into a total MIP consideration of $292.5 million. Of that $292.5 million, forty percent (40%) will be distributed on the effective date of the Plan to

---

[11]     *Id.*

individuals identified by Holdco's current board of directors.  In other words, the current Holdco board, of which Mr. Watford serves as the chairman, will determine the members of management of the reorganized company who will benefit from the MIP post-effective date. The remaining sixty percent (60%) of the reserved equity will be allocated at the discretion of the post-effective date board.  The post-effective date board will consist of the existing board and two additional members, which members must be acceptable to Mr. Watford.

## ARGUMENT

16.     The Debtors' senior management is supporting a plan of reorganization that inappropriately redistributes significant value from Opco's estate and creditors to the structurally junior Holdco stakeholders.  The Plan also incorrectly suggests there is a weakness in the makewhole provisions in the Opco Notes by providing that the allowed amount of the claims based on the makewhole or premium provisions shall not be allowed, pending determination by the Bankruptcy Court, and "shall be reduced to account for the fact that interest on the [new debt] should be taken into account."  No independent fiduciary for Opco could have supported the Plan on such terms.  To add insult to injury, the same Plan grants releases to the Debtors' (including Opco's) officers and directors for, among other things, actions taken and/or omitted in connection with entering into the PSA and prosecuting the Plan.

17.     Given these circumstances, before these cases progress further, a chapter 11 trustee must be appointed with sole decision making authority with respect to Opco or, in the alternative, the Debtors must appoint at least three independent, disinterested directors to Opco's Board, with full and sole authority to negotiate a plan of reorganization for Opco.

I.      **A Chapter 11 Trustee Is Necessary to Address the Existing Conflicts of Interest and Provide Independent Decision-Making to Opco**

18.      There are glaring conflicts of interest at play in these cases that prevent Messrs. Watford and Shaw from carrying out their fiduciary duties to Opco's estate and its creditors, which conflicts have resulted in a Plan that tramples on the interests of Opco's stakeholders.   Specifically, not only must Messrs. Watford and Shaw balance multiple contradictory fiduciary roles but, as equity holders in Holdco and management of these Debtors, they stand to personally benefit from the Plan at the expense of the very same Opco constituency to which they owe fiduciary duties (by virtue of Opco's role as a debtor in possession).

A.   *Cause Exists to Appoint a Chapter 11 Trustee under Section 1104(a)(1) and 1104(a)(2) of the Bankruptcy Code*

19.      Under Section 1104(a) of the Bankruptcy Code, the Court ***must*** appoint a chapter 11 trustee either where "cause" exists for such appointment, or where such appointment is in the interests of the estate's parties in interest.   Under the circumstances of these cases, a chapter 11 trustee ***must*** be appointed for Opco under either prong of this test.

20.      First, pursuant to Section 1104(a)(1), a bankruptcy court must appoint a chapter 11 trustee where "cause" exists.   *See* 11 U.S.C. § 1104(a)(1).   "Cause" under Section 1104(a)(1) is not limited by the list enumerated in Section 1104(a)(1) ("fraud, dishonesty, incompetence, or gross mismanagement . . ., ***or similar cause***") (emphasis added), and courts are granted wide latitude in determining such.   *In re Ashley River Consulting, LLC*, 2015 Bankr. LEXIS 1008, *28-29 (Bankr. S.D.N.Y. Mar. 31, 2015).

21.      Numerous courts have held that conflicts of interests provide cause for the appointment of a trustee.   *In re Patman Drilling Int'l, Inc.*, No. 07-34622 (SGJ), 2008 WL 724086, at *6 (Bankr. N.D. Tex. Mar. 14, 2008) (noting that cause exists, among other reasons,

