### UNITED STATES BANKRUPTCY COURT
### SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

_____

|  |  |  |
|---|---|---|
| In re: | § | |
| | § | |
| | § | Chapter 11 |
| ULTRA PETROLEUM CORP., et al., | § | |
| | § | Case No.: 16-32202 |
| Debtors. | § | |
| | § | (Jointly Administered) |

_____

|  |  |  |
|---|---|---|
| GASCONADE OIL CO. | § | |
| RIGGS OIL & GAS CORPORATION | § | |
| THE ROY H. DUBITZKY TRUST DATED | § | |
|  JUNE 28, 1996, ROY H. DUBITZKY | § | |
|  TRUSTEE | § | |
| | § | |
| Plaintiffs | § | |
| | § | |
| v. | § | Adversary No. 17-_____ |
| | § | |
| ULTRA RESOURCES, INC. | § | |
| UPL PINEDALE, LLC | § | |
| | § | |
| Defendants | § | |

_____

## ORIGINAL COMPLAINT

**COME NOW** the Plaintiffs, by and through their undersigned attorneys, and for their complaint herein against the Defendants state and allege as follows:

## I. SUMMARY OF COMPLAINT

1.      This Complaint involves a dispute concerning a consulting agreement which grants to Plaintiffs overriding royalty interests on oil and gas leases owned by the Defendants and on oil and gas leases subsequently obtained by Defendants in a defined geographic Area of Mutual Interest ("AMI"). More specifically, Plaintiffs contend that Ultra Resources, Inc. (a party to the consulting agreement) and UPL Pinedale, LLC (a subsidiary or affiliate fiction who was

1

not party to the consulting agreement) executed a purchase and sale agreement with SWEPI LP to obtain oil and gas leasehold interests in the AMI, which were entirely paid for by Ultra Resources, Inc., but resulted in assignments of the oil and gas leases to UPL Pinedale, LLC (who was not a party to the consulting agreement).  Plaintiffs therefore assert that transaction was a sham designed to circumvent Ultra Resources, Inc.'s obligations to assign Plaintiffs overriding royalty interests in the AMI.  Plaintiffs therefore seek a declaratory judgment that Plaintiffs' are entitled to overriding royalty interests burdening the SWEPI LP AMI leaseholds, and damages for breach of contract, conspiracy and fraud, conversion, various forms of equitable relief, and damages pursuant to Wyoming's Royalty Payment Act.

## II. JURISDICTION, CONSENT TO ENTRY OF JUDGMENT, AND VENUE

2.      This Court has jurisdiction over the subject matter of this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334, and General Order 2012-6 of the United States District Court for the Southern District of Texas. The matters set forth herein are core proceedings pursuant to 28 U.S.C. § 157(b)(2)(A), (B), (E), and (O).

3.      The statutory predicates for the relief requested herein are 28 U.S.C. § 2201, 11 U.S.C. §§ 105 and 541, and Rule 7001(1), (2), and (9) of the Federal Rules of Bankruptcy Procedure.

4.      Pursuant to Local Bankruptcy Rule 7008-1, the Plaintiffs consent to the entry of final orders or a judgment by the bankruptcy judge in this adversary proceeding.

5.      Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## III. PARTIES

6.      Gasconade Oil Co., is a Colorado corporation with its principal place of business located at 410 17th Street, Suite 1180 Denver, Colorado 80202.

2

7.      Riggs Oil & Gas Corporation, is a New Mexico corporation with its principal place of business located at 1690 N. Butler Ave., Farmington, New Mexico 87401.

8.      The Roy H. Dubitzky Trust dated June 28, 1996, Roy H. Dubitzky Trustee, is a trust formed under the laws of the State of Colorado with its principal place of business located at 2850 Classic Drive, Unit 2814, Highlands Ranch, Colorado 80126

9.      Defendant Ultra Resources, Inc. ("Ultra Resources") is a Wyoming corporation with its principal place of business located at 400 N. Sam Houston Parkway E., Suite 1200, Houston, Harris County, Texas.