"because of the overwhelming conflicts of interest of the Debtor's management"); *see also In re Ashley River Consulting, LLC*, No. 14-13406 (MG), 2015 WL 1540941, at *9 (Bankr. S.D.N.Y. Mar. 31, 2015) (finding that conflicts of interests, including "inappropriate relationships between corporate parents and [its] subsidiaries," constitute "cause" for appointment of a trustee under Section 1104(a)(1)) (quoting *In re Altman*, 230 B.R. 6, 16 (Bankr. D. Conn. 1999)); *In re Marvel Entm't Grp., Inc.*, 140 F.3d 463, 471 (3rd Cir. 1998) (finding cause to appoint trustee because "unhealthy conflict of interest"); *In re Bowman*, 181 B.R. 836, 845 (Bankr. D. Md. 1995) ("Because the conflict of interest cannot be reconciled with the debtor remaining in possession, the court is compelled either to appoint a trustee or to reconvert this case to a Chapter 7."); *In re Cajun Elec. Power Coop.*, 191 B.R. 659, 661-62 (Bankr. M.D. La. 1995), *aff'd Cajun Elec. Power Coop. v. Central La. Elec. Coop. (In re Cajun Elec. Power Coop.)*, 74 F.3d 599, 600 (5th Cir. 1996) (noting that "cause" exists where there were "many conflicts of interest that [debtor's] management, directors and members ha[d] with each other and with their creditors and the estate."). Indeed, courts in the Fifth Circuit recognize that where conflicts of interest exist in connection with a proposed plan of reorganization, "the proper remedy [is] to come to the Court and ask that a trustee be appointed." *In re Cajun Elec. Power Coop.*, 191 B.R. at 661-62.

22.     Importantly, upon the filing of a bankruptcy case, a director's duties to a corporation and its shareholders do not discontinue. Governance of the debtor, however, is supplanted by certain Bankruptcy Code provisions. First, all of the corporation's interest in property are immediately transferred into an estate. *See* 11 U.S.C. §541(a). Second, the Bankruptcy Code provides for takeover of the estate by a trustee. *See* 11 U.S.C. §§ 323, 1106(a), 1108. A debtor in possession has the rights and powers and must perform all the functions of a trustee. *See* 11 U.S.C. §1107. It is well-established that a trustee, or the debtor in possession,

10

owes certain fiduciary duties similar to a director's duties, but that a trustee's constituency is "broadened under the [Bankruptcy Code] to include not only the debtor and its shareholders, but also all of the debtor's creditors."  *In re Schepps Food Stores, Inc.*, 160 B.R. 792, 797 (Bankr. S.D. Tex. 1993) (noting, in the context of an adversary proceeding seeking an injunction to prevent the continuation of a state suit, that "while state law standards continue to apply to post-petition fiduciary obligations, the rights and remedies of aggrieved shareholders and creditors during the post-petition/pre-confirmation period are regulated by the Bankruptcy Code which controls state law pursuant to the Supremacy Clause of the United States Constitution. U.S. Const. art. VI.").  This construct in of itself can present a conflict of interest for a debtor's management who, on the one hand, must act in the best interests of the corporation and shareholders, and on the other hand, must act in the best interests of the estate, shareholders and creditors.

23.     Here, the Board is incapacitated not only by the conflict of interest that arises in the context of a bankruptcy filing, but by the massive consideration they stand to receive as equity holders and through the MIP if the Plan is confirmed.  It is undeniable that both members of Opco's Board have a substantial pecuniary interest in seeing recoveries to Holdco increased, which renders their personal interests directly adverse to the interests of creditors of Opco.  There is not a single independent director at Opco and the Debtors have resisted all efforts to remedy this situation by appointing independent directors to Opco.  Allowing this conflict to continue unabated undermines the very integrity of the bankruptcy process.  Thus, a chapter 11 trustee must be appointed to make such impartial decisions on behalf of the Opco estate.

#4834-2586-4511v1

24.     Second, as an entirely alternative basis, the appointment of a trustee in Opco's chapter 11 case is warranted because it is "in the best interests of creditors, equity security holders, and other interests of the estate" under Section 1104(a)(2).   11 § U.S.C. 1104(a)(2).  In determining whether to appoint a trustee under Section 1104(a)(2), courts balance the benefits derived by a trustee's appointment with the costs of such appointment.  *In re Cajun Elec. Power Coop.*, 191 B.R. at 661-62.  Under Section 1104(a)(2) courts consider, among other factors, the trustworthiness of the debtors, the reasons for the debtor's behavior, and reliance by and harms to third parties.  *See In re New Orleans Paddlewheels, Inc.*, 350 B.R. 667, 692 (Bankr. E.D. La. 2006) (appointing trustee to "also function as the [debtor's] board of directors"); *In re Evans*, 48 B.R. 46, 48 (Bankr. W.D. Tex. 1985) (other factors to be considered include "[c]onclusive evidence of detriment to the estate," and "[p]ossibilities of future rehabilitation").