10.     Defendant UPL Pinedale, LLC ("UPL Pinedale") is a Delaware limited liability company with its principal place of business located at 400 N. Sam Houston Parkway East, Suite 1200, Houston, Harris County, Texas.

11.     This action is brought by Plaintiffs for damages, injunctive and declaratory relief, and relief incident and subordinate thereto, including prejudgment/statutory interest, penalties, costs, and attorney fees.

## IV.  GENERAL ALLEGATIONS

12.     On November 1, 1983, Fossil entered into a Consulting Agreement ("Consulting Agreement") with CNG Producing Company, a Delaware corporation ("CNG"), under which CNG obtained the right to acquire rights to prospects for oil and gas development originated by Fossil in various areas of the State of Wyoming and other states, including prospects located in Sublette, Sweetwater, Lincoln and Uinta Counties, Wyoming.

13.     Under the terms of the Consulting Agreement, CNG was to finance and, as operator, drill wells for the discovery and production of oil and gas under oil and gas leases covering lands located in designated prospect areas.

14.     Under the terms of the Consulting Agreement, Fossil held the right to a 3.0% overriding royalty in prospect oil and gas leases and the option to acquire an undivided 12.5% back-in leasehold interest in prospect leaseholds following the drilling of the initial well in a prospect area.

15.     On March 15, 1994, Fossil and CNG entered into the Southwestern Wyoming Revised CNG/Fossil Agreement ("Revised CNG/Fossil Agreement") that by its terms superseded and replaced the Consulting Agreement insofar as the Consulting Agreement related to Sublette, Sweetwater, Lincoln and Uinta Counties, Wyoming, referred to as the "Contract Area."

16.     The Revised CNG/Fossil Agreement contains the following provisions:

(3) Fossil hereby specifically waives all rights to participate [in] overriding royalties and back-ins previously granted and CNG hereby grants to Fossil a 5.5% overriding royalty (ORR) on all leases owned by CNG within the confines of the Jonah Gulch Prospect as itemized on Exhibit "A-2" and a 5% ORR on all remaining properties located within the Contract Area in which Fossil previously was due an ORR as itemized on Exhibit "B" (see Paragraph (4) below for the ORR attributable to subsequently acquired leases). All such overriding royalties to be proportionately reduced in accord with the interest actually owned by CNG . . .

(4) Areas of Mutual Interest (AMI or AMI's) are hereby established covering all acreage within the Jonah Gulch Prospect and, except as set out in Paragraph (5) below, all sections contiguous to sections containing existing leases as set out in Exhibit "B" (including diagonal offsets) for leases outside of the Jonah Gulch Prospect and within the Contract Area. The Jonah Gulch AMI shall remain in effect so long as any of the leases located therein remain in effect. The AMI surrounding each individual lease lying outside of Jonah Gulch shall remain in effect so long as each individual lease listed on Exhibit "B", or acquired pursuant to the terms of this paragraph within the AMI's, remains in effect and shall expire on an AMI by AMI basis as the last lease in each AMI expires. In the event CNG acquires a leasehold interest within any such AMI, Fossil shall be assigned an ORR on the same basis as set out in Paragraph (3) above. Except as set out below, if Fossil acquires an interest within any AMI, such interest shall be offered to CNG at cost, but subject to the ORR set out in Paragraph (3) above which ORR shall be in addition to any third party ORR's previously reserved. CNG shall have 15 days in which to accept assignment.

4

(15) Any transferee of an interest hereunder shall agree in writing to be bound by the provisions of this agreement.

17.     The areas of mutual interest established by paragraph (4) of the Revised CNG/Fossil Agreement that remain in effect thereunder (the "CNG/Fossil AMIs") include lands located within the following townships in Sublette County, Wyoming:

> Township 29 North, Range 108 West, 6th P.M.
>
> Township 30 North, Range 108 West, 6th P.M.
>
> Township 31 North, Range 108 West, 6th P.M.
>
> Township 30 North, Range 109 West, 6th P.M.
>
> Township 31 North, Range 109 West, 6th P.M.
>
> Township 32 North, Range 109 West, 6th P.M.
>
> Township 31 North, Range 110 West, 6th P.M.
>
> Township 32 North, Range 110 West, 6th P.M.