25.     It is evident that the benefits to Opco's estate if a trustee is appointed far outweigh the minimal costs (such as retaining counsel for the trustee and time for the trustee to familiarize himself or herself with the case).  Here, the Debtors' trustworthiness to protect the interests of all creditors is in serious doubt because of the conflicts of interest existing at the management level.  Where such grave conflicts of interest exist, there is a presumption that current management is unable to make impartial decisions necessary to properly conduct the reorganization process and appointing a trustee would be in the best interests of creditors and equity holders.  *See In re L. S. Good & Co.*, 8 B.R. 312, 315 (Bankr. N.D. W. Va. 1980) (Where "current management of [debtor is] in a position of having grave potential conflicts of interest[,] the presumption arises that the current management of [debtor] will be unable to make [] impartial investigations and decisions").  Indeed, the Debtors can cite no legitimate reason for denying Opco creditors the opportunity to participate in these chapter 11 cases and entitlement to

their full recoveries.  Instead, it appears that the Debtors plan to extract as much value from Opco because it is in the self-interest of Debtors' management.  A debtor-in-possession cannot ignore its fiduciary obligations to all creditors by putting its own interests before those of its beneficiaries.

26.     The Debtors' support of a Plan that is opposed by their senior-most creditors will inevitably lead to a protracted restructuring process to the detriment of all creditors.  A trustee, therefore, is necessary to "preside in an objective and impartial manner to bring the case to a swift and successful conclusion."  *In re Cajun Elec. Power Coop.*, 191 B.R. at *10.  A capable and objective trustee would act as a fiduciary of Opco's estate and zealously represent the interests of Opco's stakeholders, rather than being controlled by Holdco.  *In re Colorado-Ute Electric Association, Inc.*, 120 B.R. 164, 177 (Bankr. D. Colo. 1990); *see also In re New Orleans Paddlewheels, Inc.*, 350 B.R. at 693 (Bankr. E.D. La. 2006) ("With a trustee, all interests are assured a neutral party with the best interests of the creditors at heart.").  A trustee will ensure that a reorganization plan is submitted to the Court that is fair and equitable to all creditors, unlike the currently proposed Plan.  *In re Cajun Elec. Power Coop.*, 191 B.R. at *11 (appointing trustee under Section 1104(a)(2) because "[a] trustee will able to ensure that a fair plan of reorganization will be submitted to the Court.").

27.     Finally, appointing a chapter 11 trustee will protect Opco's creditors and the public interest, thus fulfilling the purposes of Section 1104(a).  *See, e.g.*, *In re Ionosphere Clubs, Inc.*, 113 B.R. 164, 168 (Bankr. S.D.N.Y. 1990) (citing legislative history of section 1104 to the effect that"[t]he twin goals of the standard for the appointment of a trustee should be protection of the public interest and the interests of creditors"); *Taub v. Adams*, 2010 U.S. Dist. LEXIS 104805, *17-18 (E.D.N.Y. Aug. 30, 2010) ("[A]ppointing a Chapter 11 trustee pursuant

to § 1104(a)(2) is merely an acknowledgement that under the circumstances — and despite whatever efforts the debtor may have made in the past — it is now in the interest of creditors and other interests of the estate to have an independent third-party assume control.").  Appointing a trustee would protect Opco's creditors by guaranteeing greater fairness in the reorganization process.  It would also protect the public interest in avoiding future conflicts of interest and safeguarding the role of a fiduciary as disinterested and independent.