18.     The CNG/Fossil AMIs do not include any lands within the "Jonah Gulch Prospect" or the "Jonah Gulch AMI" as defined in the Revised CNG/Fossil Agreement.

19.     Plaintiffs are the successors in interest to the members of Fossil and have succeeded to the rights and obligations of Fossil under the Revised CNG/Fossil Agreement.

20.     By Purchase and Sale Agreement dated July 19, 1996 (the "CNG/Ultra Agreement"), CNG sold its interests in oil and gas leases, leasehold estates, contractual rights, and other interests described in the agreement, including oil and gas leases covering lands in the CNG/Fossil AMIs, to Ultra Petroleum (USA) Inc., a Colorado corporation.

21.     The Purchase and Sale Agreement contains the following provisions in Paragraph No. 11 thereof:

(D) Seller and Buyer acknowledge and recognize that Seller is bound by a certain Consulting Agreement dated November 1, 1983, as amended and a certain Letter

Agreement dated March 15, 1994 with Fossil Associates (hereinafter referred to as the "Fossil Agreements") and that some but not all of the properties involved in the aforementioned Fossil Agreements are included in this sale to Buyer, previously defined as the Interests, and further that a portion of the properties covered by the Fossil Agreements will remain in the possession of Seller. As such, Seller recognizes that the terms and conditions of the Fossil Agreements shall apply to those remaining properties in Seller's possession and Seller shall indemnify and hold Buyer harmless from and against any and all liability, loss, obligations, cost, and expense (including, without limitation, court costs and reasonable attorney's fees) that are attributable to any breach of Seller's obligations under the Fossil Agreements with respect to the remaining properties.

Insofar as the Fossil Agreement pertains to the Interests, Buyer agrees to comply with the terms and conditions of said agreement from and after the Effective Time. Seller agrees to comply with the terms of the Fossil Agreement insofar as it pertains to the Interest to the extent that any obligations of Seller under said Agreement have not been discharged as of the Effective Time or to the extent that Seller remains bound by the terms and conditions of said Agreement after the Effective time.

Seller shall indemnify and hold Buyer harmless from and against any and all liability or actions, duties and obligation of Seller that are attributable to the Interests, as they pertain to the Fossil Agreements, which accurred [sic] prior to the Effective Time. Buyer shall indemnify and hold Seller harmless from and against any and all liability or actions, duties and obligation of Buyer that are attributable to the Interests, as they pertain to the Fossil Agreements, which accurred [sic] after the Effective Time.

22.     Upon information and belief, and for the reasons outlined in Paragraph Nos. 23-33, Defendants Ultra Resources and UPL Pinedale are mere alter egos, instrumentalities, or shells of one another, having no separate or distinct mind, will or existence. As a result, UPL Pinedale may be held responsible for the liabilities of Ultra Resources. Upon further information and belief, the corporate form has been misused in an effort to avoid Ultra Resources' liabilities to the Plaintiffs as evidenced by, inter alia, the following factors:

(a)     Ultra Resources and UPL Pinedale are wholly owned subsidiaries of the same parent corporation and have identical management and equitable ownership.

6

(b)     Ultra Resources has diverted assets and properties, purchased using its own corporate assets and funds, to UPL to avoid its liabilities to Plaintiffs;

(c)     Ultra Resources and UPL Pinedale have manipulated assets and liabilities between the entities so as to concentrate assets in UPL Pinedale and liabilities in Ultra Resources;

(d)     Ultra Resources and UPL Pinedale have commingled their funds and assets;

(e)     Because their funds and assets are commingled, UPL Pinedale and Ultra Resources are and have been at all times pertinent hereto undercapitalized;

(f)     The equitable owner of the Defendants used Ultra Resources and UPL Pinedale as facades for its operations, disregarded legal formalities, and failed to maintain an arms-length relationship among the entities; and

(g)     Ultra Resources and UPL Pinedale are not now and have never been operated as truly separate and distinct entities such that adherence to the fiction of the separate existence of the entities would promote injustice.