## II.  In the Alternative, Watford and Shaw Should Be Removed and Independent Directors Should Be Appointed for Opco

28.    In the alternative, the Senior Creditor Committee submits that, should the Court determine that appointment of a chapter 11 trustee for Opco is not currently warranted, Messrs. Watford and Shaw should recuse themselves from Plan negotiations and the Debtors should be required to appoint at least three independent, disinterested directors to the Board to serve as responsible officers in Opco's case.

29.    Having independent, disinterested directors on the Board is critical to providing Opco's creditors with an independent estate fiduciary to uphold their interests.  The independent, disinterested board members would be charged with negotiating a plan of reorganization on behalf of Opco and its stakeholders, thereby providing a voice to the otherwise disenfranchised senior creditors.  An independent, disinterested Board would also rid Holdco's management of their inherent conflicts of interest, allowing them to fulfill their fiduciary duties to Holdco's estate without any impropriety.  Such a result will not only increase creditor confidence in the Debtors, but also in the plan confirmation process.

30.    Bankruptcy courts are authorized under the Bankruptcy Code to appoint responsible officers, including independent, disinterested directors, to oversee and administer a debtor's estate.  Sections 1107(a) and 1108 give bankruptcy courts the power to direct debtors'

14

management and directors.  Pursuant to Section 1107(a), "[s]ubject . . . *to such limitations or conditions as the court prescribes*, a debtor in possession shall have all the rights, other than the right to compensation under section 330 of this title, and powers, and shall perform all the functions and duties . . . of a trustee serving in a case under this chapter."  U.S.C. § 1107(a) (emphasis added).  Likewise, Section 1108 states, in relevant part, **"[u]nless the court**, on request of a party in interest and after notice and a hearing, *orders otherwise*, the trustee may operate the debtor's business."  U.S.C. § 1108 (emphasis added).  Under Section 105(a), courts are granted broad remedial power to grant orders as necessary to carry out the provisions of the Bankruptcy Code."  U.S.C. § 105(a).  Read in conjunction with Sections 1107(a) and 1108, Section 105(a) grants a bankruptcy court broad remedial power to order the appointment of an independent board of directors or committee when necessary.  *In re Blue Stone Real Estate, Const. & Development Corp.*, 392 B.R. 897, 903 (Bankr. M.D. Fl. 2008) (bankruptcy courts can "alter the powers of the Debtors' boards of directors" under section 1107(a)).

31.     The appointment of an independent, disinterested Board with authority to negotiate a plan of reorganization for Opco is more than justified here.  An independent, disinterested Board would protect the interests of Opco and its stakeholders while promoting the integrity of the bankruptcy system, which, courts agree, supports appointing a responsible officer.  *In re Communications Options Inc.*, 299 B.R. 481, 492 (Bankr. S.D. Ohio 2003) (ordering appointment of a responsible officer based on "numerous examples of actions taken by the debtors solely to protect its insiders"); *In re Gaslight Club Inc.*, 782 F.2d 767, 769-70 (7th Cir. 1986) ("The case law demonstrates that the court had considerable authority to interfere with the management of a debtor corporation in order to protect the creditors' interests.").

#4834-2586-4511v1

32.     Under similar circumstances, bankruptcy courts have authorized the appointment of responsible officers with decision-making authority to carry out the duties of a board of directors or management during the reorganization process.  *See In re Property Co. of America Joint Venture*, 110 B.R. 244, 245-246 (Bankr. N.D. Tex. 1990) (appointing disinterested, responsible officer under § 1107 "to serve as interim [CEO] and exercise business judgment to resolve any business decisions where the [debtors] could not agree"); *In re FSC Corp.*, 38 B.R. 346, 349 (Bankr. W.D. Pa. 1983) (affirming appointment of responsible officer who was granted power to vote stock of wholly-owned subsidiaries); *In re United Press International, Inc.*, 60 B.R. 265 (Bankr. D.D.C. 1986) (order abolishing board of directors and granting management authority to file reorganization plan in debtor's name).