23.     Pursuant to Articles of Merger effective on July 16, 2001, Ultra Petroleum (USA) Inc., a Colorado corporation, was merged with and into Ultra Resources, the surviving corporation.

24.     A Purchase and Sale Agreement dated August 13, 2014 (the "SWEPI/Ultra Agreement") was entered into among SWEPI LP, a Delaware limited partnership ("SWEPI"), Ultra Resources and UPL Pinedale.

25.     Pursuant to the SWEPI/Ultra Agreement, SWEPI sold leasehold interests in the CNG/Fossil AMIs ("SWEPI AMI Leaseholds") to UPL Pinedale.

7

26.     Under the terms of the SWEPI/Ultra Agreement, Ultra Resources provided the consideration for UPL Pinedale's purchase of the SWEPI AMI Leaseholds. UPL Pinedale provided no consideration for the purchase.

27.     The SWEPI/Ultra Agreement was executed on behalf of UPL Pinedale by Michael D. Watford, President.

28.     The SWEPI/Ultra Agreement was executed on behalf of Ultra Resources by Michael D. Watford, President.

29.     UPL Pinedale is a wholly owned subsidiary of Ultra Petroleum Corp., a Yukon, Canada corporation.

30.     Michael D. Watford is the Chairman, President, and Chief Executive Officer of Ultra Petroleum Corp.

31.     Ultra Resources was at the time of its formation a wholly owned subsidiary of Ultra Petroleum Corp., a Yukon, Canada corporation, and on information and belief is to date a wholly owned subsidiary of Ultra Petroleum Corp., a Yukon, Canada corporation.

32.     The principal business address of both UPL Pinedale and Ultra Resources is 400 N. Sam Houston Parkway E., Suite 1200, Houston, Texas 77060.

33.     Plaintiffs, as owners of pre-existing overriding royalty interests in the Pinedale Field, were notified by an Ultra Resources notice to owners that on September 25, 2014 Ultra Resources had acquired all SWEPI producing and non-producing properties in the Pinedale Field in Sublette County, Wyoming.  The CNG/Fossil AMIs are located in the Pinedale Field.

34.     On March 8, 2016, Plaintiffs filed a Complaint and Request for Jury Trial, Civil Action No. 8405, District Court, Ninth Judicial District, County of Sublette, State of Wyoming, against the Debtors Ultra Resources, Inc., and UPL Pinedale, LLC.

8

35.     Defendants filed for bankruptcy on April 29, 2016.  As of that date, the state court action was stayed under 11 U.S.C. § 362.

36.     Plaintiffs' claims are unliquidated at this time.

37.     All conditions precedent to the filing of this action have been performed or have occurred.

## V.  CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
(DECLARATORY JUDGMENT,
VALIDITY, SCOPE, AND EXTENT OF ORRS)

38.     Plaintiffs incorporate by reference and re-allege, as if fully restated herein, all allegations of Paragraph Nos. 1 through 37 and all numbered and unnumbered subparts thereof, to the extent such allegations support and are consistent with the claims made and relief sought herein.

39.     28 U.S.C. § 2201 provides, in pertinent part, that:

In a case of actual controversy within its jurisdiction . . . any court of the United States, upon a filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

40.     Pursuant to 28 U.S.C. § 2201 and 11 U.S.C. § 105(a), this Court has the power to declare and adjudicate the rights and obligations of the parties hereto and to grant such other and further relief as may be necessary to enforce the rights and obligations of the parties relative to the various overriding royalties owned by the Plaintiffs.

41.     The Revised CNG/Fossil Agreement is a valid and existing contract between Plaintiffs and Defendants.

42.     A substantial and actual controversy exists between the Plaintiffs and the Defendants.  Uncertainty and insecurity currently exists with respect to the rights, status, and

other legal relations between the parties concerning the validity, scope and extent of the overriding royalties owned by Plaintiffs, as set forth below.  The Defendants presently dispute Plaintiffs' claims that Plaintiffs are entitled to an assignment of the ORRs in the SWEPI AMI Leaseholds pursuant to the Revised CNG/Fossil Agreement as set forth *supra*, and dispute whether Plaintiffs are entitled to the proceeds of production attributable to such ORRs from August 13, 2014, the date of the SWEPI/Ultra Agreement, to present.