33.     Appointing independent directors to replace Messrs. Watford and Shaw would protect the interests of Opco's creditors, restore faith and confidence in the chapter 11 reorganization process, and facilitate the efficient and speedy resolution of these cases.  As such, the Court should order the Debtors to appoint independent, disinterested directors to the Board with, among others, the following responsibilities:

(i)     Serve as independent fiduciaries to safeguard the interests of Opco's estate and its stakeholders throughout these chapter 11 cases;

(ii)     Maintain full and sole authority to negotiate and finalize a plan of reorganization for Opco; and

(iii)     Possess sole decision-making authority with respect to any and all transactions where there are potential conflicts of interest with Holdco and/or its stakeholders or any other conflicts.

## RESERVATION OF RIGHTS

34. On December 6, 2016, the Senior Creditor Committee served the Debtors with document requests (informally, by agreement) relating to, among other things, the boards of directors and managers of Ultra Resources, Inc. and each of its subsidiaries.  Although the Senior Creditor Committee requested that documents responsive to such requests be produced on or before December 20, 2016, to date, the Debtors have not produced any such documents to the Senior Creditor Committee.[12]  The Senior Creditor Committee reserves all rights to supplement this motion based on documents obtained in discovery.

*[Remainder of this page is intentionally left blank]*

---

[12] On December 23, 2016, the Debtors indicated they will be making a production, but as of the filing of this Motion no such production has been received.

#4834-2586-4511v1

## CONCLUSION

35.    Based on the foregoing, the Senior Creditor Committee respectfully requests that the Court enter an order appointing a chapter 11 trustee or, in the alternative, an independent, disinterested board of directors for Opco to perform the duties listed herein, or such other relief that the Court deems proper.   Annexed hereto as <u>Exhibit C</u> is a proposed form of order that provides for the relief requested herein

Dated: December 23, 2016
       Houston, Texas

NORTON ROSE FULBRIGHT US LLP

By: /s/ Jason Boland
William R. Greendyke (TX Bar No. 08390450)
R. Andrew Black (TX Bar No. 02375110)
Jason L. Boland (TX Bar No. 24040542)
Fulbright Tower
1301 McKinney, Suite 5100
Houston, Texas  77010-3095
Telephone: (713) 651-5151
Facsimile:  (713) 651-5246
Email:  william.greendyke@nortonrosefulbright.com
        andrew.black@nortonrosefulbright.com
        jason.boland@nortonrosefulbright.com

- and -

MILBANK, TWEED, HADLEY & McCLOY LLP

Dennis F. Dunne (*pro hac vice*)
Evan R. Fleck (*pro hac vice*)
Andrew M. Leblanc (*pro hac vice*)
28 Liberty Street
New York, New York  10005
Telephone: (212) 530-5000
Facsimile:  (212) 530-5219
Email:  ddunne@milbank.com
        efleck@milbank.com
        aleblanc@milbank.com

*Attorneys for the Ad Hoc Committee of*
*Unsecured Creditors of Ultra Resources, Inc.*

**Exhibit A**

**December 10 Letter**

# MILBANK, TWEED, HADLEY & MᶜCLOY LLP

**1850 K STREET, NW, SUITE 1100**
**WASHINGTON, DC 20006**

——————

202-835-7500

FAX: 202-263-7586

Andrew M. Leblanc
DIRECT DIAL NUMBER
202-835-7574
E-MAIL: Aleblanc@milbank.com

December 10, 2016

**NEW YORK**
212-530-5000
FAX: 212-530-5219

**LOS ANGELES**
424-386-4000
FAX: 213-629-5063

**LONDON**
44-20-7615-3000
FAX: 44-20-7615-3100

**FRANKFURT**
49-69-71914-3400
FAX: 49-69-71914-3500

**MUNICH**
49-89-25559-3600
FAX: 49-89-25559-3700

**BEIJING**
8610-5969-2700
FAX: 8610-5969-2707

**HONG KONG**
852-2971-4888
FAX: 852-2840-0792

**SEOUL**
822-6137-2600
FAX: 822-6137-2626

**SINGAPORE**
65-6428-2400
FAX: 65-6428-2500

**TOKYO**
813-5410-2801
FAX: 813-5410-2891

**SÃO PAULO**
55-11-3927-7700
FAX: 55-11-3927-7777

**VIA EMAIL**

Board of Directors of Ultra Resources, Inc.
c/o Kirkland & Ellis LLP
David R. Seligman, P.C.
300 North LaSalle
Chicago, IL 60654
david.seligman@kirkland.com