43.     Plaintiffs, and each of them, are entitled to a judgment declaring their rights under the Revised CNG/Fossil Agreement, to wit: (i) the SWEPI AMI Leaseholds are burdened by Plaintiffs' ORRs as provided in the Revised CNG/Fossil Agreement; and (ii) that Plaintiffs are entitled to all proceeds of production attributable to such ORRs from the date of the SWEPI/Ultra Agreement to present.

44.     Plaintiffs, and each of them, are entitled to a judgment, order or decree granting such further or additional relief, including money damages, so as to give effect to the declaratory relief granted by the Court.

### <u>SECOND CLAIM FOR RELIEF</u>
(DECLARATORY JUDGMENT,
UNPAID ORRS ARE NOT PROPERTY
OF THE BANKRUPTCY ESTATE)

45.     Plaintiffs incorporate by reference and re-allege, as if fully restated herein, all allegations of Paragraph Nos. 1 through 44 and all numbered and unnumbered subparts thereof, to the extent such allegations support and are consistent with the claims made and relief sought herein.

46.     Plaintiffs further seek a declaration that any unpaid overriding royalty payments are not property of the Defendants' bankruptcy estates and must therefore be turned over to them.

47.     Section 541(a)(1) of the Bankruptcy Code generally provides that all property to which a debtor has a legal or equitable interest becomes property of the estate upon the commencement of a Chapter 11 case.  However, section 541 does not by itself create new legal or equitable interests in property.  Instead, property interests are created and defined by state law.

48.     Thus, if a debtor holds no legal or equitable interest in property as of the commencement of the case, such property does not become property of the debtor's estate under § 541 of the Bankruptcy Code and the debtor is prohibited from distributing such property to its creditors.

49.     Further, 11 U.S.C. § 541(d) provides that property for which a debtor holds only bare record title is not property of the estate. And, a debtor who holds proceeds attributable to real property owned by another holds at most bare record title to such proceeds.

50.     Under Wyoming law, an overriding royalty is an interest in real property.  Once created, an overriding royalty becomes the property of its holder.  Consequently, when the oil and gas production attributable to an overriding royalty is sold and the proceeds are held by a bankrupt debtor, the proceeds are not property of the bankruptcy estate and they must be paid to the owners thereof.

51.     The Wyoming Supreme Court has stated numerous times that the WRPA was specifically designed and adopted to "stop oil producers from retaining other people's money for their own use."

52.     To the extent Wyoming law does not govern, § 541(b)(4)(B) would similarly exclude overriding royalties and the proceeds attributable thereto from property of the estate.

53.     Because overriding royalties are not property of the estate either by application of Wyoming law or pursuant to section 541(b) of the Bankruptcy Code, any proceeds or profits

the Defendants have in their possession which are attributable to the ORRs are not property of the bankruptcy estates under section 541(a)(6) of the Bankruptcy Code.

54.    To the extent the Defendants have the Plaintiffs' overriding royalty proceeds in their possession, the Defendants hold no legal or beneficial title thereto.  The Defendants only take possession of proceeds from the sale of the Plaintiffs' share of oil and gas production because they market and sell the oil and gas production on behalf of the Plaintiffs.

55.    Courts have also held that in such situations, a resulting or constructive trust is established on behalf of the owners of the interests and that the property subject to the trust is not property of the bankruptcy estate.

56.    On April 30, 2016, the Defendants filed an Emergency Motion for Entry of Interim and Final Orders Authorizing Payment of Mineral Payments, Working Interest Disbursements, Non-Operated Working Interest Expenses, and Gathering, Processing, and Transport Expenses ("Royalty Motion").  In the Royalty Motion, the Defendants admitted to the foregoing allegations and obtained an Interim and Final Order approving the Royalty Motion based on the allegations.

57.    Because the Plaintiffs' overriding royalty proceeds are not property of the bankruptcy estates, the Defendants have no right to distribute any such proceeds to their creditors.  The Plaintiffs therefore request a determination that all proceeds attributable to unpaid overriding royalties be turned over to them.