     Re:    *In re Ultra Petroleum Corp., et. al.*, Case No. 16-32202

Members of the Board:

    As you know, we represent an ad hoc committee (the "Ad Hoc Senior Committee") of unsecured creditors of Ultra Resources, Inc. ("Opco"), which creditors control, or otherwise have discretionary authority over the disposition of certain unsecured indebtedness arising under or in connection with (i) senior notes issued under that certain Master Note Purchase Agreement dated as of March 6, 2008 (as amended, modified, or supplemented in accordance therewith) among Opco, as issuer, and the purchasers party thereto from time to time, and (ii) that certain Credit Agreement dated as of October 6, 2011 (as amended, modified, or supplemented in accordance therewith) among Opco, as borrower, the lenders party thereto from time to time, and JPMorgan Chase Bank, N.A., as administrative agent. We write to express the Ad Hoc Senior Committee's concern regarding the glaring conflicts of interest at play in the Debtors' chapter 11 cases and to request that the Debtors promptly address this concern.

    Specifically, there is no independent fiduciary safeguarding the best interests of the Opco estate. **There are no independent directors on Opco's board**. According to Opco's chapter 11 petition, Case No. 16-32204 [Docket No. 1], its only board members are Michael D. Watford, chief executive officer and chairman of the board of Ultra Petroleum Corp. ("Holdco"), and Garland R. Shaw, chief financial officer and senior vice president at Holdco. The Ad Hoc Senior

December 10, 2016
Page 2

Committee urges the Debtors to appoint one or more independent directors to Opco's board of directors, with full authority to negotiate a plan of reorganization for Opco, and separate counsel and advisors.

The Debtors' recently published plan support agreement (the "PSA"), purports to provide for a joint plan for all Debtors (the "Plan"); however, the restructuring contemplated thereby is beneficial solely to Holdco and its stakeholders at the expense of the Opco estate. This is not surprising as the PSA reflects an agreement between Holdco and its stakeholders, without any input from Opco's stakeholders who do not support the PSA or the terms of the Plan. In fact, neither the Official Committee of Unsecured Creditors nor the Ad Hoc Senior Committee were consulted before the Debtors entered into the PSA.

**No independent estate fiduciary for Opco would, or could, have approved the terms of the restructuring contemplated by the PSA**. There are many other confirmable plan constructs that would not only result in a confirmable plan *vis-a-vis* the Holdco estate, but that should be acceptable to the Opco board of directors in the exercise of their fiduciary duties. The fact that the Opco board of directors, whose creditors are structurally senior to those of Holdco, either failed to consider or rejected such alternatives suggests that such directors are conflicted by the multiple fiduciary roles they must consider or, worse, conflicted by the economic benefit they stand to achieve on a personal level by virtue of the proposed Plan, which in certain respects are unprecedented.

Indeed, the PSA requires that the Plan provide for the establishment of a management equity incentive plan (the "MIP"), under which 7.5% of the shares of Holdco will be reserved for the Debtors' management. In addition, the PSA contemplates a significant recovery by Holdco's current equity holders, among whom are several members of the Debtors' management team and board, including Mr. Watford. Thus, Opco's directors stand to receive outsized compensation not only on account of their equity ownership, which appears to be based on an overstated valuation, but also on account of the MIP. Meanwhile, Opco is expected to be encumbered with new debt and its creditors crammed down with new, inferior paper. If Mr. Watford and the Debtors' board of directors believed their valuation, they could go out to the public markets and raise a sufficient amount of cash to satisfy their senior creditors in full.

Against this backdrop, it is implausible that a fiduciary for Opco would have advocated for that outcome instead of refusing to accept the treatment for Opco stakeholders proposed by the PSA. Yet, the Plan proposes to grant these officers and directors broad releases for, among other things, actions taken and/or omitted in connection with entering into the PSA and the MIP.