## THIRD CLAIM FOR RELIEF
### (BREACH OF CONTRACT)

58.    Plaintiffs incorporate by reference and re-allege, as if fully restated herein, all allegations of Paragraph Nos. 1 through 57 and all numbered and unnumbered subparts thereof,

to the extent such allegations support and are consistent with the claims made and relief sought herein.

59.     Defendants breached the Revised CNG/Fossil Agreement by failing to assign to Plaintiffs overriding royalty interests in the SWEPI AMI Leaseholds that Defendants acquired pursuant to the SWEPI/Ultra Agreement.

60.     Plaintiffs have suffered damages as a result of Defendants' breach of contract, including but not limited to lost revenues.

61.     Plaintiffs are entitled to a judgment against Defendants for all damages they have sustained as a result of Defendants' breach of contract.

62.     Defendants took their interests in the SWEPI AMI Leaseholds with actual knowledge of Plaintiffs' claim to the overriding royalty interests in those leaseholds. As such, Plaintiffs are entitled to money damages against Defendants for all damages sustained by Plaintiffs.

## FOURTH CLAIM FOR RELIEF
### (CIVIL CONSPIRACY/FRAUD)

63.     Plaintiffs incorporate by reference and re-allege, as if fully restated herein, all allegations of Paragraph Nos. 1 through 62 and all numbered and unnumbered subparts thereof, to the extent such allegations support and are consistent with the claims made and relief sought herein.

64.     Ultra Resources and UPL Pinedale intentionally set out to defraud Plaintiffs of the ORRs in any leaseholds they acquire in the CNG/Fossil AMIs.

65.     Under the SWEPI/Ultra Agreement, UPL Pinedale obtained title to the SWEPI AMI Leaseholds; while Ultra Resources provided all consideration for the purchase of the SWEPI AMI Leaseholds.

66.    Due to Defendants' scheme to defraud Plaintiffs, Plaintiffs have been and continue to be deprived of the revenue from the ORRs in the SWEPI AMI Leaseholds.

67.    Plaintiffs are entitled to a judgment against Defendants for all damages they have sustained as a result of Defendants' conspiracy.

## FIFTH CLAIM FOR RELIEF
### (CONVERSION)

68.    Plaintiffs incorporate by reference and re-allege, as if fully restated herein, all allegations of Paragraph Nos. 1 through 67 and all numbered and unnumbered subparts thereof, to the extent such allegations support and are consistent with the claims made and relief sought herein.

69.    Plaintiffs are entitled to the ORRs in the SWEPI AMI Leaseholds acquired by Defendants.

70.    Defendants have converted and stolen the proceeds of production attributable to the ORRs in the SWEPI AMI Leaseholds, and Plaintiffs have been damaged as a result.

71.    The acts of Defendants in stealing and converting the proceeds belonging to Plaintiffs were intentional and done knowingly in order to enrich Defendants.

72.    Defendants are liable to Plaintiffs for the amount of any unpaid proceeds of production attributable to the ORRs in the SWEPI AMI Leaseholds.

## SIXTH CLAIM FOR RELIEF
### (UNJUST ENRICHMENT/DAMAGES)

73.    Plaintiffs incorporate by reference and re-allege, as if fully restated herein, all allegations of Paragraph Nos. 1 through 72 and all numbered and unnumbered subparts thereof, to the extent such allegations support and are consistent with the claims made and relief sought herein.

14

74.     Plaintiffs' predecessor-in-interest provided labor, services and other items which benefited Defendants and their predecessors-in-interest.

75.     Plaintiffs' predecessor-in-interest provided labor, services, and other items with the reasonable expectation that they or their successors-in-interest would be fully compensated in accordance with the Revised CNG/Fossil Agreement.

76.     Defendants, their predecessors-in-interest, requested and accepted the labor, services, and other items provided by Plaintiffs.

77.     Defendants, their predecessors-in-interest, understood when they accepted the labor, services and other items provided by Plaintiffs that they would be responsible to compensate Plaintiffs in accordance with the Revised CNG/Fossil Agreement.