The Debtors' officers and directors have effectively opted to support a plan that reallocates value from Opco to Holdco, and into their own pockets. It is therefore critical that, before these cases progress any further, an independent, disinterested board be installed at Opco, with full authority to negotiate a plan of reorganization for Opco and sole decision making authority with respect to any and all transactions on which this conflict exists. With separate counsel and advisors, a truly independent non-conflicted board would ensure that there is an independent fiduciary safeguarding the interest of Opco and its stakeholders.

The Ad Hoc Senior Committee would like to continue to work constructively with the Debtors and, as such, we ask that you move quickly to address this critical issue without need for

December 10, 2016
Page 3

Court intervention.  Given the schedule that the Debtors are seeking to impose, if the Debtors have not addressed this matter to the Ad Hoc Senior Committee's satisfaction by December 14, 2016, we may seek relief from the Court.  We look forward to hearing from you.

Sincerely,

/s/ Andrew M. Leblanc

Andrew M. Leblanc

cc:     Christine A. March, Esq., *Office of the United States Trustee*
        Alfredo R. Perez, Esq., *counsel to the official committee of unsecured creditors*
        Chris Lopez, Esq., *counsel to the official committee of unsecured creditors*
        Michael B. Slade, Esq., *counsel to the Debtors*
        Gregory F. Pesce, Esq., *counsel to the Debtors*
        Christopher T, Greco, Esq., *counsel to the Debtors*

**Exhibit B**

**December 12 Letter**

# KIRKLAND & ELLIS LLP

#### AND AFFILIATED PARTNERSHIPS

300 North LaSalle
Chicago, Illinois  60654

David R. Seligman, P.C.
To Call Writer Directly:
(312) 862-2463
david.seligman@kirkland.com

(312) 862-2000

www.kirkland.com

Facsimile:
(312) 862-2200

December 12, 2016

**<u>VIA ELECTRONIC MAIL</u>**

Andrew M. Leblanc
Milbank, Tweed, Hadley & McCloy LLP
1850 K Street, NW, Suite 1100
Washington, DC  20006

Re:     *In re Ultra Petroleum Corp., et al.*, Case No. 16-32202

Dear Andrew:

We received your letter dated December 10, 2016 (the "Milbank Letter").  At its most
fundamental level, the Milbank Letter ignores that the restructuring contemplated by the PSA
and the Plan will permit Opco (and each of the other Debtors) to satisfy all allowed claims
against it, including any allowed claims held by members of the Ad Hoc Senior Committee.
Specifically, the Plan (which is subject to confirmation by the Bankruptcy Court) provides that
each holder of an allowed claim against Opco that is held by your constituents shall receive on
account of such such claim property of a value, as of the effective date of the Plan, equal to the
allowed amount of such claim, which is consistent with the Bankruptcy Code.  Against this
backdrop, we respectfully disagree with your assertion in the Milbank Letter that "[n]o
independent estate fiduciary for Opco would, or could, have approved the terms of the
restructuring contemplated by the PSA."

As you know, on December 2, 2016 we reached out to the advisors to the Ad Hoc Senior
Committee and suggested that we use the next several weeks to negotiate in good faith to attempt
to reach a consensual agreement regarding Opco's restructuring, and those discussions are in
process at an advisor level.  While we disagree with the assertions made in the Milbank Letter,
we would like to discuss them with you at your earliest convenience and to continue the ongoing
discussions with you and your constituency in an effort to determine whether consensus can be
achieved.  To that end, please let us know when would be a convenient time for a telephone call
early this week.

Beijing     Hong Kong     Houston     London     Los Angeles     Munich     New York     Palo Alto     San Francisco     Shanghai     Washington, D.C.