78.     Defendants, their predecessors-in-interest, knew, or should have known, that Plaintiffs expected to be compensated as set forth in the Revised CNG/Fossil Agreement.

79.     Defendants, their predecessors-in-interest, have benefitted from the labor, services, and other items provided by Plaintiffs.

80.     Defendants' failure to compensate Plaintiffs as set forth in the Revised CNG/Fossil Agreement is inequitable.

81.     Defendants have been unjustly enriched, and Plaintiffs are entitled to, a judgment to the extent of Defendants' unjust enrichment.

### SEVENTH CLAIM FOR RELIEF
(UNJUST ENRICHMENT/EQUITABLE LIEN/CONSTRUCTIVE TRUST)

82.     Plaintiffs incorporate by reference and re-allege, as if fully restated herein, all allegations of Paragraph Nos. 1 through 81 and all numbered and unnumbered subparts thereof, to the extent such allegations support and are consistent with the claims made and relief sought herein.

83. Title to SWEPI AMI Leaseholds which are subject to the Revised CNG/Fossil Agreement is reported in the real property records of Sublette County, Wyoming, to be held by Defendant UPL Pinedale, LLC.

84. It is u n j u s t for Defendant, UPL Pinedale, LLC to own the SWEPI AMI Leaseholds free and clear of Plaintiffs' ORR because the overlapping principal of the Defendants is unfairly enriched at the expense of Plaintiffs, regardless of whether the Defendants are in fact legitimate, separate and distinct entities.

85. P l a i n t i f f s request an equitable lien against the SWEPI AMI Leaseholds shown to be owned by Defendant UPL Pinedale in the amount of the value of the ORRs, or in the form of the ORRs.

86. A l t e r n a t i v e l y, Plaintiffs request a constructive trust requiring UPL Pinedale to assign the ORRs in the SWEPI AMI Leaseholds to Plaintiffs.

## EIGHTH CLAIM FOR RELIEF
### (ACCOUNTING)

87. Plaintiffs incorporate by reference and re-allege, as if fully restated herein, all allegations of Paragraph Nos. 1 through 86 and all numbered and unnumbered subparts thereof, to the extent such allegations support and are consistent with the claims made and relief sought herein.

88. As the lessee, operator, or other party responsible for payment, the Defendants (or some of them) are obligated to report to the Plaintiffs in accordance with the Wyoming Royalty Payment Act, Wyo. Stat. §§ 30-5-301, *et seq.* ("WRPA") for their overriding royalties.

89. In addition, the Defendants are obligated to properly substantiate all of the matters reported under the WRPA including, but not limited to, production volumes, sales prices, and costs taken against the Plaintiffs' overriding royalties.

16

90.     Plaintiffs are entitled to a complete accounting from the Defendants on all of their overriding royalties.   At a minimum, this accounting must include documentation and/or information substantiating all of the matters to be reported by the Defendants on the pay stubs.

91.     Plaintiffs anticipate that, as they receive the information above, further information and documentation will be necessary to provide a full and complete accounting to the Plaintiffs for payments made on their overriding royalties

92.     Plaintiffs request that the Court periodically review the accounting provided by the Defendants and order the production of further information and documents as may be necessary for a full and complete accounting.

93.     Plaintiffs anticipate that, after the accounting is complete, it may be necessary to amend their Complaint to assert additional claims against the Ultra Defendants and reserve their right to do so.

## NINTH CLAIM FOR RELIEF
### (VIOLATION OF THE WPRA)

94.     Plaintiffs incorporate by reference and re-allege, as if fully restated herein, all allegations of Paragraph Nos. 1 through 93 and all numbered and unnumbered subparts thereof, to the extent such allegations support and are consistent with the claims  made and relief sought herein.

95.     Under Wyoming law, unless otherwise expressly provided for by specific language in an executed written agreement, the term "overriding royalty," is defined as an interest carved out of an oil and gas lease that is free of the costs of production.  Wyo. Stat. §§ 30-5-305(a), 304(a)(v).