## KIRKLAND & ELLIS LLP

Andrew M. Leblanc
December 12, 2016
Page 2

Sincerely,

*/s/ David R. Seligman, P.C.*

David R. Seligman, P.C.


cc:   Christine A. March, Esq., *Office of the United States Trustee*
      Michael B. Slade, Esq., *counsel to the debtors and debtors in possession*
      Christopher T. Greco, Esq., *counsel to the debtors and debtors in possession*
      Gregory F. Pesce, Esq., *counsel to the debtors and debtors in possession*
      Matthew C. Fagen, Esq., *counsel to the debtors and debtors in possession*
      Alfredo R. Perez, Esq., *counsel to the official committee of unsecured creditors*
      Chris Lopez, Esq., *counsel to the official committee of unsecured creditors*

**Exhibit C**

**Proposed Order**

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

|  | § |  |
|---|---|---|
| In re: | § | Chapter 11 |
|  | § |  |
| ULTRA PETROLEUM CORP., *et al.*,[1] | § | Case No. 16-32202 (MI) |
|  | § |  |
| Debtors. | § | (Jointly Administered) |
|  | § |  |

**ORDER GRANTING MOTION OF THE AD
HOC COMMITTEE OF UNSECURED CREDITORS OF
ULTRA RESOURCES, INC. FOR AN ORDER (I) APPOINTING A
TRUSTEE PURSUANT TO SECTION 1104(a) OF THE BANKRUPTCY
CODE OR (II) IN THE ALTERNATIVE, APPOINTING INDEPENDENT
DIRECTORS TO THE BOARD OF ULTRA RESOURCES, INC. PURSUANT
TO SECTIONS 105(a), 1107(a) AND 1108 OF THE BANKRUPTCY CODE**

Upon consideration of the *Motion of the Ad Hoc Committee of Unsecured Creditors of Ultra Resources Inc. for an Order (I) Appointing a Trustee Pursuant to Section 1104(a) of the Bankruptcy Code or (II) In the Alternative, Appointing Independent Directors to the Board of Ultra Resources, Inc. Pursuant to Sections 105(a), 1107(a), and 1108 of the Bankruptcy Code* (the "Motion"),[2] and after due deliberation and sufficient cause appearing therefore from the evidence and arguments presented and the record of this case, the Court concludes that: (a) the Court has jurisdiction over this matter and constitutional authority to enter final orders on this matter; (b) the movant has established good and sufficient cause for the relief requested; (c) due notice of the Motion has been provided and no other or further notice of the Motion is necessary;

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number (if any), are:  Ultra Petroleum Corp. (3838); Keystone Gas Gathering, LLC; Ultra Resources, Inc. (0643); Ultra Wyoming, Inc. (6117); Ultra Wyoming LGS, LLC (0378); UP Energy Corporation (4296); UPL Pinedale, LLC (7214); and UPL Three Rivers Holdings, LLC (7158).

[2]    Capitalized terms not defined herein shall have the meaning set forth in the Motion.

and (d) the relief sought is in the best interests of the estates and all parties in interest. Accordingly, the Court hereby GRANTS the Motion as set forth herein.

**IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:**

1.      The Motion is granted as set forth herein.

2.

_____ The United States Trustee, in consultation with the Senior Creditor Committee, shall appoint a chapter 11 trustee for Ultra Resources, Inc. under 11 U.S.C. § 1104.

_____ The Debtors shall appoint, in consultation with the Senior Creditor Committee, no less than three (3) independent, disinterested directors to the board of Ultra Resources, Inc. no later than ten (10) business days after entry of this order; with such independent directors having the authority and responsibility to (i) serve as independent fiduciaries to safeguard the interests of the estates of Ultra Resources, Inc. and its subsidiaries and their stakeholders throughout these chapter 11 cases; (ii) maintain full and sole authority to negotiate and finalize a plan of reorganization for Ultra Resources, Inc. and its subsidiaries; and (iii) possess sole decision-making authority with respect to any and all transactions where there are potential conflicts of interest with Ultra Petroleum Corp. and/or its stakeholder or any other conflicts.

#4834-2586-4511v1

3.      The Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation of this Order.


Signed: _____, 2017
      Houston, Texas

_____
HONORABLE MARVIN ISGUR
UNITED STATES BANKRUPTCY JUDGE

3

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December 23, 2016, a true and correct copy of the foregoing document was served via email on all parties registered to receive service through the Court's CM/ECF system and by first class U.S. mail to all parties listed on the Debtors' Seventh Amended Master Service List at Dkt. No. 640.


<u>/s/  Nelly C. Almeida</u>

Nelly C. Almeida