96.     The proceeds derived from the sale of production from any well producing oil, gas or related hydrocarbons in the state of Wyoming shall be paid to all persons legally entitled

thereto, except as hereinafter provided, commencing not later than six (6) months after the first day of the month following the date of first sale and thereafter not later than sixty (60) days after the end of the calendar month within which subsequent production is sold, unless other periods or arrangements for the first and subsequent payments are provided for in a valid contract with the person or persons entitled to such proceeds.  § 30-5-301.

97.    Any lessee or operator, purchaser, or other party legally responsible for payment who violates the provisions of this article is liable to the person or persons legally entitled to proceeds from production for the unpaid amount of such proceeds, plus interest at the rate of eighteen percent (18%) per annum on the unpaid principal balance from the due date.  § 30-5-303.

98.    Plaintiffs are entitled to the unpaid ORR amounts plus interest at the rate of eighteen percent (18%) per annum on the unpaid principal balance from the due date.  § 30-5-303.

## VI.  PRAYER FOR RELIEF

**WHEREFORE,** Plaintiffs pray for an order, judgment, a n d  d e c r e e  of this Court against the Defendants for the following relief:

1.    A declaration that Plaintiffs are entitled to a judgment declaring their rights under the Revised CNG/Fossil Agreement, to wit: (i) the SWEPI AMI Leaseholds are burdened by Plaintiffs' ORRs as provided in the Revised CNG/Fossil Agreement; and (ii) that Plaintiffs are entitled to all proceeds of production attributable to such ORRs from the date of the SWEPI/Ultra Agreement to present;

2.    A declaration that Plaintiffs' overriding royalty proceeds are not property of the bankruptcy estates, the Defendants have no right to distribute any such proceeds to their

creditors, and that all proceeds attributable to unpaid overriding royalties be turned over to Plaintiffs;

3.      A declaration that Defendants took their interests in the SWEPI AMI Leaseholds with actual knowledge of Plaintiffs' claim to the overriding royalty interests in those leaseholds, and that as such, Plaintiffs are entitled to money damages against Defendants for all damages sustained by Plaintiffs;

4.      Damages arising from Defendants' fraud and conspiracy to deprive Plaintiffs of their ORRs;

5.      Damages in the amount of any unpaid proceeds of production attributable to the ORRs in the SWEPI AMI Leaseholds;

6.      Damages to the extent of Defendants' unjust enrichment;

7.      Damages to the extent of Defendants' breach of contract;

8.      An equitable lien against the SWEPI AMI Leaseholds shown to be owned by Defendant UPL Pinedale in the amount of the value of the ORRs, or in the form of the ORRs;

9.      Alternatively, a constructive trust requiring UPL Pinedale to assign the ORRs in the SWEPI AMI Leaseholds to Plaintiffs;

10.     A complete accounting from the Defendants on all of their overriding royalties, including, but not limited to, all documentation and/or information substantiating all of the matters to be reported by the Defendants on ORR pay stubs;

11.     All unpaid ORR amounts plus interest at the rate of eighteen percent (18%) per annum on the unpaid principal balance from the due date, pursuant to Wyo. Stat. § 30-5-303;

12.     Awarding attorneys' fees and costs as permitted by law;

13.     Awarding statutory, punitive, and/or exemplary damages to which Plaintiffs may be entitled as a matter of law; and

19

14.    Granting such other and further relief in law or equity to which Plaintiffs are entitled.

DATED this 5th day of January, 2017.

NATHAN SOMMERS JACOBS, P.C.

By: */s/ Jarrod B. Martin*
Texas Bar No. 24070221
2800 Post Oak Blvd. 61st Floor
Houston, TX 77056
jmartin@nathansommers.com
Telephone: (713) 960-0303
Facsimile: (713) 892-4800

and

POULSON, ODELL & PETERSON, LLC

By: */s/ Scott M. Campbell*
Pro Hac Vice **Pending in Case No. 16-32202**
1775 Sherman Street, Suite 1400
Denver, CO  80203
Telephone: (303) 861-4400
Facsimile: (303) 861-1225
SCampbell@popllc.com

Attorneys for the Plaintiffs